**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHER BRONSTIN, *individually and on* | ) | |
| *behalf of all others similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01410-JKM |
| | ) | (Hon. Julia K. Munley) |
| UPSTART NETWORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT UPSTART NETWORK, INC.'S MOTION TO BIFURCATE CASE AND STAY CLASS RELATED DISCOVERY

## (UNPUBLISHED AUTHORITIES)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 2 of 81

Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc., Not Reported in F.Supp.2d...

2007 WL 188285

Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.

MEDPOINTE HEALTHCARE INC., Plaintiff,

v.

HI–TECH PHARMACAL CO., INC., Defendant.

Medpointe Healthcare Inc., Plaintiff,

v.

Morton Grove Pharmaceuticals, Inc., Defendant.

Civil Action Nos. 03–5550 (MLC), 04–1686(MLC).

|

Jan. 22, 2007.

**Attorneys and Law Firms**

Thomas R. Curtin, Graham, Curtin & Sheridan, PC, Morristown, NJ, for Plaintiff.

Suzanne Cocco Midlige, Coughlin Duffy, LLP, Morristown, NJ, William L. Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, Westfield, NJ, Sheila Raftery Wiggins, Walter James Greenhalgh, Duane Morris, LLP, Newark, NJ, for Defendant.

**MEMORANDUM OPINION**

HUGHES, U.S.M.J.

**\*1** This matter is before the Court upon the Motion of Defendant Hi–Tech Pharmacal Co., Inc., ("Hi–Tech"), for Consolidated Trial on Liability of Civil Action 03–5550 and 04–1686 Pursuant to FED.R.CIV.P. 42(a) and to Bifurcate Trials on Damages and Alleged Willfulness of Infringement Pursuant to FED.R.CIV.P. 42(b). Defendant Morton Grove ("Morton Grove") joined Hi–Tech's Motion to consolidate and bifurcate on July 24, 2006. Plaintiff Medpointe Healthcare Inc. ("Plaintiff") opposes the Motion. Both parties requested that the Court defer argument on this motion until the pending summary judgment motions were decided.

Plaintiff filed two separate actions for patent infringement. The first action was filed against Hi–Tech on November 25, 2003, and the second action was filed against Morton Grove on April 13, 2004. The two actions, which claim that Hi–Tech and Morton Grove have infringed the same patent, have been consolidated for discovery and case management purposes only. Defendants Hi–Tech and Morton Grove now seek to consolidate the two actions solely for a trial on liability issues and to hold separate trials on the issues of damages and alleged willful infringement. The Court reviewed the written submissions of the parties and conducted oral argument on January 22, 2007. For the reasons that follow, Hi–Tech's and Morton Grove's Motion for a Consolidated Trial on Liability and to Bifurcate Trials on Damages and Alleged Willfulness of Infringement is granted.

**I. *BACKGROUND AND PROCEDURAL HISTORY***

**A. *Medpointe v. Hi–Tech***

Plaintiff MedPointe is a New Jersey corporation headquartered in Somerset, New Jersey that develops, markets and sells branded prescription pharmaceuticals. (Edick Hi–Tech Decl. ¶ 3). Plaintiff is the owner-assignee of the ′206 Patent, issued on July 9, 2002, which is directed to a certain combination of pharmaceuticals to be administered for the symptomatic relief of cough. (*See* Dkt. no. 03–5550, entry no. 1). Plaintiff sells its prescription anti-cough medication under the trade name Tussi–12D. *Id.*

Hi–Tech is a competitor of Plaintiff and has manufactured and distributed a generic suspension, which has the same component actives in the same dosage amounts as Tussi–12D. (*See* Seltzer Tr. at 8–26). On November 25, 2003, Plaintiff filed suit against Hi–Tech, accusing Hi–Tech of willful infringement of U.S. Patent No. 6,417,206 ("the ′206 Patent"). (*See* Dkt. no. 03–5550, entry no. 1). Plaintiff, who possesses exclusive rights to the ′206 Patent, brought this action to stop Hi–Tech from marketing in the United States generic copies of the prescription anti-cough medication Tussi–12D. *Id.*

In December 2003, Plaintiff sought, and this Court granted, a temporary restraining order and a preliminary injunction. (*See* Dkt. no. 03–5550, entry no. 2, 6, 25, 26). Hi–Tech appealed this decision, and in December 2004, the injunction was vacated by the Federal Circuit based on Hi–Tech having raised a substantial question of invalidity based upon obviousness. *Medpointe Healthcare Inc. v. Hi–Tech Pharmacal Co.,* 115 F. Appx. 76 (Fed.Cir .2004).

**\*2** On June 13, 2006, Hi–Tech filed a motion for summary judgment. (*See* Dkt. no. 03–5550, entry no. 87). Also on June 13, 2006, Medpointe filed two motions for summary judgment: (1) Motion for Summary Judgment of No Patent

Misuse and No Unclean Hands; and (2) Motion for Summary Judgment of No Inequitable Conduct. (*See* Dkt. no. 03–5550, entry no. 88 and 89). Oral argument on the motions for summary judgment were heard by Judge Mary L. Cooper on November 30, 2006. (*See* Dkt. no. 03–5550, entry no. 119). On December 21, 2006, Judge Cooper entered a Memorandum Opinion and Order denying Hi–Tech's motion for summary judgment and withdrawing as moot Medpointe's two motions for summary judgment. (*See* Dkt. no. 03–5550, entry no. 120 and 121).

### B. Medpointe v. Morton Grove

Morton Grove is a Delaware corporation and a competitor of Plaintiff. (*See* Dkt. no. 04–1686, entry no. 1). On April 13, 2004, Plaintiff filed an action against Morton Grove as defendant, accusing it of willful infringement of the ′ 206 Patent and seeking to prevent Morton Grove from marketing a generic version of Tussi–12D. (*See* Dkt. no. 04–1686, entry no. 1). The two actions were consolidated for discovery and other pretrial proceedings only on February 22, 2005. (Pl.'s Opp. Br. at 1). At this stage in the litigation, discovery has ended and the cases are prepared for trial. (Hi–Tech Br. at 3; Pl.'s Opp. Br. at 1).

On June 13, 2006, Medpointe filed two motions for summary judgment: (1) Motion for Summary Judgment of No Patent Misuse and No Unclean Hands; and (2) Motion for Summary Judgment of No Inequitable Conduct. (*See* Dkt. no. 04–1686, entry no. 60 and 61). Oral argument on Medpointe's motions were heard before Judge Cooper on November 30, 2006, at the same time that argument was heard on the summary judgment motions in Medpointe's case against Hi–Tech. (*See* Dkt. no. 04–1686, entry no. 95). On December 20, 2006, the Court entered an order Dismissing as Withdrawn Plaintiff's motion for summary judgment regarding patent misuse and unclean hands. (*See* Dkt. no. 04–1686, entry no. 97).

### C. Present Motion

On July 17, 2006, Hi–Tech filed the present motion for a consolidated trial of the actions against Hi–Tech and Morton Grove on liability and to bifurcate trials on damages and alleged willfulness of infringement. (*See* Dkt. no. 03–5550, entry no. 104). The parties requested that the Court defer hearing argument on this motion until after a decision on the summary judgment motions was entered. Hi–Tech and Morton Grove have each stipulated that the generic copies of Plaintiff's Tussi–12D suspension product infringe the ′206 Patent. (Pl.'s Opp. Br. at 5). Therefore, the issues remaining

for the jury are (1) whether Hi–Tech's or Morton Grove's infringements were willful, (2) whether the patent is valid and enforceable, and (3) whether and in what amount damages are owed to Plaintiff. *Id.*

**\*3** Hi–Tech and Morton Grove argue that the Court should consolidate the two actions on the issue of liability because the facts asserted by the Defendants and the claims asserted against them by Plaintiff are essentially the same in both cases. Hi–Tech and Morton Grove further argue that the issue of damages and willfulness should be bifurcated and heard after the trial on liability. Hi–Tech and Morton Grove contend that the issue of inequitable conduct should be resolved by bench trial because this issue is always resolved by bench trial and the defense is only being pursued by Morton Grove. Plaintiff argues in opposition that a separate trial should be conducted for each Defendant with separate juries because the issues of willfulness and liability cannot be severed. Plaintiff further argues that it would be substantially prejudiced if the Court grants Defendants' motion.

### II. DISCUSSION

Hi–Tech and Morton Grove contend that the Court should conduct a single jury trial on obviousness, which is a defense to show invalidity of the patent, because the facts asserted by Hi–Tech and Morton Grove and the claims of the ′ 206 Patent against them are essentially the same in each case. (Hi–Tech Br. at 6). Hi–Tech and Morton Grove argue that Plaintiff is expected to employ the same expert witness and use the same evidence and arguments in both cases. *Id.* Hi–Tech and Morton Grove further argue that the issue of inequitable conduct should be the subject of a separate and subsequent bench trial because this defense is only being pursued by Morton Grove, not Hi–Tech. *Id.* at 7.

Hi–Tech and Morton Grove also argue that the issues of damages and willfulness should be bifurcated because (1) there is no significant evidentiary overlap between damages and liability, (2) bifurcation can eliminate the need for a trial on damages and willfulness if no liability is found or if the case settles, (3) bifurcation may avoid prejudice caused by divulgence of sensitive commercial information required in the damages phase, and (4) bifurcation would save the Court's time and decrease expense for the parties.

Plaintiff requests that two separate trials be conducted in the Hi–Tech and Morton Grove actions, with all issues in the Hi–Tech action being tried first followed, if necessary, by a separate trial on all of the issues in Morton Grove before

a second jury. (Pl.'s Opp. Br. at 2). Plaintiff argues that if Hi–Tech's and Morton Grove's motion is granted, it will be "substantially and irreparably prejudiced once the jurors learn that they would be relieved of any further duties if they render a verdict against MedPointe in the liability phase." *Id.* at 3. Plaintiff further argues that the issues of willfulness and liability are inextricably intertwined in this case. *Id.* at 6. Plaintiff also argues that the case does not warrant bifurcation because it is not sufficiently complex and the damages period is short. *Id.* at 12.

### A. *Federal Rule of Civil Procedure 42(a)*

**\*4** Federal Rule of Civil Procedure 42(a) governs consolidation and provides, in relevant part:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED.R.CIV.P. 42(a). In a motion to consolidate, the party moving for consolidation bears the burden of showing that common questions of law or fact exist. *See Schneck v. Int'l. Business Machines Corp.,* 1996 U.S. Dist. LEXIS 10126, at \*3 (D.N.J. June 24, 1996) (*cited in* Debruyne v. Nat'l. Semiconductor Corp., 11 F .3d 368, 373 (2d Cir.1993)). Those common issues alone, however, do not warrant consolidation. *See Schneck,* 1996 U.S. Dist. LEXIS at \*3–4 (*referring to* Waste Distillation Tech., Inc. v. Pan American Resources, Inc., 775 F.Supp. 759, 761 (D.Del.1991)). Rather, courts balance the savings of time and effort against the potential for inconvenience, delays, or cost resulting from the simultaneous disposition of separate actions. *See id.* at \*4 (*referring to* Rohm & Haas Co. v. Mobil Corp., 525 F.Supp. 1298, 1309 (D.Del.1981)).

In the present matter, there are common questions of law and fact in Plaintiff's separate actions against Hi–Tech and Morton Grove. In both actions, Plaintiff accuses the Defendant of willful infringement of the '206 Patent and seeks to stop the Defendant from marketing generic copies of the prescription anti-cough medication Tussi–12D. Hi–Tech and Morton Grove have both admitted that if Plaintiff's patent claims are valid, then the patent was infringed. However, both Defendants raise the defense of obviousness. Hi–Tech filed a summary judgment motion on June 13, 2006 and Morton Grove joined that motion. Essentially the same facts and circumstances are involved with both defenses.

Further, Plaintiff is expected to use the same evidence, arguments, and expert witness to rebut the defense of obviousness in both cases. (Hi–Tech Br. at 6). At present, Hi–Tech and Morton Grove are expected to employ different expert witnesses regarding obviousness. *Id.* However, Defendants will be able to streamline and limit the scope of expert testimony if the two cases are consolidated. *Id.* Therefore, because of the similarity in facts, circumstances, and law between the two cases and the potential savings of time and expense to the parties, the Court finds that the Hi–Tech and Morton Grove cases should be consolidated for the issue of liability.

### B. *Federal Rule of Civil Procedure 42(b)*

Federal Rule of Civil Procedure 42(b) governs separate trials and provides, in relevant part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or of any number of claims ... or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

**\*5** *Fed.R.Civ.P.* 42(b). Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management."

Gardco Mfg., Inc. v. Herst Lighting, 820 F.2d 1209, 1212 (Fed.Cir.1987). In patent cases, bifurcation of liability and damages is not uncommon, especially when the damages issues are complicated and extensive evidence would be

necessary. *See Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254, 256–57, 259 (D.N.J.1997)

(citing *Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd.,* 13 U.S.P.Q.2d (BNA) 1737, 1741 (D.Mass.1989); *American Standard Inc. v. Pfizer, Inc.,* 722 F.Supp. 86, 90 (D.Del.1989);

*E.I. Dupont De Nemours & Co. V. Phillips Petroleum Company,* 656 F.Supp. 1343, 1346 (D.Del.1987)). The United States District Court for the District of Delaware noted that "[i]n the context of patent cases, 'experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.' " *Ciena Corp. v. Corvis Corp.,* 210 F.R.D. 519, 521 (D.Del.2002) (citing Thomas L. Creel & Robert Taylor, Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice, 424 PLI/Pat 823, 826 (1995)).

In the present matter, the issues of damages and willfulness are most appropriately bifurcated from liability **but** heard by the **same** jury following the liability trial. Unlike the technological information necessary to prove liability and the related defense of obviousness, financial and economic evidence will be used to prove and defend the issue of damages. Evidence in the liability trial will focus on disclosure and claims of the patent and "the state of the relevant art as represented by prior art products, patents and technical literature." (Hi–Tech Br. at 14). Evidence in the damages phase of the litigation, on the other hand, might include the following factors: (1) market demand for relevant products; (2) Plaintiff's marketing and manufacturing capacity; (3) the existence of noninfringing alternative products available through other vendors; (4) the extent to which Plaintiff, as opposed to competitors, would have captured sales of the generic products; and (5) the profits that Plaintiff would have realized on these additional sales. (Hi–Tech Br. at 14–15). The damages evidence itself appears to be relatively complex and comprehensive. For example, one of Plaintiff's damages experts, Raymond Sims, submitted "52 pages of opinions regarding numerous lost profits and reasonable royalty theories" in his opening report. (Hi–Tech Reply Br. at 5).

Further, the facts and circumstances of each Defendant's marketing of its generic product are different. Hi–Tech, which marketed its generic product after the Plaintiff's injunction was vacated, will have a different measure and time period of damages than Morton Grove, which did not market its product as early. Plaintiff also asserted an argument against

Morton Grove, not Hi–Tech, which claimed damages for manufacture, not just sale, of the generic product. Similarly, the issue of damages in Hi–Tech's case is further separable from Morton Grove's in that if Plaintiff loses on the liability issue, Hi–Tech intends to seek damages for lost profits from the bond posted by Plaintiff when the preliminary injunction was entered. (Hi–Tech Br. at 5). Morton Grove has indicated no such intent. Therefore, the damages issue is separable between Defendants and properly bifurcated.

**\*6** Although, as Plaintiff asserts, there will be some overlap between evidence and witnesses, as well as some commercial issues in both a trial for liability and one for damages, this duplication does not appear to substantially prejudice Plaintiff. Hi–Tech's witness list for the liability issue includes sixteen witnesses, two of whom will also testify regarding willfulness and two of whom will further testify regarding damages. Similarly, Morton Grove intends to call ten witnesses for liability. One will be recalled for willfulness and two will be recalled for damages. Finally, Plaintiff intends to call thirteen witnesses for liability, three of whom will also testify regarding willfulness and six of whom will testify regarding damages. (Pl.'s Opp. Br. at 10). Plaintiff also intends to call at least two witnesses who will testify solely on the damages issue. (Hi–Tech Reply Br. at 5). Although there will be some overlap in evidence and witnesses, this is the situation with any bifurcated trial. Also, once liability is determined, the damages issue may become moot or the case may settle without the need for any evidence or witness testimony on this issue.

Additionally, the issue of willfulness, which impacts the amount of damages and the potential award of attorneys' fees, requires inquiry into each Defendant's state of mind. This analysis will necessarily be different for each Defendant. Therefore, based on the apparent complexity of the damages issue in this matter, the relatively minor degree to which Plaintiff will be prejudiced by the overlap in evidence and witnesses, the difference in damages theories against each Defendant, and the difference in the facts and circumstances surrounding willfulness of each Defendant, the Court finds that bifurcation of the damages and willfulness issues would best serve judicial economy and minimize juror confusion.

### C. Inequitable conduct
In a patent action, the defense of inequitable conduct, "being entirely equitable in nature, is not an issue for a jury to decide." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,*

984 F.2d 1182, 1190 (Fed.Cir.1993); *see also* Ethicon, Inc. v. United States Surgical Corp., 921 F.Supp. 901, 903 (D.Conn.1995) (noting that the issues "presented by a defense of inequitable conduct are equitable in nature and, as such, triable without a jury"). Therefore, the issue of inequitable conduct can be tried separately by bench trial. *See* Gardco, 820 F.2d at 1212–213 (hearing the issue of equitable conduct before the jury trial); *Elkhart Brass Mfg. Co. v. Task Force Tips, Inc.,* 867 F.Supp. 782, 786 (N.D.Ind.1994).

In the present case, both Hi–Tech and Morton Grove initially pleaded the defense of inequitable conduct. Morton Grove pursued this defense in discovery and intends to raise it at trial. However, Hi–Tech did not pursue this defense in discovery and does not intend to raise it at trial. Unlike in *Gardco,* where the court heard the inequitable conduct issue prior to the jury trial, in the present matter, the inequitable conduct issue is better heard following the trial on liability. Depending on how the liability issue is decided, the defense of inequitable conduct may become moot either through settlement or through the Plaintiff losing its case. Further, as explained in *Gardco* and *Paragon Podiatry,* the inequitable conduct defense is best heard without a jury. Therefore, the Court finds that the inequitable conduct is best heard by bench trial, following the trial on liability and the separate trials on damages and willfulness.

### III. *CONCLUSION*

**\*7** For the reasons expressed here, the Court finds that Plaintiff's two patent infringement actions, one against Hi–Tech and the other against Morton Grove, are appropriate for consolidation on the issue of liability because they involve common issues of law and fact. Also, the use of expert witnesses by Defendants can be streamlined upon consolidation to save time and expense. The Court further finds that the issues of damages and willfulness are properly bifurcated because they are relatively complex and involve distinct facts and circumstances and because bifurcation will not unduly prejudice Plaintiff. The Court also finds that the issue of inequitable conduct shall be heard by bench trial following the trials on liability and damages.

Therefore, the Court holds that the case shall proceed as follows: (1) a consolidated trial on liability; (2) if necessary, a separate trial with Defendant Hi–Tech on damages with the same jury as that hearing the liability trial; (3) if necessary, a separate trial with Defendant Morton Grove on damages with the same jury as that hearing the liability trial and the Hi–Tech damages trial; and (4) if necessary, a bench trial on inequitable conduct involving Defendant Morton Grove.

An appropriate Order accompanies this Memorandum Opinion

### All Citations

Not Reported in F.Supp.2d, 2007 WL 188285

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Declined to Extend by Quinn v. Specialized Loan Servicing, LLC, N.D.Ill., February 9, 2017

2014 WL 413534
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

PHYSICIANS HEALTHSOURCE, INC., Plaintiff,

v.

JANSSEN PHARMACEUTICALS,

INC., et al., Defendants.

Civil Action No. 12–2132 (FLW).
|
Feb. 4, 2014.

**Attorneys and Law Firms**

Matthew Nicholas Fiorovanti, Giordano Halleran & Ciesla P.C., Red Bank, NJ, Michael J. Canning, Giordano, Halleran & Ciesla, P.C., Middletown, NJ, for Plaintiff.

Marsha Jessica Indych, Drinker Biddle & Reath LLP, New York, NY, Kathleen M. Fennelly, Thomas R. Curtin, George C. Jones, Graham Curtin, P.A., Morristown, NJ, for Defendants.

MEMORANDUM OPINION

BONGIOVANNI, United States Magistrate Judge.

**\*1** This matter comes before the Court upon Defendants Alert Marketing, Inc., Janssen Pharmaceuticals, Inc. and Ortho–McNeil Pharmaceutical, LLC's (identified as Ortho–McNeil Pharmaceutical, Inc.) (collectively "Defendants") motion to bifurcate discovery. [Docket Entry No. 52]. Plaintiff Physicians Healthsource, Inc. ("Plaintiff") opposes Defendants' motion. The Court has fully reviewed and considered all of the arguments made in support of and in opposition to Defendants' motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Defendants' motion is GRANTED.

**I. Background and Procedural History**

In light of the parties' familiarity with the facts of this matter, they shall not be reinstated at length herein. Instead, the Court shall recount only those facts necessary for the resolution of Defendants' motion to bifurcate. This case concerns whether two identical unsolicited faxes sent by Defendants to Plaintiff on or about April 8, 2008 and May 6, 2008 violated the Telephone Consumer Protection Act ("TCPA"). The faxes concern the reclassification of Levaquin for insurance purposes. [1] Plaintiff alleges that the faxes were sent as commercial advertisements in violation of the TCPA. In contrast, Defendants argue that the faxes are informational and, therefore, exempted from the TCPA.

In response to Plaintiff's Complaint, Defendants j ointly moved to dismiss Plaintiff's claims arguing that the faxes as a matter of law were informational and, as such, exempted from the TCPA. The District Court held argument on Defendants' motion. For the reasons set forth on the record on January 31, 2013 and for those set forth in the Supplemental Opinion dated February 6, 2013, the District Court granted Defendants' motion to dismiss, finding that "the faxes are indeed informational and that they include only an incidental amount of commercial material." (Supplemental Opinion of 2/6/2013 at 1; Docket Entry No. 28). Consequently, the District Court determined that the "faxes are not actionable under the TCPA." (*Id.*)

Plaintiff responded to this decision by filing a motion to reconsider the District Court's January 31, 2013 Order pursuant to FED.R.CIV.P. 59(e) and L.Civ.R. 7.1(i). In the alternative, Plaintiff sought leave to file an amended complaint. The District Court denied Plaintiff's motion for reconsideration finding that Plaintiff had not asked the court to "correct errors of law or fact upon which [its] rulings were based in order to prevent manifest injustice, [n]or was there an intervening change in the prevailing law." (Opinion of 6/6/2013 at 6; Docket Entry No. 43). Instead, the District Court noted that Plaintiff's motion for reconsideration was based on two new allegations that Plaintiff referred to as new evidence: (1) the receiver of the faxes in question, a physician, never prescribed Levaquin; and (2) because Levaquin was reclassified in 2004, not in 2008 when the faxes were sent, the fax "created a 'false impression that it was being sent for informational purposes.' " (*Id.* (quoting Plaintiff's Opp. Brief at 6)). The District Court found that these new allegations were not evidence for reconsideration purposes and since there was no allegation that the information supporting these allegations was not available when the District Court rendered

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 8 of 81

Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., Not Reported in...

its initial decision, there was no basis upon which the District Court could reconsider its prior rulings.

**\*2** The District Court also found that Plaintiff's proposed amended complaint was futile because the only new allegations set forth in the pleading concerned the alleged fact that there was no prior business relationship between the parties. The District Court found these allegations to be insufficient because its "prior holding that the fax is an advertisement is not relevant to a finding of a prior business relationship, and as a result, amending the Complaint to include such allegations would not change the result." (*Id.* at 7). In addition, the District Court noted that Plaintiff's proposed amended complaint was devoid of any allegations that the faxes at issue "could not be considered truly informational" because "Levaquin was actually reclassified in 2004, and since the drug was already a Tier 2 drug in 2008, there was no 'reclassification,' 'up-to-date,' or 'breaking news' reimbursement information" to be disseminated at the time they were sent. (*Id.*) While Plaintiff raised these assertions in its brief, the District Court could not consider same because they were un-pled.

Despite the failures in Plaintiff's proposed amended complaint, the District Court permitted Plaintiff to amend its Complaint, although not in the form submitted with Plaintiff's motion. Instead, the District Court permitted Plaintiff to "amend its Complaint with whatever allegations it deems would be sufficient." (*Id.* at 8). In so doing, the District Court specifically noted that it was not making any findings as to whether Plaintiff's allegations concerning the timing of Levaquin's reclassification could state a claim.

Plaintiff filed its Amended Complaint on June 26, 2013. [Docket Entry No. 45]. Defendants filed answers in response to same on July 19, 2013. [Docket Entry Nos. 47 & 48]. Shortly thereafter, the Court set an Initial Conference with the parties to discuss the schedule to be set in this matter. During the Initial Conference, Defendants indicated their desire to bifurcate discovery. The Court directed Defendants to file a motion to that effect. Defendants did so by filing the instant motion.

Defendants seek to bifurcate discovery into two phases. During the first phase, the parties would focus on discovery related to whether the faxes at issue are informational or whether the informational content is a sham designed to conceal the fact that they are advertisements. During the second phase, the parties would conduct discovery on all

matters, including class action issues. Before the second phase of discovery commences, Defendants would file a motion for summary judgment on the issue of whether the faxes are informational and therefore exempted from the TCPA. Using this approach, the parties would only engage in class action discovery if Plaintiff survived Defendant's anticipated motion for summary judgment.

Defendants argue that bifurcating discovery in this matter is warranted in light of the narrow, potentially dispositive issue that exists concerning whether the faxes at issue are informational. Defendants argue that this issue is "totally distinct from class action discovery" and "can be fully explored in a limited time, with limited costs, and with limited burdens on the parties and the Court." (Def. Br. at 4; Docket Entry No. 52). In contrast, Defendants argue that unbounded class action discovery involves substantial costs and burdens both for the parties and the court. Further, Defendants claim that the burden of class discovery is significantly greater for defendants than plaintiffs. Indeed, Defendants contend that "[c]ertification and potential class liability are a sword of Damocles for Defendants[.]" (*Id.* at 5). Defendants argue that this would be particularly true here where the District Court has previously determined that the faxes at issue are informational. Consequently, Defendants argue that they should not be forced to spend resources engaging in class discovery from the outset. Instead, they argue that the most efficient manner for this case to proceed is for discovery to be bifurcated so that the issue of whether the faxes are informational, and therefore exempted under the TCPA, can be decided first.

**\*3** Plaintiff opposes Defendants' motion to bifurcate. Plaintiff argues that, despite Defendants' claims to the contrary, bifurcation will not promote efficiencies in the litigation of this matter. In this regard, Plaintiff claims that "[n]o matter what evidence or testimony Defendants could hope to submit to support any forthcoming motion for summary judgment, there will at the very least still remain a genuine question of fact since the documents presented by Plaintiff already show *no Tier ranking change.*" (Pl. Opp. Br. at 2; Docket Entry No. 53). Further, Plaintiff argues that Defendants have not shown that it will be more timely and less costly to litigate this matter by bifurcating discovery. Indeed, Plaintiff claims that "Defendants provide no analysis whatsoever of the expected savings of time and costs, rendering their motion wholly conclusory." (*Id.* at 4).

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 9 of 81

Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., Not Reported in...

In contrast, Plaintiff contends that bifurcation will just further delay this case, which has already been "pending for almost eighteen months due in large part to Defendants' insistence that the faxes were informing of a Levaquin Tier change." (*Id*) Specifically, Plaintiff contends that if this matter is bifurcated, the first phase of discovery will take nearly a year to complete. Plaintiff argues that such an expense of time cannot be justified. Plaintiff also argues that Defendants "fail to explain just how separation of the Tier change issue from the normal class certification discovery can be accomplished." (*Id.* at 5).

In addition, Plaintiff argues that bifurcation ignores the need to preserve evidence in this TCPA matter. Plaintiff notes that in TCPA cases, electronic discovery involves databases of transmissions records. Plaintiff further notes that both IT and non-IT personnel are responsible for the integrity of these databases. Plaintiff argues that given the different personnel involved in maintaining the databases, there is always a risk that the actual integrity of the databases has been compromised. Plaintiff claims that this issue is compounded by the fact that "the steps taken to actually send the faxes at issue may involve known *and even* unknown outside parties or vendors" coupled with the common practice in data storage to delete data on quick intervals to increase efficiencies and decrease costs. (*Id.* at 7). As such, Plaintiff argues that there is a risk that vendors, both known and unknown, may be deleting or destroying databases relevant to this case. Plaintiff argues that bifurcation will only multiply problems associated with evidence preservation by delaying Plaintiff's ability to secure evidence for almost a year.

Indeed, Plaintiff argues that it will be inherently prejudiced if this matter is bifurcated. In this regard, Plaintiff claims that "[s]ince no discovery has occurred in this case, Plaintiff will be forever prejudiced if evidence relevant to proving this case, evidence in the form of electronic data, is innocently destroyed or deleted as a matter of course by anyone who participated in the sending of the faxes at issue here." (*Id.* at 8). For these reasons, Plaintiff argues that Defendants' motion to bifurcate discovery should be denied.

## II. Analysis

**\*4** Federal Rule of Civil Procedure 42(b) governs requests to bifurcate. According to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in

trial management." *Medpointe Healthcare, Inc. v. HiTech Pharmacal Co., Inc.,* Civil Action No. 03–555(MLC), Civil Action No. 04–1686(MLC), 2007 U.S. Dist. LEXIS 4652, at \*12–13, 2007 WL 188285 (D.N.J. Jan. 22, 2007) (internal quotation marks and citation omitted). Further, the broad discretion afforded courts in handling discovery disputes extends to decisions over bifurcating discovery. See *Weiss v. First Unum Life Ins. Co.,* Civil Action No. 02–4249(GEB), 2008 WL 755958, \* 1 (March 19, 2008); *see also Bandai America Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3d Cir.1985) (holding that bifurcation orders and orders controlling order of discovery are reviewed for abuse of discretion).

Here, the Court finds that bifurcating discovery as proposed by Defendants is warranted under Rule 42(b). In this regard, the Court agrees with Defendants that a narrow, potentially dispositive issue exists concerning whether the faxes sent to Plaintiffs are informational and therefore not actionable under the TCPA. Further, the Court is not persuaded by Plaintiff's argument that the information contained in and attached to its Amended Complaint regarding the lack of Levaquin Tier changes since at least 2004 precludes summary judgment being granted in Defendants' favor. Defendants have already referenced evidence of Tier changes occurring as late as 2007. Conflicting evidence does not always preclude summary judgment. Moreover, the District Court never determined that Plaintiff's now asserted sham allegations do, in fact, state a claim. As a result, even absent Tier changes, the District Court could find that the faxes are informational. As a result, depending on what evidence is ultimately presented, the District Court may determine that summary judgment is warranted.

In addition, the Court finds that the issue concerning whether the faxes here are informational is totally distinct from class issues. Unlike Plaintiff, the Court finds that there will be no significant overlap between the two and therefore no real danger of a duplication of efforts or increasing increase in litigation costs. Moreover, the Court also finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery. While Plaintiff faults Defendants for not supporting their claims concerning the burdens and costs associated with class action discovery, it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]" *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,*

Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., Not Reported in...

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 10 of 81

Civ. No. 11–00011, 2013 WL 663301, at *5 (D.N.J. Feb.21, 2013). It is also generally understood that the costs can be particularly "enormous" for defendants. *Id.*

**\*5** Similarly, the Court finds Plaintiff's projection regarding how long the first phase of discovery will take to be unreasonable. The discovery at issue in phase one is narrow and relates solely to whether the faxes sent to Plaintiff are informational or whether their apparent informational content is a sham. Given this limited scope of discovery, there is simply no reason why it should take close to a year to complete. Instead, the Court is confident that it can be conducted in approximately 4 months.

Further the Court is not convinced that Plaintiff will be prejudiced by bifurcation. While Plaintiff raises concerns over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. First, the faxes at issue were sent in the Spring of 2008, nearly four years before Plaintiff elected to file suit. If evidence preservation and the elapse of time were a substantial concern, one would have expected this case to have been filed more expediently. Second, the fact that no discovery has taken place to date can hardly be blamed on Defendants. In response to Plaintiff's original Complaint, Defendants filed a motion to dismiss. Defendants succeed on that motion: the District Court determined that Plaintiff had failed to assert a viable claim under the TCPA. In response to the District Court's decision, Plaintiff moved for reconsideration or in the alternative to file an amended Complaint. The District Court denied Plaintiff's motion for reconsideration and found that Plaintiff's proposed amended complaint failed to state a claim under the TCPA. Nevertheless, the District Court permitted Plaintiff to file an amended pleading, albeit not in the form attached to the motion for reconsideration. Plaintiff filed its Amended Complaint on June 26, 2013, over 14 months after the initial Complaint was filed. Defendants certainly are not responsible for delaying discovery during this period of time. Quite to the contrary, they moved to dismiss Plaintiff's Complaint and they succeeded on that motion. Third, Defendants have notified third parties of this lawsuit and have put them on notice to preserve evidence. Under these circumstances, the Court finds that Plaintiff will not be prejudiced by an additional 4 month delay caused by bifurcating discovery into two phases.

Everything considered, the Court finds that bifurcating discovery into two phases will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiff. Consequently, the Court hereby bifurcates discovery as requested by Defendants. The parties are directed to submit a proposed schedule for fact discovery concerning whether the faxes sent were informational or whether their apparent informational content was a sham and the faxes were in reality advertisements. The schedule submitted shall have this phase of discovery closing no later than June 13, 2014. [2]

### III. Conclusion

**\*6** For the reasons set forth above, Defendants motion to bifurcate discovery is GRANTED. An appropriate Order follows.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 413534

---

## Footnotes

1  The specific content of the faxes is discussed in detail in the District Court's Supplemental Opinion dated February 6, 2013 [Docket Entry No. 28]. As such, the Court does not go into further detail here.

2  The Court notes that after Defendants' motion to bifurcate was filed, Defendants filed a motion for summary judgment. In response, Plaintiff has filed an opposition arguing that certain discovery is needed in order to respond to Defendants' motion for summary judgment. This Opinion does not reach that issue, but only addresses Defendants' motion to bifurcate.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 11 of 81

Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., Not Reported in...

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 12 of 81

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

2014 WL 4630852
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Dawn HARTLEY–CULP, individually and on
behalf of all others similarly situated, Plaintiff
v.
CREDIT MANAGEMENT COMPANY, Defendant.

Civil Action No. 3:CV–14–0282.
|
Signed Sept. 15, 2014.

**Attorneys and Law Firms**

Cynthia Levin, Law Offices of Todd M. Friedman, PC, King
of Prussia, PA, for Plaintiff.

James McNally, Justin M. Tuskan, Metz Lewis Brodman
Must O'Keefe LLC, Pittsburgh, PA, for Defendant.

***MEMORANDUM AND ORDER***

THOMAS M. BLEWITT, United States Magistrate Judge.

**I. BACKGROUND.**

 **\*1** This putative class action case was instituted, through
counsel, on February 17, 2014, by Plaintiff Dawn Hartley–
Culp, individually and on behalf of all others similarly
situated. (Doc. 1). Named as sole Defendant is Credit
Management Company ("CMC"). Plaintiff alleges that
Defendant CMC began placing a series of calls to her cellular
telephone ("cell phone") beginning in November of 2013.
Plaintiff alleges that the calls made by Defendant CMC to
her cell phone violated the Telephone Consumer Protection
Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, since the
calls were placed by an automated telephone dialing system
("ATDS") or, by an artificial or recorded voice without her
prior express consent. Plaintiff also alleges that Defendant
CMC left numerous pre-recorded messages on her cell phone.

This Court has jurisdiction over this case pursuant to 28
U.S.C. § 1331. [1]

On April 8, 2014, after being granted an extension of time,
Defendant CMC filed its Answer to the Complaint with
Affirmative Defenses. (Doc. 8). Defendant CMC admitted
that it contacted Plaintiff for the purpose of collecting a debt

which Plaintiff allegedly owed. In its Affirmative Defenses,
Defendant CMC asserted that Plaintiff gave express consent
to CMC's client to whom Plaintiff allegedly owed the debt,
and that the calls made to Plaintiff were not placed via an
ATDS. [2]

Subsequently, the Court issued a scheduling order and set case
deadlines, and then extended the deadlines on two occasions.
(Docs. 19, 22 & 26). The current discovery deadline is
November 28, 2014. Plaintiff's Motion for Class Certification
is due December 12, 2014.

Pursuant to 28 U.S.C. § 636(c), the parties consented to
proceed before the undersigned for all matters. (Doc. 17).

The parties are currently engaged in discovery. Plaintiff
indicates that on July 26, 2014, she served written discovery
on Defendant and scheduled a Rule 30(b)(6) deposition for
August 26, 2014.

On August 12, 2014, Defendant CMC filed a Motion
to Bifurcate Discovery, or in the alternative, to Stay
Proceedings. (Doc. 23). Defendant CMC simultaneously filed
its support brief with Exhibits. (Docs. 24 & 24–1 to 24–4).
Plaintiff filed her opposition brief on August 28, 2014. (Doc.
28). Defendant filed its reply brief on September 9, 2014, with
Exhibits. (Docs. 29, 29–1 & 29–2).

Defendant CMC seeks the Court to bifurcate discovery into
two phases with the first phase limited to the issue of whether
Plaintiff expressly consented to receiving calls on her cell
phone. Defendant CMC maintains that if it proves Plaintiff
provided her express consent, then the calls it placed to her do
not violate the TCPA. Defendant CMC then states that if it can
show the calls placed to Plaintiff did not violate the TCPA,
then Plaintiff will not be able to proceed as the representative
of the purported class.

In the alternative, Defendant CMC moves the Court to
stay all proceedings in this case since it contends that
many of Plaintiff's allegations in her Complaint turn on
issues currently pending before the Federal Communication
Commission ("FCC"). Defendant CMC states that the FCC
has primary jurisdiction to determine the issues raised by
Plaintiff in this case.

**II. DISCUSSION.**

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 13 of 81

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

**\*2** Initially, based on the very recent Middle District of Pennsylvania case of *Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D. Pa. June 4, 2014, J. Conaboy),

which is directly on point with our case, as well as *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013), and based on the well-reasoned decision of Judge Conaboy, with which we completely concur, we will deny Defendant CMC's alternative Motion to Stay all Proceedings in this case under the primary jurisdiction doctrine. This Court in *Fenescey* largely relied

upon the Third Circuit's decision in *Gager v. Dell Financial Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013). This Court in *Fenescey* stated that "[g]iven the force and clarity of the [*Gager*] precedential opinion, we have no need to further evaluate the doctrine of primary jurisdiction on the question of whether the TCPA applies to debt collection calls made to cellular phones." 2014 WL 2526571, \*2. This Court in *Fenescey* also found that based on *Gager,* there was no basis to stay its case on the ATDS issue. *Id.,* \*3. [3]

Since we concur entirely with the Court in *Fenescey,* we do not repeat its decision herein, and shall deny Defendant CMC's alternative Motion to Stay Proceedings in this case.

Next, we turn to Defendant CMC's primary Motion to Bifurcate Discovery.

As mentioned, Plaintiff alleged in her Complaint that Defendant CMC violated the TCPA by placing calls to her cellular telephone number without her prior express consent using an automatic telephone dialing system, and by leaving serval voice mail messages. The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Also, as stated, the TCPA applies to debt collection calls made to cellular phones. *Fenescey,* 2014 WL 2526571, \*2 (citing *Gager, supra* ). "Prior express consent is deemed to be granted only if the wireless number is provided by the consumer to the creditor, and the number was provided during the transaction that resulted in the debt owed." *Wattie–Bey v. Step hen and Michaels Assoc., Inc.,* 2014 WL 123597, \*2 (M.D.Pa. Jan.14, 2014) (citation omitted). Also, the burden is on the creditor regarding the issue of whether express consent was provided and the

creditor must show that the required prior express consent was obtained. *Id.* (citation omitted).

There is no question that the Court, in its discretion, can bifurcate discovery under Fed.R.Civ.P. 42. In *Stemrich v. Zabiyaka,* 2014 WL 931069, \*1 (M.D.Pa. March 10, 2014), the Court stated:

> Under Federal Rule of Civil Procedure 42, a trial court may, in its discretion, bifurcate a trial. The rule provides as follows:
>
> **\*3** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed.R.Civ.P. 42(b). The decision to bifurcate, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on a case by case basis. *See Idzojtic v. Pennsylvania R.R. Co.,* 456 F.2d 1228, 1230 (3d Cir.1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages."). In exercising its discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19, 22 (3d Cir.1984). The moving party bears the burden of establishing that bifurcation is appropriate. *See Innovative Office Prods., Inc. v. Spaceco, Inc.,* Civ. No. 05–cv–4037, 2006 WL 1340865, \*1 (E.D.Pa. May 15, 2006).

We disagree with Defendant CMC and its contentions in its briefs that discovery at this stage of the case, *i.e.,* before Plaintiff files her Motion for Class Certification, should be limited to the issue of whether its calls to Plaintiff fall within the "prior express consent" exception. As stated, the burden is on the creditor (in this case Defendant CMC) regarding the issue of whether prior express consent was provided. Also, as stated, the burden is on Defendant CMC to demonstrate that it did not use an automated telephone service when it contacted Plaintiff. If Defendant CMC can meet either of its burdens, Defendant CMC will be entitled to summary judgment on Plaintiff's TCPA claim. On the other hand, if genuine disputes of material fact exist as to whether Defendant obtained Plaintiff's prior express consent, then Defendant will not be

**Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)**

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 14 of 81

entitled to summary judgment on Plaintiff's TCPA claim. *Wattie–Bey v. Stephen and Michaels Assoc., Inc.,* 2014 WL 123597, *3. Likewise, if disputed issues of fact remain as to whether Defendant CMC used automated telephone services in its contacts with Plaintiff, then summary judgment will not be appropriate. *Id.,* *6(citations omitted). However, we concur with Plaintiff that "whether or not [Defendant] CMC had [prior express consent] to contact Plaintiff is not a threshold question that must be resolved at this stage, before the parties have had an opportunity to conduct class-wide discovery." (Doc. 28–1, p. 6, citing *Grant v. Capital Mgmt. Servs., L.P.,* 449 Fed.Appx. 598, 600 (9th Cir.2011) (" 'express consent' is not an element of a TCPA Plaintiff's prima face case, but rather is an affirmative defense for which the Defendant bears the burden of proof.").

We also agree with Plaintiff that despite Defendant CMC's contention and its Exhibits, that it would not be unduly burdensome on Defendant at this point of the case to respond to Plaintiff's discovery requests, including requests regarding the putative class action. Also, we find prejudice to Plaintiff if discovery was bifurcated as Plaintiff maintains. As Plaintiff points out, she "primarily seeks documents that are ordinarily maintained as business records, and to the extent that CMC will be burdened by having to produce any such documents, CMC can respond with the appropriate objections and substantiate them during the meet and confer process." (Doc. 28–1, p. 5). Defendant CMC will still be able to conduct any discovery it deems necessary to try and meet its burden as to its affirmative defenses, and it will be able to file a dispositive motion at the conclusion of discovery. Moreover, we agree with Plaintiff that she should have the benefit of discovery before she has to file her Motion for Class Certification, especially since Plaintiff has the burden of class certification. *See Hawk Valley, Inc. v. Taylor,* —— F.R.D. ——, 2014 WL1302097 (E.D.Pa. March 31, 2014)

(citation omitted) (court granted Plaintiff's motion for class certification in a TCPA unsolicited-fax case since it found, in part, common issues of law and fact predominated).

**\*4** Finally, we concur with Plaintiff that bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions.

## III. CONCLUSION.

Accordingly, the Court will deny entirely Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**). [4]

An appropriate Order will be issued.

### *ORDER*

**AND NOW,** this *15* day of **September, 2014,** based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**) is **DENIED IN ITS ENTIRETY.**

2. The discovery deadline in this case is extended to **December 29, 2014,** and the deadline for Plaintiff's Motion for Class Certification is extended to **January 12, 2015.**

### All Citations

Not Reported in Fed. Supp., 2014 WL 4630852

---

## Footnotes

1    Jurisdiction of this Court is properly based on federal question, 28 U.S.C. § 1331, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq. See Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D.Pa. June 4, 2014).

2    According to Defendant CMC's Doc. 24 brief, p. 3 n. 2, Plaintiff allegedly owed a debt to Defendant CMC's client Extendicare Health Services, Inc. Defendant CMC notes that it is presently pursuing discovery to try and

show that Plaintiff voluntarily provided her cell phone number to Extendicare staff during her intake interview upon becoming a patient of Extendicare's rehabilitation division.

3    *See* *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir. Aug.22, 2013) (Third Circuit Court reversed dismissal of case alleging violations of 47 U.S.C. § 227(b) (1)(A)(iii), "the TCPA's provision banning certain automated calls to cellular phones."). In *Gager,* Plaintiff alleged that Defendant was obliged under the TCPA to stop autodialed calls to her cellular phone since she withdrew her prior express consent to be called on said phone via an automatic dialing system. The District Court granted Defendant's Rule 12(b)(6) Motion to Dismiss since it found that Plaintiff could not revoke her prior express consent. *See* *Gager v. Dell Financail Services, LLC,* 2012 WL 1942079 (M.D.Pa. May 29, 2012). The Third Circuit Court reversed the dismissal and found that "(1) the TCPA affords [Plaintiff] the right to revoke her prior express consent to be contacted on her cellular phone via an autodialing system and (2) there is no temporal limitation on that right." 727 F.3d 265, 2013 WL 4463305, *2.

4    The Court notes that it will, sua sponte, extend the discovery deadline and the deadline for Plaintiff to file her Motion for Class Certification. The discovery deadline will be extended to December 29, 2014, and Plaintiff's Motion for Class Certification will be extended to January 12,2015.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

Case 1:25-cv-01410-JKM   Document 16-2   Filed 10/09/25   Page 16 of 81

EQT Production Company v. Terra Services, LLC, Not Reported in Fed. Supp. (2014)

2014 WL 12838677
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

EQT PRODUCTION COMPANY, Plaintiff,

v.

TERRA SERVICES, LLC, Defendant.

Civil Action No. 14-1053
|
Signed 10/21/2014
|
Filed 10/22/2014

**Attorneys and Law Firms**

Patricia L. Dodge, Caleb M. Turner, Nicholas J. Bell, Chad I. Michaelson, Meyer, Unkovic & Scott LLP, Ryan James, Farneth Tomosovich, LLC, Pittsburgh, PA, for Plaintiff.

Daniel Carmeli, John K. Gisleson, Matthew H. Sepp, Morgan, Lewis & Bockius LLP, Pittsburgh, PA, Glen R. Stuart, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Kenneth S. Komoroski, Morgan, Lewis & Bockius LLP, Canonsburg, PA, for Defendant.

## MEMORANDUM ORDER

Nora Barry Fischer, United States District Judge

 **\*1** Pursuant to the Court's rulings at the Initial Case Management Conference, held on September 30, 2014, and the Court's Order of October 1, 2014, (Docket No. 21), Defendant, Terra Services, LLC ("Terra"), filed a Motion to Bifurcate Discovery on October 10, 2014, (Docket No. 25). Plaintiff, EQT Production Co. ("EQT"), filed its Response in Opposition on October 17, 2014. (Docket No. 30). The Motion is now ripe.

"The decision to bifurcate, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on a case by case basis." Hartley-Culp v. Credit Mgmt. Co., No. 14-282, 2014 WL 4630852, at \*3 (citing Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972) ). "Bifurcation

"remains the exception rather than the rule." Innovative Office Prods., Inc. v. Spaceco, Inc., No. 05-4037, 2006 WL 1340865, at \*1 (E.D. Pa. May 15, 2006). "Courts ... do not routinely grant motions to bifurcate discovery, unless there is some showing on the part of the moving party as to why bifurcation is appropriate." Cephalon, Inc. v. Sun Pharm., Ltd., No. 11-5474, 2013 WL 3417416, at \*3 (D.N.J. July 8, 2013). "[T]he moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." Cephalon, Inc., 2013 WL 3417416 at \*3.

Though Terra argues that bifurcation would expedite proceedings in this case, its proposed schedule takes discovery in this case through the end of January, 2017. (Docket No. 25-1 at p. 2). EQT points out that this schedule "presumes an immediate decision from the Court on dispositive motions." (Docket No. 30 at p. 4). The Court agrees that this is unrealistic. Adding the several months it will no doubt take this Court to rule on said motions, under Terra's schedule, discovery in this case might remain open until 2018. Cognizant of the availability of witnesses and their diminishing ability to recall the events of 2012, the Court refuses to use its discretion to bifurcate discovery on this ground.

Additionally, as EQT argues, Terra's proposal would likely result in deposing the same witnesses twice–once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.

Terra's objections are preserved as is the Court's right to bifurcate the trial of this action.

With the foregoing in mind, IT IS HEREBY ORDERED that Defendant's Motion to Bifurcate Discovery [25] is DENIED.

IT IS FURTHER ORDERED that the parties meet and confer and file a joint proposed case management order by **November 3, 2014**.

### All Citations

Not Reported in Fed. Supp., 2014 WL 12838677

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   1

KeyCite Yellow Flag

Declined to Extend by Quinn v. Specialized Loan Servicing, LLC, N.D.Ill., February 9, 2017

2015 WL 5032052
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Logan LOREAUX, et al., Plaintiffs,
v.
ACB RECEIVABLES MANAGEMENT,
INC., et al., Defendants.

Civil Action No. 14–710 (MAS).
|
Signed Aug. 25, 2015.

**Attorneys and Law Firms**

Joseph K. Jones, Law Offices of Joseph K. Jones, LLC, Fairfield, NJ, Benjamin Jarret Wolf, Law Offices of Joseph K. Jones LLC, New York, NY, for Plaintiffs.

Jonathan S. Ziss, Goldberg Segalla LLP, Philadelphia, PA, for Defendants.

MEMORANDUM OPINION

BONGIOVANNI, United States Magistrate Judge.

**\*1** This matter comes before the Court upon Defendant ACB Receivables Management, Inc.'s ("ACB") motion to bifurcate discovery. [Docket Entry No. 24]. Plaintiffs Logan Loreaux, an infant by parent and natural guardian Katelyn Jones, and Katelyn Jones ("Plaintiffs") oppose ACB's motion. The Court has fully reviewed and considered all of the arguments made in support of and in opposition to ACB's motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, ACB's motion is GRANTED.

**I. Background and Procedural History**

In light of the parties' familiarity with the facts of this matter, they shall not be restated at length herein. Instead, the Court shall recount only those facts necessary for the resolution of ACB's motion to bifurcate. This case concerns whether the debt collection correspondence sent by ACB to Plaintiffs allegedly listing an "Amount Due" different

than the "Amount Owed" was false, deceptive or misleading within the meaning of the Fair Debt Collection Practices Act (the "FDCPA"). Plaintiff alleges that the correspondence sent out was deceptive and false in violation of the FDCPA. In contrast, ACB argues that the correspondence did not warrant any plausible misleading or incorrect interpretation and, therefore, does not violate the FDCPA.

Through this motion, ACB asks that discovery be initially limited to Plaintiffs' claims that the debt collection correspondence sent to them by ACB, listing an "Amount Due" different than the "Amount Owed," was false, deceptive or misleading. (ACB Br. at 1; Docket Entry 24). ACB believes Plaintiffs' individual claims regarding the correspondence involve a narrow, potentially dispositive issue that is isolated and distinct from class discovery. (*Id.* at 2). After conducting the aforementioned limited discovery, ACB anticipates filing a motion for summary judgment with regard to Plaintiffs' individual claims that ACB's correspondence to them violated the FDCPA because it was deceptive and false. (ACB Reply Br. at 1; Docket Entry No. 29).

ACB contends that bifurcating discovery in this manner represents the most efficient and effective approach to this litigation. Specifically, ACB claims that bifurcating discovery would allow the parties to expeditiously reach potentially case dispositive motion practice. In this regard, ACB notes that if its anticipated motion for summary judgment is granted, said motion would dispose of the entire action, maximizing efficiencies and cost savings by rendering class discovery entirely unnecessary. (ACB Br. at 2). Further, ACB claims that even if its summary judgment motion is denied, the case will not have been derailed because complete class discovery can still occur without any prejudice to Plaintiffs.

Relying on *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,* No. 3:12–cv–02132 FLW–TJB, Docket Entry No. 52–1 (D.N.J. Sept. 13, 2013), ACB argues that bifurcation is appropriate given the narrow, potentially case dispositive issue to be addressed by the Court coupled with the fact that class wide discovery creates significant costs and burdens it and the Court. (*Id.* at 3). ACB notes that in *Physicians Healthsource,* the Court granted a motion to bifurcate where there was a limited and potentially dispositive issue involving the plaintiff's Telephone Consumer Protection Act ("TCPA") claim. In so doing, the Court took note of the costs associated with class discovery as well as the fact that the defendant's anticipated summary judgment motion could render said discovery unnecessary.

**\*2** With respect to the discovery already sought by Plaintiffs, ACB argues that several of the class discovery demands propounded are unduly burdensome on their face. ACB notes that it uses a third party vendor to generate its debt collection correspondence and that the production of the information requested would require ACB to review private information and medical claim information with regards to members of the proposed class and family members of the class insured under their guarantor's healthcare policy. (*Id.* at 2–3). Thus, ACB anticipates dealing with HIPAA issues in the course of providing the information requested by Plaintiffs. (*Id.* at 3).

ACB notes that pursuant to FED.R.CIV.P. ("Rule") 42(b), it is within a trial court's discretion to bifurcate discovery and courts consider judicial economy and expedition when making such a decision. (*Id.*) ACB argues that because there is no significant overlap between the individual discovery relevant to Plaintiffs' specific claims and class-wide discovery, there is no danger of duplication or of increase in litigation costs if discovery is done in two steps. (ACB Reply Br. at 6). ACB claims that conducting discovery in two phases will neither be protracted nor unduly delay these proceedings because key, pertinent facts relevant to the individual claims are already in the record as well as the Rule 26 disclosures served by the parties. Further, ACB notes that initial written individual discovery is well underway, including ACB's document production, interrogatory responses, and responses to Plaintiffs' requests for admissions. (*Id.* at 7).

Further, ACB argues that the earlier denial of its motion to dismiss does not constitute a determination that Plaintiffs' individual FDCPA claims are meritorious because the applicable standard for a motion to dismiss is highly deferential; whereas, the applicable standard for a motion for summary judgment requires Plaintiffs to present more facts and evidence to establish their claims. (ACB Br. at 4). ACB contends that the Court has yet to consider the meaning of the two amounts listed on the debt collection correspondence and, thus, has not made a decision on whether Plaintiffs have legally viable claims. (*Id.*) ACB argues that discovery should be bifurcated to address this narrow issue first so that ACB can file a motion for summary judgment on same. ACB argues that doing so would allow the Court to address the merits of this issue before determining class certification, a costly and time consuming undertaking. (*Id.* at 4–5). As a result, ACB claims that bifurcating discovery would preserve judicial resources and the litigants' resources as well. Lastly, ACB argues that denying bifurcation would

prevent an early and efficient determination regarding the merits of Plaintiffs' individual claims and, therefore, would go against the principles embodied in Rule. 1. (*Id.* at 5–6).

In response to Plaintiffs' arguments asserting that their requested class discovery only entails production of debt collection correspondence to all class members, ACB points out that Plaintiffs have yet to withdraw their other class-based discovery requests or their discovery requests directed to Defendants' net worth information. (ACB Reply Br. at 5). Because Plaintiffs have failed to offer any explanation regarding their additional class-based discovery requests and have, likewise, failed to have withdrawn same, ACB claims bifurcation is necessary. Further, ACB contends that even providing only debt collection correspondence to all class members would prove burdensome to it for the reasons described above.

**\*3** Plaintiffs, however, claim that the requested bifurcation should be denied because ACB cannot meet the legal standard for it in part because the requested discovery is neither overly complicated nor unduly burdensome. As such, Plaintiffs argue that ACB's motion should be denied. (Pl. Opp. Br. at 2; Docket Entry 28). With respect to the discovery requests they have served, Plaintiffs suggest entering into Stipulation/Consent Order limiting same. (*Id*.) Plaintiffs argue that really the only class discovery at issue is directed to the sole issue of how many letters similar to that sent to Plaintiffs were mailed by ACB to other New Jersey consumers during the class period. (*Id.*) Plaintiffs contend that medical information, including sensitive HIPAA information, will not be needed in the course of discovery. Indeed, Plaintiffs assert that they only request the debt collection letters sent by ACB. (*Id.* at 3).

Further, Plaintiffs contend that ACB's arguments regarding the burdensomeness and cost of not bifurcating discovery are totally conclusory in nature and should be afforded no weight. In this regard, Plaintiffs argue that ACB's claims amount to nothing more than blanket generalizations without any evidence of the approximate costs associated with discovery, name of the third party vendor alluded to by ACB or the business relationship between ACB and that vendor. (*Id.* at 3–4). Plaintiffs distinguish this matter from the *Physicians Healthsource* case, noting that that matter involved a TCPA violation, not a FDCPA violation. (*Id.* at 5).

Relying on Rule 42(b), Plaintiffs argue that ACB has failed to sustain its burden because it has yet to prove that bifurcation would best serve the interests of judicial economy and that

it would not unduly prejudice Plaintiffs. Further, Plaintiffs argue that here there is no need to divide discovery as to liability and damages. (*Id.* at 6–7). Again, Plaintiffs claim that it would not be burdensome for ACB to provide Plaintiffs with the form debt collection letters, similar to the debt collection letter ACB mailed them, which were sent to New Jersey consumers that stated different monetary amounts for "Amount Owed" and "Amount Due." For these reasons, Plaintiffs argue that ACB's motion to bifurcate discovery should be denied.

## II. Analysis

Federal Rule of Civil Procedure 42(b) governs requests to bifurcate. According to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.,* Civil Action No. 03–555(MLC), Civil Action No. 04–1686(MLC), 2007 U.S. Dist. LEXIS 4652, at *12–13, 2007 WL 188285 (D.N.J. Jan. 22, 2007) (internal quotation marks and citation omitted). Further, the broad discretion afforded courts in handling discovery disputes extends to decisions over bifurcating discovery. *See Weiss v. First Unum Life Ins. Co.,* Civil Action No. 02–4249(GEB), 2008 WL 755958, *1 (D.N.J. March 19, 2008); *see also Bandai America Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3d Cir.1985) (holding that bifurcation orders and orders controlling order of discovery are reviewed for abuse of discretion).

**\*4** Here, the Court finds that bifurcating discovery as proposed by ACB is warranted under Rule 42(b). In this regard, the Court agrees with ACB that a narrow, potentially dispositive issue exists concerning whether ACB's correspondence to Plaintiffs violated the FDCPA's prohibition against deceptive and false communications. Further, the Court is not persuaded by Plaintiffs' argument that the denial of ACB's Motion to Dismiss precludes summary judgment being granted in ACB's favor. The District Court never determined whether the existence of the two conflicting amounts on the debt correspondence does, in fact, represent a violation of the FDCPA as argued by Plaintiffs. As a result, depending on what evidence is ultimately presented,

the District Court may determine that summary judgment is warranted.

In addition, the Court finds that whether ACB's correspondence to Plaintiffs is deceptive and false is a narrow and distinct issue that does not implicate class wide discovery. Further, the Court finds that there will be no significant overlap between the two and therefore no real danger of a duplication of efforts or corresponding increase in litigation costs. Moreover, the Court finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery. While Plaintiffs fault ACB for not supporting their claims concerning the burdens and costs associated with class action discovery, it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]" *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Civ. No. 11–00011, 2013 WL 663301, at *5 (D.N.J. Feb.21, 2013). It is also generally understood that the costs can be particularly "enormous" for defendants. *Id.* Furthermore, while the Court agrees with Plaintiffs that medical information, including sensitive HIPAA information, will likely not be needed in the course of discovery, the Court finds that bifurcating discovery and, as a result, providing ACB with an opportunity to file a motion for summary judgment, will best serve the interests of judicial economy and promote efficiency.

For the reasons stated above, the Court finds that bifurcating discovery into two phases will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiffs. Consequently, the Court hereby bifurcates discovery as requested by ACB. The parties are therefore directed to meet and confer to submit a proposed schedule for the first phase of discovery. This schedule shall be submitted no later than *September 14, 2015.*

## III. Conclusion

For the reasons set forth above, ACB's motion to bifurcate discovery is GRANTED. An appropriate Order follows.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 5032052

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2336513

Only the Westlaw citation is currently available.

United States District Court, D. Utah.

Jordan CAMERON, on behalf of himself
and others similarly situated, Plaintiff,

v.

CHW GROUP, INC. a New Jersey corporation doing
business as Choice Home Warranty, Defendant.

Case No. 2:23-cv-00320-HCN-DBP

|

Filed 08/13/2025

District Judge Howard C. Nielson, Jr

MEMORANDUM DECISION AND ORDER

Dustin B. Pead United States Magistrate Judge

**\*1** Before the court are two related motions. First the parties move the court for a scheduling conference because the parties have been unable to reach agreement on all the issues discussed in their Fed. R. Civ. P. 26(f) conference. [1] Second, Defendant moves the court for an order bifurcating discovery between the individual claim of Plaintiff Jordan Cameron and the putative class members' claims. [2] Bifurcation of discovery is one issue upon which the parties could not agree during the Rule 26(f) conference. Having carefully considered the parties' written memoranda and proposed scheduling orders, along with relevant case law, the court orders as follows. [3]

### BACKGROUND

In their scheduling conference the parties could not reach agreement on the following issues:

1. Defendant requests discovery be bifurcated. Plaintiff opposes these requests.

2. Defendant wants to limit each side to 5 depositions each. Plaintiff wants to limit each side to 10 depositions each.

3. Defendant does not want to limit the number of requests for admissions. Plaintiff wants to limit each side to 50 requests.

4. Defendant does not want to limit the number of requests for production. Plaintiff wants to limit each side to 50 requests.

5. Plaintiff is requesting that the deadline to file a motion for class certification occur approximately one month after the fact discovery deadline. Defendant requests this court set the deadline for class certification to occur after the close of expert discovery. [4]

The court resolves these issues in the scheduling order that is entered contemporaneously with this order. Therefore, the parties' request for a scheduling conference to consider these issues is GRANTED. The court further addresses the Motion to Bifurcate in this order. [5]

This is a putative class action. Plaintiff alleges Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (TCPA) by calling Plaintiff and putative class members with solicitations despite having their phone numbers registered on the National Do-Not-Call Registry. Plaintiff alleges Defendant utilized a campaign to "market its home warranty services through the use of unsolicited calls, pre-recorded text messages, and other deceptive practice in plain violation" of the TCPA. [6] This case was before District Judge Bruce Jenkins before he passed away. Defendant sought to dismiss this case and following the denial of that motion, and the denial of a Motion to Reconsider Interlocutory Order, the parties held their Rule 26(f) scheduling conference earlier this year. As noted above the parties failed to reach agreement on all discovery issues and the present motion followed.

### DISCUSSION

**\*2** In considering whether to bifurcate discovery in a putative class action, courts look to both Federal Rules of Civil Procedure 23 and 42(b). [7] Rule 42(b) provides a trial court with wide discretion to bifurcate proceedings for "convenience, to avoid prejudice, or to expedite and economize." [8] When considering whether to bifurcate class discovery and a plaintiff's individual claims, courts consider

" '(1) [the] overlap between individual and class discovery, (2) whether bifurcation will promote [📁 Fed. R. Civ. P. 23's] requirement that certification be decided at 'an early practicable time,'(3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery.' " [9] As this court has noted, "[b]ifurcation under Rule 42 is not the norm or even a common occurrence." [10] However, in the context of TCPA putative class actions, courts have bifurcated discovery, and Defendant cites to a number of cases from other circuits, [11] where courts have recognized the efficiencies of bifurcated discovery in TCPA class actions. [12] Courts granting such motions have acknowledged the well-recognized fact that "discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens." [13] And Federal Rule 1's guiding directive "to secure the just, speedy, and inexpensive determination of every action and proceeding." [14]

**\*3** "The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." [15] Class certification requires the court to be "satisfied, after a rigorous analysis, that the pre-requisites of 📁 Rule 23(a) have been satisfied." [16] To certify a class, a plaintiff must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [17] As noted by this court, often, "the class determination 'involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " [18] Courts are therefore "reluctant to bifurcate class-related discovery from discovery on the merits." [19] "This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst" [20] and can result in "petty [ ] fights over what constitutes merits discovery versus class discovery." [21] Turning to the factors outlined in *Klassen* [22] and applied by this court in *Dillard* [23], the court finds that bifurcation is warranted here.

Defendant argues that while bifurcated discovery may not be appropriate in all cases, it is appropriate here because this is not a routine merits versus class bifurcation request. Instead, Defendant's focus is on "narrow issues that are unique to Plaintiff's individual TCPA claim (e.g., whether he

consented, is a "residential telephone subscriber," received a "telephone solicitation") for which no class discovery would be necessary for a short period before proceeding to broader discovery." [24]

First, in contrast to *Dillard*, there is enough separation between class discovery and individual discovery to warrant bifurcation. This includes discovery concerning whether Plaintiff consented to the calls, whether his particular number is registered on the National DNC Registry, whether Plaintiff is a "residential telephone subscriber", and whether Plaintiff received telephone solicitations that fall within the TCPA. As noted by other courts, these narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. TCPA cases, in the court's view, present a unique opportunity that warrants bifurcated discovery due to those cost savings.

In closely related fashion, the court agrees with Defendant that 📁 Rule 23 requires certification be decided at "an early practicable time" not for "the earliest practicable class certification" as advanced by Plaintiff. 📁 Rule 23 must be balanced with Rule 1's requirements and limited discovery that may ultimately preclude costly class discovery serves Rule 1's purposes. There is nothing in limited individual focused discovery that prevents class certification at "an early practicable time."

As to the third factor, the court is persuaded that counsel here are of a sophisticated enough nature to not disintegrate into childish "petty discovery fights over what constitutes merits discovery versus class discovery." [25] Counsel in the authority relied on by Defendant were able to manage this divide and the court is confident counsel can do so here. The court finds judicial economy is promoted by an efficient narrow focus on Plaintiff before proceeding to class discovery. If the case can be resolved on those narrow dispositive issues relevant to Plaintiff and his individual claims, the limited resources of the court will be preserved. And, if Plaintiff moves forward past such discovery, he will be better positioned to represent the needs of the class.

**\*4** The prejudice identified by Defendant does not appear to be unique and mostly cost based. However, in taking all the factors together, along with the reasoning found in the authority cited to by Defendant that is persuasive, discovery should be bifurcated in this case. Plaintiff's allegations of prejudice focus on alleged discovery disputes and additional

delays and costs. As noted above, there is the potential for cost savings for all parties and the court is persuaded that some discovery that focuses on Plaintiff will be utilized in making a class certification decision later. For example, the typicality requirement will benefit from discovery into Plaintiff.

Finally, the court is not persuaded by Plaintiff's arguments to the contrary. There is no request to stay discovery such as in *Dillard*, and Defendant's discovery requests that appear to be class-related do not amount to waiver. Moreover, the "more than two years later"[26] request to bifurcate discovery does not preclude such a request given what happened procedurally in this case and with the unfortunate passing of Judge Jenkins.

**ORDER**

For the foregoing reasons, Defendant's Motion to Bifurcate Discovery is GRANTED. Defendant may conduct discovery focusing on Plaintiff's individual TCPA claims, and this will be followed by class discovery.

DATED this 13 August 2025.

**All Citations**

Slip Copy, 2025 WL 2336513

---

## Footnotes

1    ECF No. 51.

2    ECF No. 52.

3    District Judge Howard Nilson referred this case to the undersigned pursuant to ⚑ 28 U.S.C. § 636(b)(1)(A). Under DUCivR 7-1(g), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda.

4    Joint Motion for Scheduling Conference at 2, ECF No. 51.

5    Plaintiff filed a Motion to Strike the Motion to Bifurcate. The court denied this motion. ECF No. 56.

6    Complaint at ¶ 2, ECF No. 1.

7    *Klassen v. SolidQuote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 5497865, at *2 (D. Colo. Aug. 23, 2023).

8    Fed. R. Civ. P. 42(b).

9    ⚑ *Dillard v. Maverik, Inc.*, No. 2:24-CV-00285-TS-JCB, 2024 WL 4145162, at *2 (D. Utah Sept. 11, 2024), objections overruled, No. 2:24-CV-285-TS-JCB, 2024 WL 4534694 (D. Utah Oct. 21, 2024) (quoting *Klassen*, 2023 WL 5497865, at *2.

10   *Gadd v. S. Jordan City*, No. 2:15-CV-00667, 2018 WL 6441763, at *1 (D. Utah Dec. 7, 2018) (citation and quotations omitted).

11   *See Sapan v. Fin. of Am. Reverse LLC*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935, at *3 (C.D. Cal. July 14, 2025) (bifurcating discovery between the plaintiff's individual claim and class discovery); *Moore v. Demand Science Grp, LLC*, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) ("The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation ... because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal"); *Pavelka v. Paul Moss Ins. Agency, LLC*,

2023 WL 3728199, at *3 (N.D. Ohio May 30, 2023) ("In cases asserting both individual liability and potential 'class action' claims under the TCPA, courts have often approved bifurcating discovery in such cases where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.") (collecting cases); *Osidi v. Assurance IQ, LLC*, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case, finding "the need for class discovery may be eliminated if [d]efendant is able to demonstrate that the [n]amed [p]laintiff lacks viable individual claims"); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (granting defendant's motion to bifurcate discovery in TCPA case and finding "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive"); *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (reasoning that the limited discovery into the individual plaintiff "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery") (quotation and citation omitted); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (granting bifurcated discovery in a TCPA case).

12    *See, e.g., Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) ("In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery 'where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.') (quoting *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) (collecting cases).

13    *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020).

14    Fed. R. Civ. P. 1.

15    *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015); *see also* 🚩 *Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) (noting district courts have broad discretion to control discovery and to dictate the sequence of discovery)

16    🚩 *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citation omitted).

17    🚩 Fed. R. Civ. P. 23(b)(3).

18    🚩 *Dillard*, 2024 WL 4145162, at *3 (quoting 🚩 *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quotation and citation omitted)).

19    *Klassen*, 2023 WL 5497865, at *2 (quotation and citation omitted).

20    *Id.*

21    *Id.* at 3.

22    2023 WL 5497865.

23    🚩 2024 WL 4145162.

24      Motion at 11.

25      *Klassen*, 2023 WL 5497865, at *3.

26      Plaintiff's Opposition Memorandum at 2.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2607303
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Anthony FANIA, on Behalf of Himself
and Others Similarly Situated, Plaintiff,
v.
KIN INSURANCE, INC., Defendant.

Case No. 22-12354
|
Signed May 24, 2024

**Attorneys and Law Firms**

Alex Phillips, Strauss Borrelli PLLC, Chicago, IL, David H. Fink, Nathan J. Fink, Fink Bressack PLLC, Bloomfield Hills, MI, Anthony I. Paronich, Broderick Law P.C., Boston, MA, for Plaintiff.

Dane Michael Lepola, Jonathan F. Karmo, Howard & Howard Attorneys PLLC, Royal Oak, MI, Paul Heeringa, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO BIFURCATE DISCOVERY

GERSHWIN A. DRAIN, United States District Judge

### I. Introduction

**\*1** Plaintiff Anthony Fania ("Fania" or "Plaintiff") filed this lawsuit in October 2022 on behalf of himself and others similarly situated. [ECF No. 1]. The class action complaint accuses Defendant Kin insurance ("Kin" or "Defendant") of violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 (b) (the "TCPA"). ECF No. 1, PageID.9. Plaintiff's claim is based on an alleged "pre-recorded" call to his cell phone on August 29, 2022.

Before the Court is Defendant Kin's Motion to Bifurcate Discovery. It was filed on October 23, 2023. Plaintiff responded on November 7, 2023, and Defendant replied on November 9, 2023. The motion is fully briefed.

Upon review of the parties' briefing and applicable authority, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve Defendant's Motion for Bifurcation on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, Defendant's Motion is **GRANTED**.

### II. Factual and Procedural Background

Kin sells insurance products in multiple states and consumers may request an insurance quote from Kin through various websites. It alleges that, on August 29, 2022, Fania visited www.dailyinsurancedeals.com (the "subject website"), to request an insurance quote.

On the other hand, Plaintiff alleges that he "received a pre-recorded telemarketing call from the Defendant on August 29, 2022," and during that call, a "recorded message asked if the call recipient was looking for home insurance." ECF No. 1, PageID.5. Plaintiff says he "recognized" that "he was speaking to a robot, so he interrupted the recorded message asked the robot a question" and did not receive a response. *Id.* He was then told by a live agent that they were calling from Kin Insurance. *Id.* Plaintiff "then received another call from Tamely Jobs, who was following up on the pre-recorded call that the Plaintiff received and continued to promote the Defendant's services." *Id.*

Fania subsequently commenced the instant action. Kin filed a Motion to Compel Arbitration, arguing that Fania had signed an arbitration agreement. Because Fania denied signing the agreement, the Court determined that Fania had "sufficiently put[ ] 'in issue' the formation of the agreement and its alleged signing by him." ECF No. 16, PageID.209. And the Court stated that, "as required by [the Federal Arbitration Act, 9 U.S.C.] § 4, the Court will 'proceed summarily to the trial' on the disputed question." *Id.* Accordingly, the Court set a trial date and ordered the parties to conduct discovery "for the limited purpose of addressing the contract formation issue[.]" *Id.* at PageID.211.

Before the trial date, however, Defendant voluntarily withdrew the Motion to Compel Arbitration and raised the issue of bifurcation. *See* ECF No. 22. And the Court subsequently ruled, by stipulation of the parties, that "merits discovery may proceed generally while and until the Court decides the bifurcation issue, provided that (a) Kin will not need to respond to any classwide discovery issued by Plaintiff until thirty (30) days after the Court rules on bifurcation, and (b) Plaintiff shall not serve discovery regarding classwide issues on third-parties while the Court considers the bifurcation issue." ECF No. 26, PageID.256.

### III. Applicable Law and Analysis

**\*2** Fania is the sole named Plaintiff in this action. Defendant asserts that "[i]f a live person indeed initiated and conducted the call(s) at issue here or if Kin is not legally responsible for any supposed 'pre-recorded' calls that Plaintiff did receive (as discovery on these narrow issues will prove), there will be no need for invasive and burdensome additional discovery, let alone class discovery, because this entire case will be over (on its merits and for lack of standing)." ECF No. 28, PageID.266. Accordingly, Defendant argues that bifurcation is necessary to resolve "the narrow case-dispositive questions of[:] (1) whether Plaintiff received a pre-recorded call (and therefore could even attempt to bring a claim on behalf of the putative class)[,] and (2) whether Kin is legally responsible for such calls." *Id.*, at PageID.268.

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Additionally, Fed. R. Civ. P. 42 (b) permits a district court to "bifurcate trial on separate issues in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12183618, at \*2 (E.D. Mich. Dec. 3, 2013). Again, "[w]hether to try issues separately under Rule 42(b) is within the district court's discretion." *See* *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (noting that a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party). However, "[t]he party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials." *Id.*, (quoting *K.W. Muth Co. v. Bing-Lear Mfg. Group*, No. 01-CV-71925, 2002 WL 1879943, \*3 (E.D. Mich. July 16, 2002)) (quotation marks and citation omitted). The decision to bifurcate is made "on a case-by-case basis" and is "[u]ltimately" a practical decision. *Id.* (quotation marks and citations omitted).

Under § 227 (b)(1)(A), it is unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)" to a recipient in the United States "using any automatic telephone dialing system or an artificial or prerecorded voice." Thus, the dispositive issue for Fania turns on the question of whether he received a call that was made using prerecorded voice. *See, e.g.,* *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737, 743 (6th Cir. 2013) (affirming dismissal of TCPA claims because plaintiff did not receive any prerecorded calls).

In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery "where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery." *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at \*2 (N.D. Ohio May 30, 2023); *see e.g., Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at \*2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA case after determining that whether an automatic dialing system was used was an issue of liability distinct from class certification, and "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive");

**\*3** Here, the need for class discovery may be eliminated if Kin is able to demonstrate that Fania, the sole named Plaintiff, lacks a viable individual claim. *See* *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."). Further, class discovery regarding potential class members, the number of which is "likely at least in the thousands[,]" ECF No. 1, PageID.7, is not necessary to address certain issues that may be dispositive of Fania's individual claim and ability to represent the purpoted class. This includes whether the phone call was pre-recorded.

Additionally, the evidence so far discovered with respect to Fania has revealed a vigorous dispute regarding a purportedly fraudulent lead that resulted in Fania's information being entered on www.dailyinsurancedeals.com. It was either Fania, or someone pretending to be Fania, that consented to receive insurance quotes and arbitrate potential issues resulting from this transaction. In these circumstances, the Court finds that this narrow and potentially dispositive issue is distinct from issues of liability to be determined in this case on a class-

wide basis. Accordingly, and for purposes of efficiency, the Court will review evidence and make a determination with regard to Fania's plaintiff-specific claim prior to costly and time-consuming class discovery.

Proceeding in this manner serves the interests of justice and efficiency. *See* 🚩 *Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case based on a narrow, potentially dispositive issue that was distinct from class issues, and recognizing that bifurcation had the potential to "save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery"); *see also Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."). Further, the distinctions between the narrow and potentially dispositive issue with respect to Fania, and the issues of liability to be determined on a class-wide basis render this case distinguishable from *McClusky.* There, the Court determined, in a non-TCPA case, that bifurcation was inappropriate because, *inter alia*, "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery." 🚩 *McCluskey v. Belford High Sch.*, No. 09-CV-14345, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011).

Plaintiff argues that bifurcating discovery would defeat efficiency and thereby prejudice him. He says he has previously made discovery requests for Kin to produce messages between it and dailyinsurancedeals.com, including on the process for verifying leads. Plaintiff believes that this information "affects Mr. Fania just as much as it does the class." ECF No. 32, PageID.321. His argument also suggests that bifurcation would engender additional motion practice about the distinction between merits discovery and class wide discovery. *Id.* And he says that:

> **\*4** Kin forecasted it will withhold documents like this if the Court

bifurcates discovery because it believes they relate only to "classwide" issues. In other words, Kin does not intend to produce "merits" discovery no matter how the Court defines it, meaning Mr. Fania will be back in Court to demand documents. That is not "efficient."

ECF No. 32, PageID.315.

Plaintiff's argument is not well taken. As stated *infra*, it was nearly seven months ago when the Court ordered the parties to conduct merits discovery regarding Plaintiff's claims and barred the parties from engaging in class-wide discovery. Class-wide discovery has been off limits, and merits discovery as to Fania is ongoing. Yet, Fania has not raised an issue or filed a discovery motion regarding any unsatisfied discovery requests, which belies his assertion that bifurcating this case "will lead to litigation over what 'bifurcation' means and delay this yet-to-start [class-wide discovery period] again." *Id.* However, Fania is permitted to file a motion if Kin wrongfully denies him discovery to which he is entitled given his individual claim.

In the Court's view, requiring the parties to continue down the path of Plaintiff specific discovery—rather than setting a new discovery schedule for class wide issues at this juncture —is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources.

### IV. Conclusion

For the reasons stated above, the Court orders the following:

1. Defendant's Motion for Bifurcation is **GRANTED**.

2. Discovery will be phased/bifurcated according to the following schedule:

   a. Discovery as to the merits of Plaintiff's individual TCPA claim against Defendant shall proceed for **thirty (30) days** after entry of this order, subject to any extensions granted by the court;

   b. Opening summary judgment motions as to the merits of Plaintiff's individual TCPA claim shall be due

thirty (30) days after the close of the initial phase of individual discovery;

c. Oppositions to summary judgment due **thirty (30) days** after service of opening motions; and

d. Reply briefs in support of summary judgment due **fifteen (15) days** after service of oppositions.

3. Discovery during this initial period shall be limited to issues relevant to determining the merits of Plaintiff's individual TCPA claim.

4. The Parties may issue third party discovery requests during this initial period as needed, but class related discovery shall not be allowed. To the extent Plaintiff has already issued any class discovery, Defendant need not respond to same.

5. If necessary, the Court will set a case management status conference and schedule for class wide discovery after it has ruled on summary judgment motion(s) relating to Plaintiff's individual claim.

**IT IS ORDERED**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2607303

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 30 of 81

Pavelka v. Paul Moss Insurance Agency, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 3728199
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio, Eastern Division.

Jackson PAVELKA and Kaylee Pavelka, Plaintiffs,

v.

PAUL MOSS INSURANCE AGENCY,
LLC dba Epiq Insurance Agency, Defendant.

CASE NO. 1:22 CV 02226
|
Signed May 29, 2023
|
Filed May 30, 2023

**Attorneys and Law Firms**

Taylor True Smith, Woodrow & Peluso, Denver, CO, Scott
D. Simpkins, Climaco, Wilcox, Peca, Tarantino & Garofoli,
Cleveland, OH, for Plaintiffs.

Matthew N. Foree, Freeman Mathis & Gary, Atlanta, GA,
Steven J. Forbes, Freeman Mathis & Gary, Cleveland, OH,
for Defendant.

## MEMORANDUM OF OPINION AND ORDER

DONALD C. NUGENT, United States District Judge

**\*1** This case is now before the Court on *Defendant's
Motion for Determination That Plaintiffs Are Not Proper
Parties and to Dismiss the Complaint* (ECF #20) ("*Motion to
Dismiss*"), filed by Defendant Paul Moss Insurance Agency
("Defendant" or "Paul Moss Insurance") on March 31, 2023.
Plaintiffs Jackson Pavelka and Kaylee Pavelka ("Plaintiffs")
filed their opposition to Defendant's motion on April 18, 2023
(ECF #22), and Defendant filed a reply on May 12, 2023 (ECF
#24). For the reasons set forth below, Defendant's *Motion to
Dismiss* (ECF #20) is DENIED.

## I. BACKGROUND FACTS

On December 9, 2022, Plaintiffs filed this action against
Defendant under the Telephone Consumer Protection Act,
🚩 47 U.S.C. § 227, *et seq.* ("TCPA"), alleging two claims
of violation of the TCPA. The first claim alleges that
Defendant Paul Moss Insurance made calls to Plaintiffs using

an automatic telephone dialing system ("ATDS") without
Plaintiffs' consent (ECF #1 [*Complaint*], ¶ 36-43). The
second claim alleges that Defendant made calls to Plaintiffs
using a prerecorded voice without Plaintiffs' consent (ECF
#1, ¶¶ 44-50). Plaintiffs' *Complaint* also seeks to raise these
claims as a class action "individually and on behalf of all
others similarly situated" (ECF #1, Caption & ¶¶ 17, 28-35)
on behalf of two putative nationwide classes.

The gist of Defendant's *Motion to Dismiss* are assertions
that: (1) Paul Moss Insurance did not initiate *any* call with
Plaintiffs, but rather that it received a "warm transfer" (in
effect, that Paul Moss Insurance received the transfer of
an initial call from another entity, Datalot, with Plaintiff
Kaylee Pavelka on the line, based on the direction or consent
of Kaylee Pavelka after she received the initial call from
Datalot), and that Paul Moss Insurance does not utilize an
ATDS system; (2) Paul Moss Insurance (again) did not make
any telephone calls to Plaintiffs, and that it does not use a
prerecorded voice in its communications; (3) Plaintiffs have
not identified any "harm" caused by Defendant, based on the
fact that Paul Moss Insurance did not initiate any calls with
Plaintiffs (effectively, that Plaintiffs "lack standing" for their
claims); and (4) Plaintiffs have not identified any facts that
Paul Moss Insurance could be held "vicariously liable" for
any calls made by third parties, including Datalot (effectively,
that no "agency" existed between Paul Moss Insurance and
any third party).

Among the items submitted in support of Defendant's motion
are copies of texts between Paul Moss Insurance and Kaylee
Pavelka indicating that Ms. Pavelka consented to receiving
the texts from Paul Moss Insurance, and that the texts were
in fact responsive to information provided by Ms. Pavelka,
as well as recordings of two telephone conversations Ms.
Pavelka had, first, with Datalot, and then with Paul Moss
Insurance, each of which last a number of minutes long and
evidence a consensual exchange of information between the
caller and Ms. Pavelka. There is no dispute that the only
Plaintiff who had *any* interaction with Defendant Paul Moss
Insurance (or Datalot) was Plaintiff Kaylee Pavelka, who is
the "primary and customary user" of the cellular phone at
issue in this case (ECF #1, ¶ 18). [1]

## II. APPLICABLE LAW

**\*2** The TCPA makes it illegal to "make any call (other
than a call made for emergency purposes or made with the

prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice ... to any telephone assigned to a paging service [or] cellular service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Supreme Court has further held that to qualify as an "automatic telephone dialing system" within the meaning of the TCPA, a device must have the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

### III. <u>ANALYSIS</u>

Defendant's motion raises a number of factual issues that make the granting of a motion to dismiss premature at this time. Both Plaintiffs and Defendant, in their briefing on Defendant's motion, present a number of matters that are outside the Pleadings, including various contract provisions between Defendant Paul Moss Insurance and Datalot, affidavits, copies of text messages, and recordings of the telephone conversations between Plaintiff Kaylee Pavelka and Datalot and between Plaintiff Kaylee Pavelka and Defendant Paul Moss Insurance. While FED. R. CIV. P. 12(d) permits a court to then treat a motion to dismiss under FED. R. CIV. P. 12(b) or a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) as one for summary judgment under FED. R. CIV. P. 56,[2] the rule also requires that "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." FED. R. CIV. P. 12(d).

This case is still in its preliminary stages and discovery is ongoing. At the Case Management Conference, held on February 27, 2023, Defendant (following the position it raised in the FED. R. CIV. P. 26(f) and LR 16.3(b) *Planning Report of the Parties*, ECF #14) suggested that the Court bifurcate discovery, under *Fed. R. Civ. P. 42(b)*, to first address the liability claims under the TCPA related to Plaintiffs individually, and to accept summary briefing and rule upon such individual liability issues first, before expanding the scope of discovery to encompass Plaintiffs' asserted "class action" claims, as the individual liability claims would likely be dispositive of whether the case should thereafter proceed as a "class action." (ECF #14, PageID #64-66).

Federal Rule of Civil Procedure 42(b) provides, in pertinent part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." FED. R. CIV. P. 42(b). "As to the bifurcation of liability and class discovery, the court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery." *Akselrod v. MarketPro Homebuyers LLC*, Civil No. CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (citing 1 McLaughlin on Class Actions § 3:10 (11th ed. 2014)).

In cases asserting both individual liability and potential "class action" claims under the TCPA, courts have often approved bifurcating discovery in such cases where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. *See, e.g.*, *Akselrod*, 2021 WL 100666, at *2 (bifurcating discovery in TCPA case after determining that whether an ATDS was used was an issue of liability distinct from class certification, and "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive"); *Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case based on a narrow, potentially dispositive issue that was distinct from class issues, and recognizing that bifurcation had the potential to "save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery").

**\*3** In another case, similar to this one, where the issue of the plaintiff's consent was a key dispositive issue, the court highlighted the appropriateness of bifurcating the individual liability and class discovery:

> Upon review, the Court finds that bifurcating discovery as proposed by [Defendant] is warranted under Rule 42(b). In this regard, the Court agrees with [Defendant] that a narrow, potentially dispositive issue exists concerning whether Plaintiff was called by an ATDS[.] Specifically, Plaintiff alleges in his complaint that he was called with a "predictive dialer." ... [D]epending on what evidence

is ultimately presented, the Court may determine that Plaintiff's individual TCPA claim fails as a matter of law.

For similar reasons, the Court also finds that targeted discovery on the issue of consent is also warranted. As [Defendant] correctly points out, prior express consent to receive the calls at issue is a complete defense to TCPA claims. Because consent is a dispositive issue, as with the ATDS issue, limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery."

\* \* \*

Everything considered, the Court finds that bifurcating discovery into two phases (*i.e.*, limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff.

*Newell v. Aliera Healthcare, Inc.*, Civil Action No. 1:19-CV-01489-SCJ (N.D. Ga. Apr. 6, 2020) (citations omitted, bracketed inserts provided, parenthetical insert in original).

The Court finds that bifurcation of discovery to first address the individual liability claims, and then to entertain possible summary judgment motion practice on Plaintiffs' individual claims, prior to class action discovery, is appropriate under FED. R. CIV. P. 42(b). The Court also finds that the parties should be given an opportunity to complete discovery on Plaintiffs' individual liability claims prior to any summary judgment motion practice that may be initiated on those individual claims at a later date.

Accordingly, *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint* (ECF #20) is premature, and is not in a posture to rule upon at this time.

### IV. <u>CONCLUSION</u>

For each of the reasons stated above, *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint* (ECF #20) is DENIED.

The parties are directed to continue discovery on Plaintiffs' individual liability claims, with the intention of addressing and briefing these potentially dispositive claims first, before undertaking class action discovery and any related briefing in connection with Plaintiffs' class action claims.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3728199

---

### Footnotes

1      Plaintiff Jackson Pavelka (Kaylee Pavelka's husband) is named as a Plaintiff solely because he is the "subscriber" for the subject phone's cellular account (ECF #1, ¶ 19).

2      Defendant's motion, while captioned *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint*, does not cite any of the provisions of FED. R. CIV. P. 12(b) (grounds for motions to dismiss) or 12(c) (motion for judgment on the pleadings).

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM   Document 16-2   Filed 10/09/25   Page 33 of 81

Leschinsky v. Inter-Continental Hotels Corporation, Not Reported in Fed. Supp. (2015)

2015 WL 6150888
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Tracey LESCHINSKY, individually and on
behalf of all others similarly situated, Plaintiff,

v.

INTER-CONTINENTAL HOTELS CORPORATION
and Orange Lake Country Club, Inc., Defendants.

Case No. 8:15–cv–1470–T–30MAP
|
Signed 10/15/2015

**Attorneys and Law Firms**

Benjamin Hans Crumley, Crumley & Wolfe, PA,
Jacksonville, FL, Jarrett L. Ellzey, William Craft Hughes,
Hughes Ellzey, LLP, Houston, TX, for Plaintiff.

Andrew J. Patch, Greenberg Traurig, P.A., Tampa, FL, David
Barnett Weinstein, Greenberg Traurig, LLP, Tampa, FL, Ian
C. Ballon, Greenberg Traurig, LLP, Los Angeles, CA, for
Defendants.

*ORDER*

JAMES S. MOODY, JR., UNITED STATES DISTRICT
JUDGE

**\*1**  THIS CAUSE comes before the Court upon Defendants'
Motion for Summary Judgment (Dkt.16), Plaintiff's Response
thereto (Dkt. 22), and Defendants' Motion to Bifurcate
Discovery and Establish Briefing Schedule (Dkt. 21). The
Court, upon review of the filings, and being otherwise
advised in the premises, concludes that Defendants' motion
for summary judgment should be denied without prejudice
as premature and Defendants' motion to bifurcate discovery
and establish a briefing schedule should be granted under the
conditions outlined below.

*DISCUSSION*

Plaintiff Tracey Leschinsky filed the instant case under the
Telephone Consumer Protection Act ("TCPA"). Leschinsky's
claims arise from telephone calls that Defendants or third-

parties acting on their behalf allegedly made to her cell
phone; specifically, she alleges that the calls were made using
an automatic telephone dialing system ("ATDS"). She also
claims that the calls were telephone solicitations made to
a telephone number on the National Do Not Call Registry
("NDNCR").

Defendants filed their motion for summary judgment
extremely early in this litigation—the motion was filed
fourteen days after Defendants filed their answer. The motion
relies on seven declarations and argues, in relevant part, the
following: (1) the calls at issue were dialed manually on an
ordinary desktop telephone that does not constitute an ATDS;
and (2) Leschinsky did not receive more than one call made by
Defendants or third parties acting on their behalf, as required
to state a "Do–Not–Call" claim under the TCPA.

Leschinsky's response in opposition argues that Defendants'
motion is premature because the parties are not permitted
to conduct discovery in this case until they conduct their
case management meeting as stated in Local Rule 3.05.
Leschinsky points out that she is entitled to discovery on
Defendants' contentions.

Defendants, essentially admitting that their motion is
premature, request that the Court bifurcate discovery so that
it is limited to the two threshold issues raised in their motion
for summary judgment and establish a briefing schedule for
dispositive motions. The Court agrees that a more tailored
discovery process is appropriate under these circumstances.

As an initial point, the Court agrees that Defendants' motion
for summary judgment is premature. As stated in *Blumel
v. Mylander,* 919 F.Supp. 423, 428 (M.D.Fla. 1996), Rule
56 of the Federal Rules of Civil Procedure "implies [that]
district courts should not grant summary judgment until the
non-movant has had an adequate opportunity for discovery."
Furthermore, the Eleventh Circuit has decisively determined
that "summary judgment may only be decided upon an
adequate record." *Snook v. Trust Co. of Ga. Bank,* 859 F.2d
865, 870 (11th Cir. 1988). The Eleventh Circuit expounded:

> [S]ummary judgment should not be
> granted until the party opposing
> the motion has had an adequate
> opportunity for discovery. The party
> opposing a motion for summary
> judgment has a right to challenge the

affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests.

**\*2**  *Id.* at 870 (internal citations omitted).

At this stage in the litigation, Leschinsky has been deprived of conducting any discovery because a case management scheduling order is not in place and the parties have not even conducted their case management meeting. That being said, Defendants' arguments in favor of a bifurcated discovery process are well-taken. Defendants have presented evidence suggesting that Leschinsky's TCPA claims are without merit as a matter of law. As such, the Court concludes that the following discovery plan is appropriate:

1. The parties have ninety (90) days from the date of this Order to conduct limited discovery on the ATDS issue and the Number of Calls Issue as discussed further in Defendants' motion for summary judgment;

2. Within fourteen (14) days of the conclusion of the discovery phase, either party may file a motion for summary judgment;

3. If the Court denies summary judgment, the parties shall submit a Joint Case Management Report within fourteen (14) days of the Court's denial.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment (Dkt. 16) is denied without prejudice as premature.

2. Defendants' Motion to Bifurcate Discovery and Establish Briefing Schedule (Dkt. 21) is granted to the extent discussed herein.

**DONE** and **ORDERED** in Tampa, Florida on October 15, 2015.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 6150888

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3826460
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Joseph SHOEMAKER, Richard Gindin,
Demya Johnson, Kimberly Starling, and
Matthew McCormick, individually and on
behalf of all others similarly situated, Plaintiffs
v.
Richard ZEITLIN, American Technology Services,
LLC, Unified Data Services, LLC, Compliance
Consultants, LLC, and John Does 1-10, corporate
entities and individuals presently unknown, Defendants

CIVIL ACTION NO. 1:21-CV-1668
|
Signed June 5, 2023

**Attorneys and Law Firms**

David S. Senoff, First Law Strategy Group, LLC, Philadelphia, PA, Eric H. Weitz, Max Morgan, The Weitz Firm, LLC, Philadelphia, PA, for Plaintiffs.

Daniel J. Treuden, Pro Hac Vice, The Bernhoft Law Firm, S.C., Austin, TX, Patrick T. Kane, Pro Hac Vice, Robert G. Bernhoft, Austin, TX, Thomas Kimble, Pro Hac Vice, Arlington, TX, James N. Clymer, Clymer & Musser PC, Lancaster, PA, for Defendants Richard Zeitlin, American Technology Services, LLC, Unified Data Services, LLC, Compliance Consultants, LLC.

**MEMORANDUM**

Christopher C. Conner, United States District Judge

**\*1** Named plaintiffs bring this putative class action against defendants Richard Zeitlin and various entities associated with Zeitlin, asserting claims for violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and unjust enrichment under Pennsylvania law. Defendants move to dismiss plaintiffs' amended class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendants also move to strike a portion of plaintiffs' class allegations under Rule 12(f). We will partially grant defendants' motion to dismiss, and we will deny their motion to strike.

## I. Factual Background & Procedural History

Defendants are a telemarketing entrepreneur, Zeitlin, and a collection of entities he uses to conduct various telemarketing endeavors—American Technology Services, LLC ("ATS"); Unified Data Services, LLC ("UDS"); Compliance Consultants, LLC ("CC"). (See Doc. 33 ¶¶ 3-4 & n.1, 42, 44, 76-85, 107). Zeitlin is a resident of Nevada; ATS, UDS, and CC are Delaware limited liability companies with principal places of business in Nevada. (See id. ¶¶ 76, 78, 80, 82). Named plaintiffs Joseph Shoemaker, Richard Gindin, DeMya Johnson, Kimberly Starling, and Matthew McCormick are five individuals residing variously in Pennsylvania, Texas, and Sweden who allege defendants initiated robocalls to their cell phones without their prior consent on various dates between April 26, 2018, and August 2, 2021. (See id. ¶¶ 64-75, 85; see generally id. ¶¶ 112-203). The prerecorded voice on each of these calls solicited donations on behalf of a political action committee ("PAC") purporting to support law enforcement, and one of the calls successfully obtained a donation from plaintiff Shoemaker. (See id. ¶¶ 114, 119, 121, 138, 145, 166, 179, 190).

Plaintiffs' allegations, however, go beyond accusing defendants of engaging in robocalls: plaintiffs allege Zeitlin is the key figure in a "scheme" to solicit donations for PACs secretly controlled by Zeitlin or individuals in league with Zeitlin and whose sole *raison d'être* is to funnel donated money to Zeitlin and his companies. (See id. ¶¶ 5-6, 29-32, 42). Plaintiffs provide a lengthy list of PACs they claim are "scams" orchestrated by or in collusion with Zeitlin, two of which feature prominently in the alleged events underlying the matter *sub judice*: Honoring American Law Enforcement PAC ("HALE") and the Police Officers Defense Alliance LLC ("PODA"). (See e.g., id. ¶¶ 29, 114, 138, 166, 179). Plaintiffs assert the PACs on their list share numerous officers, some of whom are business associates or friends of Zeitlin. According to the complaint, these PACs have no genuine interest in or intention of meaningfully advancing the causes they claim to support. (See id. ¶¶ 4-6, 33-41, 50, 126-127). Plaintiffs allege Zeitlin and his companies partner with these PACs and then make millions of robocalls soliciting donations on their behalf. (See id. ¶¶ 3-4, 42). The calls result in hundreds of thousands—if not millions—of dollars in donations to the PACs annually. (See id. ¶¶ 1, 5, 58; see also id. ¶¶ 125, 149). The PACs supposedly then transfer the lion's share of the money raised through these donations to Zeitlin and his companies "through an array of bogus and

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 36 of 81

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

inflated overhead expenditures." (See id. ¶¶ 5, 42, 46, 48, 58, 149-156, 177).

**\*2** According to plaintiffs, Zeitlin and his companies have been the subject of journalistic investigations detailing the scheme. (See id. ¶¶ 30 & n.5, 32 n.7, 58). They also claim the passthrough nature of these PACs can be seen by examining the PACs' filings with the Federal Election Commission ("FEC"). (See id. ¶¶ 45-46; see generally id. ¶¶ 125-197). [1] Namely, they claim the reports show the PACs in question pay out an overwhelming preponderance of their income to entities owned or controlled by Zeitlin. (See Doc. 33 ¶¶ 45-46, 48, 58; see generally id. ¶¶ 125-197). These filings also purportedly show the PACs spend comparatively miniscule amounts on activities plausibly warranted to support their purported political or social objectives. (See id. ¶¶ 4-6, 126-127). To conceal the relationship between the PACs, Zeitlin, and Zeitlin-controlled companies, plaintiffs allege Zeitlin utilizes a "vast web of inextricably intertwined corporate entities" whose identities he obscures by employing unregistered fictious names, UPS Store mailboxes in far-flung states, and mail-forwarding services. (See id. ¶¶ 51-57, 99, 106, 154-164). Plaintiffs also allege Zeitlin operates his "vast web" of telemarketing companies as "alter egos of one another" constituting "a single economic enterprise." (See id. ¶¶ 99-106).

Plaintiffs initiated this putative class action against defendants on behalf of themselves and others similarly situated. The action is now proceeding pursuant to plaintiffs' amended complaint (Doc. 33). Defendants move to dismiss plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and partially strike their class allegations under Rule 12(f). The motions are fully briefed and ripe for disposition.

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues a claim is not within the court's

jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty assertion of jurisdiction would be improper. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

### B. Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. See FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

### C. Rule 12(b)(6)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 37 of 81

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

**\*3** Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints which fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955); Twombly, 550 U.S. at 556, 127 S.Ct. 1955. A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

### D. Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." See FED. R. CIV. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. See id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

### III. Discussion

Plaintiffs advance two causes of action: they claim defendants violated Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating illegal robocalls to their cell phones, and they claim defendants are liable to them for unjust enrichment under Pennsylvania common law. (See Doc. 33 ¶¶ 228-39). Plaintiffs also seek certification of a class comprising roughly "[a]ll persons and entities throughout the United States" who received an illegal robocall initiated by defendants between "September 27, 2017 through the date of class certification." (See id. ¶ 211).

**\*4** Defendants advance four challenges to plaintiffs' amended complaint. They argue plaintiffs' amended complaint should be dismissed in part or *in toto* for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim. They also contend plaintiffs' class allegations should be partially stricken for lack of subject matter jurisdiction on the ground that the particular provision of the TCPA under which plaintiffs bring this action was a constitutional nullity during a portion of the proposed class period. We will begin with defendants' two arguments related to subject matter jurisdiction.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 38 of 81

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

### A. Subject Matter Jurisdiction

Plaintiffs assert we have subject matter jurisdiction over the above-captioned action because they bring their primary claim under 47 U.S.C. § 227(b)(3). (See Doc. 33 ¶ 59). Section 227(b)(3) creates a private cause of action against violators of the TCPA, see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 374-75, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (quoting 47 U.S.C. § 227(b)(3)), and plaintiffs allege defendants violated Section 227(b)(1)(A)(iii) of the TCPA, (see Doc. 33 ¶¶ 228-234). Because the TCPA is a federal law, federal courts have federal question jurisdiction over claims brought under Section 227(b)(3). See Mims, 565 U.S. at 372, 386-87, 132 S.Ct. 740. Nonetheless, defendants contend we lack subject matter jurisdiction over some of plaintiffs' claims because the United States Supreme Court's decision in Barr v. American Ass'n of Political Consultants ("AAPC"), 591 U. S. ——, 140 S. Ct. 2335, 207 L.Ed.2d 784 (2020), purportedly rendered Section 227(b)(1)(A)(iii) an unenforceable nullity from November 2, 2015 (when Congress amended the TCPA to include the provision AAPC deemed unconstitutional) through the issuance of AAPC on July 6, 2020. (See Doc. 39 at 3, 47-52); see also Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (codified as amended at 47 U.S.C. § 227).

As a threshold matter, we must decide whether defendants' arguments related to the enforceability of Section 227(b)(1)(A)(iii) in the relevant time period are best considered under Rule 12(b)(1) or Rule 12(b)(6). The absence of a constitutionally valid statute under which to bring a claim "does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations omitted). Consequently, district courts possess jurisdiction over a claim so long as the constitutional validity of the cause of action is arguable. See id. Only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" is dismissal under Rule 12(b)(1) appropriate. See id. (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Our court of appeals

likewise advises "[w]hen disposing of a claim brought under an unconstitutional statute, courts ordinarily deny the claim on the merits, on the ground that the statute under which relief is sought is unconstitutional, rather than for lack of subject matter jurisdiction." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 82 (3d Cir. 2003) (citing, inter alia, Martin v. United Way of Erie Cnty., 829 F.2d 445, 447 (3d Cir. 1987); Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 898 (3d Cir. 1987)).

Defendants are not the first to raise a jurisdictional challenge regarding enforceability of the TCPA between 2015 and July 6, 2020. Many courts, including some in our circuit, have addressed these arguments under Rule 12(b)(1) because they attack the constitutional validity of Section 227(b)(1)(A)(iii) during the stated time period. See, e.g., Morales v. Sunpath Ltd., No. 1:20-CV-1376, 2022 WL 610766, at *4 (D. Del. Feb. 1, 2022) (citations omitted); Cunningham v. Matrix Fin. Servs., LLC, 531 F. Supp. 3d 1164, 1181 (E.D. Tex. 2021); Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., 506 F. Supp. 3d 1242, 1245 (M.D. Fla. 2020); Creasy v. Charter Commc'ns, Inc., 489 F. Supp. 3d 499, 504-05 (E.D. La. 2020). Others have found enforceability, even if raised under Rule 12(b)(1), to be more appropriately considered under Rule 12(b)(6) because the analysis hinges on how the court construes the anti-robocall provision in light of AAPC. See, e.g., Lindenbaum v. Realgy, LLC, 13 F.4th 524, 527-28 (6th Cir. 2021), cert. denied, 4—— U.S. ——, 142 S. Ct. 1362 (2022); Pavelka v. Charter Commc'ns, Inc., No. 3:20-CV-1557, 2021 WL 5566390, at *3 (D. Conn. Nov. 29, 2021); Williamson v. Irving K Motor Co., No. 3:21-CV-1599, 2022 WL 2053179, at *4 (N.D. Tex. June 7, 2022).

**\*5** We find the reasoning and case law supporting the latter view more persuasive. Defendants concede their position on Section 227(b)(1)(A)(iii) is "controversial." (See Doc. 39 at 3). As we will discuss infra, the effect of AAPC on Section 227(b)(1)(A)(iii) is amenable to multiple reasonable constructions. The success of defendants' argument depends entirely on which construction we adopt. See Steel Co., 523 U.S. at 89, 118 S.Ct. 1003 (quoting Bell, 327 U.S. at 689, 66 S.Ct. 785). Moreover, even if we were to adopt defendants' proffered construction, their reading would defeat only a portion of the claims advanced in the

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 39 of 81

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

amended complaint—some plaintiffs will still theoretically be entitled to relief. See Lindenbaum, 13 F.4th at 527. Plaintiffs' claims under Section 227(b)(1)(A)(iii) are not wholly insubstantial or frivolous, see Steel Co., 523 U.S. at 89, 118 S.Ct. 1003; they are substantial and colorable. We will therefore consider defendants' arguments regarding enforceability under Rule 12(b)(6) rather than Rule 12(b)(1).

## B. Personal Jurisdiction

Section 227 of the TCPA does not authorize nationwide service of process. See 47 U.S.C. § 227; Mims, 565 U.S. at 381 n.11, 132 S.Ct. 740. Thus, we may exercise personal jurisdiction over a nonresident of the forum state only to the extent authorized by the law of the forum. See FED. R. CIV. P. 4(e), (k)(1); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 297 (3d Cir. 1985); see also Fischer v. FedEx, 42 F.4th 366, 382 (3d Cir. 2022) (citing Max Daetwyler, 762 F.2d at 297), cert. denied, —— U.S. ——, 143 S. Ct. 1001 (2023). Pennsylvania's long-arm statute grants jurisdiction coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing 42 PA. CONS. STAT. § 5322(b)). Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this test, plaintiff must show the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See id. at 316, 66 S.Ct. 154 (internal quotation marks and citations omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), with the focus on whether the defendant has fair warning they may be subject to suit in the forum, see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 580 (internal quotation marks and citation omitted).

Federal courts must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction allows a court to exercise jurisdiction over all claims against a party possessing contacts with the forum state so " 'continuous and systematic' as to render them essentially at home" there. Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing Helicopteros, 466 U.S. at 414 n.9, 104 S.Ct. 1868)); Chavez v. Dole Food Co., 836 F.3d 205, 223 (3d Cir. 2016) (en banc). Specific jurisdiction, on the other hand, allows the court to hear only claims arising out of or relating to the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414 n.8, 104 S.Ct. 1868; Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006).

**\*6** Plaintiffs proceed solely on a theory of specific jurisdiction. (See Doc. 46 at 20-21). Specific jurisdiction usually is assessed on a claim-by-claim basis. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing Remick, 238 F.3d at 255-56). This is true even when, like here, plaintiffs bring a putative class action because, to paraphrase our court of appeals, a named plaintiff cannot accomplish as a representative of a class what they cannot achieve on their own. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970); see also Fischer, 42 F.4th at 375. Specific jurisdiction requires each named plaintiff to "establish with reasonable particularity" (1) defendants directed their activities at the forum state, (2) each claim arises out of defendants' activities in Pennsylvania, and (3) exercising personal jurisdiction in Pennsylvania will not offend traditional notions of fair play and substantial justice.[2] See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 129-30 (3d Cir. 2020) (citations and internal quotation marks omitted).

Defendants contest the merits of Shoemaker and Gindin's claims but do not contest our specific jurisdiction over those claims. (See Doc. 39 at 38-45; Doc. 50 at 14, 18). Nor could they. Shoemaker and Gindin are residents of Pennsylvania and they allege defendants placed or directed illegal robocalls to their cell phones, both of which bear Pennsylvania area codes. (See Doc. 33 ¶¶ 61, 64, 66, 114, 138). We reasonably may infer plaintiffs' injuries—the phone calls they received—occurred in Pennsylvania. See Shelton v. Nat'l Gas & Elec., LLC, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). By directing calls to Pennsylvania residents possessing Pennsylvania phone numbers, defendants purposely availed themselves of Pennsylvania and its laws. See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (citations omitted)); see also Abramson v. CWS Apartment Homes, LLC, No. 16-426, 2016 WL 6236370, at *4 & n.47 (W.D. Pa. Oct. 24, 2016) (collecting cases). We possess specific jurisdiction over the claims brought by Shoemaker and Gindin against all defendants.[3]

**\*7** Johnson, Starling, and McCormick, however, are not residents of Pennsylvania. Johnson was a resident of Alabama at the time of his call and currently resides in Sweden. (See Doc. 33 ¶¶ 69-70). Starling and McCormick are residents of Texas. (See id. ¶¶ 72, 74). None of the three allege they received their calls while in Pennsylvania or attribute a Pennsylvania phone number to their cell phones. Insofar as can be reasonably inferred from plaintiffs' amended complaint, it is entirely possible Johnson, Starling, and McCormick have never set foot in Pennsylvania. We simply cannot say defendants' alleged conduct toward these three plaintiffs was directed at the Commonwealth of Pennsylvania. See Danziger, 948 F.3d at 129-30. We will dismiss Johnson's, Starling's, and McCormick's as named plaintiffs without prejudice.[4]

## C. Failure to State a Claim

### 1. TCPA

Plaintiffs' TCPA claims are grounded in defendants' alleged violations of Section 227(b)(1)(A)(iii). Consequently, we must address defendants' threshold assertion that the TCPA's prohibition on robocalls was unenforceable during part of the time period relevant to plaintiffs' claims.

### a. Enforceability

The TCPA prohibits certain undesirable telemarketing practices. See Facebook, Inc. v. Duguid, 593 U.S. ——, 141 S. Ct. 1163, 1167-68, 209 L.Ed.2d 272 (2021); AAPC, 140 S. Ct. at 2343-44 & n.1. Section 227(b) of the TCPA specifically prohibits initiating a robocall to a cell phone unless the call is made for "emergency purposes," the recipient has given their prior express consent, or the call falls within an exemption created by the Federal Communications Commission. See 47 U.S.C. § 227(b)(1)(A)(iii), (2)(C); see also AAPC, 140 S. Ct. at 2344-45 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). The TCPA also provides a private cause of action against violators of its provisions. See 47 U.S.C. § 227(b)(3). Violators of Section 227(b)(1)(A) (iii) are liable for the plaintiff's actual damages or statutory damages of $500, whichever is greater; for willful or knowing violations, damages are trebled. See id. § 227(b)(3); see also AAPC, 140 S. Ct. at 2345 (citing 47 U.S.C. § 227(b)(3)).

Congress enacted Section 227(b)(1)(A) in 1991. See AAPC, 140 S. Ct. at 2344. Originally, Section 227(b) (1)(A) prohibited, in relevant part, " 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice' to 'any telephone number assigned to a ... cellular telephone service.' " See id. (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395-96) (codified at 47 U.S.C. § 227)) (emphasis omitted). Congress amended Section 227(b)(1) (A) in 2015 to include an exception for calls "made solely to collect a debt owed to or guaranteed by the United States." See id. at 2344-45 (citation omitted). The Supreme Court struck down this exception on July 6, 2020, in its plurality opinion in AAPC. See generally id.

**\*8** Most relevant to defendants' arguments, six Justices agreed the exception for government debt collectors

"impermissibly favored debt-collection speech ... in violation of the First Amendment," although they differed significantly as to how they arrived at this conclusion. See 📙 id. at 2343 (plurality opinion). Seven Justices then agreed the unconstitutional provision was severable from 🚩 Section 227(b)(1)(A)(iii) and, accordingly, invalidated the government-debt exception but left in place "the longstanding robocall restriction." See 📙 id. at 2355. The justices, however, failed to specify whether they intended the severance to apply only prospectively or retroactively. Justice Kavanaugh, writing for himself, the Chief Justice, and Justice Alito, addressed the implications of severance in footnote 12:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case .... On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

📙 Id. at 2355 n.12. Justice Gorsuch, dissenting on the question of severance, took issue with this footnote. See 📙 id. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part). Joined by Justice Thomas, Justice Gorsuch observed the logic of footnote 12 "shields *only* government-debt collection callers from past liability ... [and] endors[es] the very same kind of content discrimination we say we are seeking to eliminate." 📙 Id.

Highlighting the tension between the AAPC plurality and Justice Gorsuch's partial concurrence, defendants present two arguments against the validity of some of plaintiffs' TCPA claims and the scope of plaintiffs' class allegations. First, they argue severance applies prospectively only, leaving 🚩 Section 227(b)(1)(A)(iii) unenforceable between its enactment in 2015 and the Supreme Court's decision in AAPC. (See Doc. 39 at 51). Second, even if severance

does apply retroactively, they argue—as Justice Gorsuch suggested—footnote 12 operates to create a new content-based restriction on speech, once again rendering 🚩 Section 227(b)(1)(A)(iii) unenforceable between 2015 and issuance of AAPC. (See id. at 51-52).

Our court of appeals has not yet had occasion to consider these questions. In the immediate wake of AAPC, a handful of district courts determined the decision rendered 🚩 Section 227(b)(1)(A)(iii) retroactively unenforceable. See, e.g., Creasy, 489 F. Supp. at 503; Cunningham, 531 F. Supp. 3d 1164 (citing 📙 Creasy, 489 F. Supp. 3d 499); Hussain, 506 F. Supp. 3d at 1244-45 (same); 🚩 Lindenbaum v. Realgy, LLC, 497 F. Supp. 3d 290 (N.D. Ohio 2020) (same), rev'd, 📙 13 F.4th 524 (6th Cir. 2021). As the dust has settled, however, a strong majority —including several courts in this circuit—has coalesced around the opposite view, that 🚩 Section 227(b)(1)(A)(iii) is fully enforceable as to robocalls predating AAPC. See, e.g., Morales, 2022 WL 610766, at *6 & n.78 (collecting cases); 📙 Franklin v. Navient, Inc., 534 F. Supp. 3d 341, 346-47 (D. Del. 2021); Williamson, 2022 WL 2053179, at *6 (citations omitted); see also Boisvert v. Carnival Corp., No. 8:20-CV-2076, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) (judge who decided 📙 Hussain reversing course and adopting emerging majority view). Most significantly, the Court of Appeals for the Sixth Circuit reversed the district court's decision in 🚩 Lindenbaum and rejected the positions now advanced by defendants regarding retroactivity and the First Amendment. See Lindenbaum, 13 F.4th at 528-30. The Sixth Circuit reasoned that severance, at least in this context, was an act of constitutional interpretation capable of applying retroactively. See 📙 id. at 529-30. The court explained: AAPC "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence." 📙 Id. at 530 (quoting 📙 Collins v. Yellen, 594 U.S. ——, 141 S. Ct. 1761, 1788-89, 210 L.Ed.2d 432 (2021)) (alteration in original). The court also squarely rejected the notion applying the anti-robocall provision to telemarketers not seeking to collect government-

related debt during the retroactive period created a "First Amendment problem." See id.

**\*9** Adding to the persuasive weight of the Sixth Circuit's decision in Lindenbaum are two district court cases from our own circuit. See Morales, 2022 WL 610766, at \*7-8; Franklin, 534 F. Supp. 3d at 345-47. In Franklin, Judge Bibas, sitting with the district court by designation, cast footnote 12 as mere *dictum* that does not, in and of itself, exculpate from liability under Section 227(b)(1)(A)(iii) robocallers who sought to collect government-related debts between 2015 and AAPC. See Franklin, 534 F. Supp. 3d at 347 (citing AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion)); see also Morales, 2022 WL 610766, at \*4 n.63 (collecting cases observing similarly). Judge Bibas also concluded Section 227(b)(1)(A)(iii) does not create a content-based disparity because it subjects all robocallers to the same degree of civil liability for conduct within the retrospective time frame. [5] See Franklin, 534 F. Supp. 3d at 346-47, 349.

We find the reasoning laid out by the Sixth Circuit, Judge Bibas, and other courts rejecting defendants' arguments to be persuasive. [6] We conclude Section 227(b)(1)(A)(iii) was enforceable throughout the period relevant to the matter *sub judice* and creates no conflict with the First Amendment. We will deny defendants' motion to dismiss claims and to strike class allegations related to calls initiated prior to July 6, 2020.

### b. Sufficiency

We now turn to the sufficiency of the remaining plaintiffs' claims. Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number belonging to the plaintiff, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent. See, e.g., Smith v. Direct Bldg. Supplies, LLC, No. 20-3583, 2021 WL 4623275, at \*2 (E.D. Pa. Oct. 7, 2021) (citation omitted); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at \*3 (E.D. Pa. Sept. 21, 2020) (same); Aaronson v. CHW Grp., Inc., No. 1:18-CV-1533, 2019 WL 8953349, at \*1 (E.D. Va. Apr. 15, 2019).

The first element—which is the only element defendants dispute, (see Doc. 39 at 18-37)—requires a plaintiff to plead facts supporting "the defendant actually, physically initiated the telephone call at issue," see Aaronson, 2019 WL 8953349, at \*2 (citing Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018)); accord Direct Bldg. Supplies, 2021 WL 4623275, at \*3. What this usually requires in practice is pleading facts tracing the call to the defendant or their agent. See Direct Bldg. Supplies, 2021 WL 4623275, at \*3; Scruggs v. CHW Grp., Inc., No. 2:20-CV-48, 2020 WL 9348208, at \*9 (E.D. Va. Nov. 12, 2020).

The gravamen of plaintiffs' pleadings is the alleged arrangement between Zeitlin, his companies, and an assortment of PACs to robocall thousands of people, solicit donations, and divide the proceeds. (See, e.g., Doc. 33 ¶¶ 29-58). We find this "scheme" sufficiently connects the calls identified by the remaining plaintiffs (Shoemaker and Gindin) to the defendants via a two-link chain of plausible inferences.

**\*10** The first link is the connection between the PACs and the calls. Shoemaker and Gindin claim the voices on their calls purported to solicit donations on behalf of two PACs—respectively, PODA and HALE. (See Doc. 33 ¶¶ 114, 138). The factual allegation that the callers identified themselves as calling on behalf of these PACs creates the plausible inference the calls were in fact made on their behalf. PODA's FEC filings document PODA receiving an "itemized individual contribution" from Shoemaker for \$300 on April 26, 2018—the day of the alleged call to Shoemaker. (See id. ¶¶ 114, 119; PODA 2018 FEC Report). Had the caller been a prankster or fraudster merely pretending to represent PODA as defendants suggest, (see Doc. 39 at 29-31), Shoemaker's donation never would have made it to PODA.

The next link is the connection between the PACs and defendants. Plaintiffs plead the existence of a dubious hand-in-glove relationship between the PACs in question and Zeitlin and his companies. PODA reported to the FEC raising \$624,367.22 in 2018, the year of the call to Shoemaker. (See Doc. 33 ¶¶ 114, 125; see also PODA 2018 FEC Report). PODA spent \$496,484.02 the same year (an election year) on operating expenditures compared to \$20,000 on identifiable political activities. (See Doc. 39 ¶ 126; see also PODA 2018 FEC Report). Of those operating expenses, PODA paid 88.6% to defendants. (See Doc. 33 ¶¶ 125-132; see also

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 43 of 81

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

PODA 2018 FEC Report). The year of Gindin's call, HALE took in $5,647,945.22 and spent $4,844,861.94 with 83.8% of those outlays going to what are alleged to be Zeitlin-affiliated entities. (See Doc. 33 ¶¶ 56, 81, 149-64; see also HALE 2021-22 FEC Report). Few of HALE's payments to defendants and none of PODA's are coded as something plausibly related to telemarketing expenses, but plaintiffs allege the labels given to the payments "were coded in such a way to conceal the illegal telemarketing operation that was taking place." (See HALE 2021-22 FEC Report; PODA 2018 FEC Report; Doc. 33 ¶¶ 134-136).

The extensive outlays to Zeitlin-affiliated companies—whose line of business is alleged to be telemarketing—gives rise to the plausible inference all or most of PODA's and HALE's fundraising activity is conducted by those entities. [7] In other words, the facts pled are sufficient to support the notion that defendants, along with other Zeitlin-affiliated entities, were PODA's and HALE's predominate fundraisers. When this inference is combined with the inference the calls came from legitimate representatives of PODA and HALE, we find plaintiffs plausibly plead traceability, i.e., one of the Zeitlin-affiliated entities, either directly or through one of their agents, initiated the calls to Shoemaker and Gindin. [8] The amended complaint only names ATS, UDS, and CC as defendants, but all three received payments from PODA and HALE raising a plausible claim each may have initiated the calls in question. Plaintiffs also plead facts supporting the conclusion these entities, along with the others named in the complaint, are essentially shells used to obscure a singular telemarketing enterprise orchestrated by Zeitlin. (See Doc. 33 ¶¶ 51-57, 99-106). Zeitlin's role at the center of the alleged scheme, considering the broad range of agency theories incorporated into the TCPA, gives rise to a plausible claim he too may be liable as an initiator of the calls. [9] With facts pled supporting traceability of the calls to defendants we will deny defendants' motion to dismiss Shoemaker's and Gindin's TCPA claims.

### 2. Unjust Enrichment

**\*11** Defendants argue plaintiffs' unjust enrichment claims must fail because plaintiffs do not plead facts supporting defendants received a benefit from their alleged TCPA violations. (See Doc. 39 at 46-47). Plaintiffs offer neither argument nor legal authority in answer to defendants' challenge to their unjust enrichment claim. We deem plaintiffs' failure to respond to this dispositive legal argument an abandonment of their claims. See ⚑ Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (Conner, J.) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (Conner, J.) (same); see also ⚑ Levy-Tatum v. Navient Sols., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases). We will dismiss plaintiffs' unjust enrichment claims without prejudice.

### IV. Conclusion

We will grant in part and deny in part defendants' motion to dismiss. We will also deny their motion to strike. An appropriate order shall issue.

### All Citations

Not Reported in Fed. Supp., 2023 WL 3826460

---

## Footnotes

1    See also 2018 Financial Summary for Police Officers Defense Alliance LLC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00667865/?cycle=2018 (last visited Mar. 23, 2023) ("PODA 2018 FEC Report"); 2021-22 Financial Summary for Honoring American Law Enforcement PAC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00710178/ (last visited Mar. 23, 2023) ("HALE 2021-22 FEC Report").

2    Plaintiffs' TCPA and unjust enrichment claims arise from phone calls defendants allegedly placed or directed to plaintiffs. (See Doc. 33 ¶¶ 228-239; see also Doc. 46 at 2-4 (describing plaintiffs' unjust enrichment claims as being "concomitant" with TCPA claims)). Hence, we may consider the two substantive claims together

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 44 of 81

**Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)**

when ascertaining the presence of contacts necessary to support specific jurisdiction. See ⚑ O'Connor, 496 F.3d at 318 n.3.

3  Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to ATS, UDS, CC, or any of the other named entities in the amended complaint. (See Doc. 39 at 43-44). In support of this argument, defendants submit an affidavit from Zeitlin averring he is "neither an owner nor an officer" of any of the named entities and does "not ... operate, control or have the right and ability to supervise, direct or control" any of the entities. (See Doc. 40). Defendants also argue we lack personal jurisdiction over Gindin's claim because ATS, UDS, and CC were all dissolved by the time Gindin received his call on July 14, 2021. (See Doc. 39 at 11, 44). Defendants submit Delaware public records purporting to demonstrate the claimed dissolution. (See Docs. 39-3, 39-4, 39-5). Plaintiffs dispute the accuracy of these records and point to other records indicating the entities were still operating after the date claimed by defendants. (See Doc. 46 at 5-8). Zeitlin's true relationship with the entities named in the amended complaint and the legal status of those entities throughout the period of time relevant to this action are disputes of fact reserved for resolution by the trier of fact. See ⚑ Carteret Sav. Bank, 954 F.2d at 148. Plaintiffs plead sufficient facts supporting specific jurisdiction over Zeitlin, ATS, UDS, and CC to survive a motion to dismiss under Rule 12(b)(2). See ⚑ Metcalfe, 566 F.3d at 330; ⚑ Carteret Sav. Bank, 954 F.2d at 142 n.1.

4  District courts cannot dismiss a claim for lack of personal jurisdiction without first considering transferring the claim to a more appropriate forum under 28 U.S.C. § 1631. See ⚑ Danziger, 948 F.3d at 132. Section 1631 provides the original court "shall, if it is in the interest of justice, transfer such action ... to any other such court" in which the case could have been brought when it was filed. See 28 U.S.C. § 1631. The court may transfer the entire action or a portion of the action. See ⚑ D'Jamoos, 566 F.3d at 110. The amended complaint is silent with respect to where Johnson, Starling, and McCormick received the calls at issue, and it does not specify an area code associated with any of their cell phones; it is thus unclear in which court their claims could have been brought. Accordingly, we will dismiss Johnson, Starling, and McCormick as named plaintiffs, without prejudice to their ability to participate in this lawsuit as putative class members or to bring their individual claims in an appropriate forum.

5  Judge Bibas ultimately concludes punitive damages are unavailable against defendants who sought to collect government-related debt between 2015 and July 6, 2020, because of due process issues. See ⚑ Franklin, 534 F. Supp. 3d at 349.

6  Even if footnote 12 were binding precedent, the plurality disclaims the very position defendants ask us to adopt. The plurality explicitly insists "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." See ⚑ AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion). The use of the past tense "covered" makes clear the plurality intends for past violators of 🚩 Section 227(b)(1)(A)(iii) to remain liable. It would be nonsensical to adopt the first sentence as binding but not the second.

7  Defendants contend a large portion of HALE's disbursements were paid to entities not named as defendants. (See Doc. 39 at 28). This may well be true. But the entities receiving those disbursements are alleged to be controlled by Zeitlin, (see Doc. 33 ¶¶ 151-164), and we view them as potentially incorporated into plaintiffs' lawsuit as defendants through John Doe entities 1-10.

8  Defendants admit the TCPA allows for direct and vicarious liability. (See Doc. 39 at 19, 23-24). The consensus among federal courts is the TCPA incorporates the full range of vicarious-liability theories grounded in federal

**Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)**

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 45 of 81

common-law agency principles. See, e.g., 🚩Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019) (citation omitted); 🚩Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 251-52 (4th Cir. 2018) (citation omitted). However, our court of appeals has expressed skepticism as to the availability of personal-participation liability against corporate officers under the TCPA. See 🚩City Select Auto Sales Inc. v. David Randall Assocs., Inc., 885 F.3d 154, 159-60 (3d Cir. 2018).

9    Defendants deny plaintiffs' allegation that Zeitlin owns or controls the entity defendants, (see Doc. 39 at 43-44), but we must take their allegation to be true for purposes of this motion.

---

End of Document                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 46 of 81

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3440077
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Tiffany HARRIS, individually and on behalf
of all others similarly situated, Plaintiff,
v.
SHORE FUNDING SOLUTIONS INC., Defendant.

23-CV-00789 (JMA) (JMW)
|
Signed April 21, 2023

**Attorneys and Law Firms**

Anthony Paronich, Esq., Paronich Law, P.C., Massachusetts, 350 Lincoln St., Suite 2400, Hingham, MA 02043, Attorney for Plaintiff.

Clifford B. Olshaker, Esq., Law Offices of Clifford B. Olshaker, 98-19 37th Avenue 2nd Fl., Corona, NY 11368, Attorney for Defendant.

**ORDER**

WICKS, Magistrate Judge:

**\*1** Plaintiff Tiffany Harris commenced this case as a class action alleging a violation of the Telephone Consumer Protection Act ("TCPA"). (DE 1.) The TCPA bars companies from making calls using automatic telephone dialing systems or using an artificial or pre-recorded voice to cell numbers.

See 47 U.S.C. § 227 et seq. Plaintiff alleges that on April 19, 2022, Defendant Shore Funding Solutions Inc. made an unsolicited pre-recorded telemarketing call to Plaintiff's number -- (205) 503-XXXX. [1] (DE 1 at ¶¶ 19-20.) Plaintiff then spoke to someone who said they were an employee of the Defendant who promoted a loan and sent a follow up email to her. (*Id.* ¶¶ 20-27.) Plaintiff's Complaint describes a proposed "Robocall Class" consisting of all persons within the United States whose cellular telephone numbers received a call from Defendant or a third-party on its behalf using pre-recorded messages within the four years preceding the complaint. (*Id.* at ¶ 30.) Before the Court now is the Defendant's contested motion for bifurcation of discovery.

The case is in its infancy. At the initial conference, the Court entered a Scheduling Order and set a briefing schedule for

Defendant's motion to bifurcate discovery as to Plaintiff's individual claim and the proposed class. (DE 13.) Plaintiff has served discovery requests, but Defendant has not served any. The contested bifurcation motion was subsequently filed. (DE 16.) Oral argument was held on April 21, 2023. [2]

Having considered the parties' arguments, and for the reasons stated herein, Defendant's motion to bifurcate discovery is GRANTED.

**I. LEGAL STANDARD**

Bifurcation "is properly understood as a stay of class discovery pending resolution of plaintiff's individual claim." Chow v. SentosaCare, LLC, No. 19-CV-2541 (FR), 2020 WL 559704, at \*1 (E.D.N.Y. Jan. 23, 2020). A district court has "considerable discretion to stay discovery" under Federal Rule of Procedure 26(c), with the moving party having the burden of establishing good cause. See Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y., No. 18-CV-4476 (LJL) (SLC), 2020 WL 1166047, at \*5 (S.D.N.Y. Mar. 11, 2020); Mohammed Thani A.T. Al Thani v. Hanke, 20-CV-4765 (JPC), 2021 U.S. Dist. LEXIS 395, 2021 WL 23312, at \*1 (S.D.N.Y. Jan. 4, 2021) ("Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)" (alteration in original) (quoting *Rep. of Turk. v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)); Physicians Healthsource, Inc. v. Janssen Pharms., Inc., No. 12-CV-2132, 2014 WL 413534, at \*4 (D.N.J. Feb. 4, 2014) (noting that the district court enjoys "broad discretion" in terms of bifurcating discovery).

**\*2** Good cause may exist "where the 'resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary,' " Charvat, 2016 WL 207677, at \*2 (quoting *Tabor v. N.Y. City*, No. 11-CV-0195, 2012 WL 603561, at \*10 (E.D.N.Y. Feb. 23, 2012)), or where "a narrow, potentially dispositive issue," being "totally distinct from class issues," has the potential render Plaintiff's TCPA claim baseless, id. (quoting Physicians Healthsource, Inc. v. Janssen Pharms., Inc., No. 12-CV-2132, 2014 WL 413534, at \*2 (D.N.J. Feb. 4, 2014)).

The Federal Rules of Civil Procedure do not squarely address the bifurcation of discovery. Cunningham v. Big Think

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 47 of 81

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

*Cap. Inc.*, No. 21-CV-02162 (DRH) (JMW), 2021 WL 4407749, at *4 (E.D.N.Y. Sept. 27, 2021) (noting that the Rules "do not specifically address the issue of discovery bifurcation"); *see also* Alexa Ashworth, et al., *Bifurcation of discovery*, 10 Fed. Proc., L. Ed. § 26:88 (Mar. 2023) (noting that the court may bifurcate discovery, for example, "in class actions into sections related to the claims of the named plaintiffs and the class claims"). Rather, when confronted with the issue, courts turn to Rule 42(b), which sets forth the standard to be applied when considering consolidation and separation of cases for trial. *See* 🚩 *id.* (citing Fed. Civ. P. 42(b)). Borrowing from Rule 42, courts contemplate bifurcating discovery "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. Civ. P. 42(b); *see* 🚩 *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL), 2016 WL 207677, at *1 (E.D.N.Y. June 5, 2013) ("The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b).").

However, a survey of past cases within this Circuit suggests that bifurcation is the exception, not the rule. Indeed, courts are likely to deny bifurcation "where discovery relating to class issues overlaps substantially with merits discovery" given that, in such circumstances, "bifurcation will result in duplication of efforts and needless line-drawing disputes." 🚩 *Id.* at *1 (quoting 🚩 *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2020)). Moreover, courts will not bifurcate if bifurcation will simply delay class certification or obfuscate the issue of what discovery relates to the class as opposed to the named plaintiff. 🚩 *Id.* (citing *True Health Chiropractic Inc. v. McKession Corp.*, No. 13-CV-2219 (JST), 2015 WL 273188, at *2–3 (N.D. Cal. Jan. 20, 2015)).

## II. DISCUSSION

Defendant seeks to bifurcate individual and class discovery to explore the threshold issue of whether Plaintiff received a call from Defendant at the (205) 503-XXXX number on April 19, 2022, and whether Plaintiff owns the phone to which the number is assigned. (DE 16 at 6.) Defendant requests a 90-day period for this limited discovery. Plaintiff prefers the status quo, with all discovery – as to the Plaintiff and Class – proceeding concomitantly.

Defendant relies on the following to establish good cause: (1) the limited discovery sought is distinct from class issues, (2) bifurcation would avoid unnecessary expensive and time-consuming class-discovery, (3) Plaintiff did not attach any evidence of a phone call to her Complaint and provides no evidence that the call actually took place, and (4) in another case involving the same Plaintiff, the defendant's counsel identified the (205) 503-XXXX number as being advertised in connection with a custom home building business rather than with Plaintiff. (DE 16 at 5.) Plaintiff, on the other hand, resists bifurcation on the basis that: (1) there is evidence that Plaintiff received the phone call and owns the number, and (2) it is atypical to bifurcate discovery. (DE 17 at 2-3.)

**\*3** Defendant's request for limited discovery as to (1) whether Plaintiff received a phone call on April 19, 2022, and (2) whether she owns the phone number -- because Plaintiff has not offered any evidence to support either allegation. Plaintiff in response attached a phone bill (DE 17-2) that reflects that the (205) 503-XXXX number belongs to her and copy of the email she received after the alleged phone call (DE 17-3). Defendant contends that Plaintiff has not laid a foundation for the phone bill as a business record. As to the email, Defendant notes that it is addressed to a "William," not Plaintiff. (DE 17-3.) Additionally, the email does not reference a phone call. (DE 17-3.)

Plaintiff also provided an affidavit that states that she owns the phone number (205) 503-XXXX, received a pre-recorded call on April 19, 2022, from Defendant and after speaking with someone named "Dan Katz" identifying themselves as an employee of Defendant, received an email from Dan Katz consistent with the offer made on the call. (DE 17-1.) Plaintiff further states that she has produced a redacted copy of her phone bill to show she owns the number at issue and that she has no affiliation with the person or business that Defendant's counsel states appears to be associated with the number. (DE 17-1.)

Defendant argues that the affidavit is null and void because it does not conform to the requirements for an unsworn declaration under 28 U.S.C. § 1746 and can be given no weight. (DE 16-2 at 2.) However, section 1746(2) permits submission of an unsworn declaration to the court if it includes a statement substantially in the following form as required: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *See* 28 U.S.C. § 1746(2). The affidavit provides that it was "Executed under the pains and penalties

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 48 of 81

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

of perjury at warrior Alabama this 28th day of March, 2023." (DE 17-1.) This is sufficient. *See* 🔖 *LeBoeuf, Lamb, Greene MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (finding a signed and dated affidavit stating "[u]nder penalty of perjurys, I make the statements contained herein" substantially complied with § 1746(2) even though it did not state the exact language or that the contents were "true and correct").

Considering all the above, limiting discovery for a certain period as to whether Defendant in fact even called Plaintiff at that number would be efficient and avoids costly and potentially unnecessary class discovery in this matter. Defendant maintains that it has no record whatsoever of a call made to (205) 503-XXXX on April 19, 2022. (DE 16 at 4.) Defendant's counsel even candidly states that this is the first TCPA case where his client has no such record. (DE 16 at 4.) Defendant also points to the fact that Plaintiff subpoenaed her own cellphone carrier to obtain evidence regarding the call, that subpoena is returnable April 6, 2023, yet Plaintiff has not indicated what response, if any, was received from the carrier. (DE 16-2 at 2.)

First, limited discovery regarding whether Defendant called Plaintiff would not overlap with and is distinct from class issues. In 🔖 *Charvat*, the court found much of the discovery sought was relevant not only to the individual claims but also to the class claims including documents related to "telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers" and more. 🔖 *Id.* at *2. Presumably, Defendant's proposed discovery would involve Plaintiff's cellphone records, Defendant's call records for April 19, 2022, and other categories that do not specifically relate to the larger proposed class of individuals who received calls within the four years predating the complaint. This would also include Defendant's records as they relate to outgoing calls to Plaintiff.

**\*4** Thus, this is not an instance where the proposed limited discovery "overlaps substantially" with class discovery and where "bifurcation will result in duplication of efforts and needless line-drawing disputes." 🔖 *Charvat*, 2016 WL 207677, at *1. *Cf.* 🔖 *Physicians Healthsource, Inc.*, 2014 WL 413534, at *4 (finding the issue of whether the faxes sent to Plaintiff were informational, and thus, actionable under the TCPA, to be totally distinct from class issues);

*see also* 🔖 *Leschinsky v. Inter–Continental Hotels Corp.*, No. 8:15-cv-1470-T-30 (MAP), 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (granting limited discovery for 90 days in a TCPA case to whether the named plaintiff received the calls manually and how many calls were made) (cited in 🔖 *Charvat*, 2016 WL 207677, at *2).

Second, resolution of this "narrow, potentially dispositive issue" has the potential to render Plaintiff's TCPA claim baseless and may resolve the case since Defendant intends to initiate dispositive motion practice following discovery as to whether Plaintiff received a phone call from Defendant on April 19, 2022. (DE 16 at 4). *See* 🔖 *Charvat*, 2016 WL 207677, at *1. Moreover, unlike in 🔖 *Charvat*, where the complaint identified two other individuals that the Court noted could serve as class representatives if Plaintiff's claim was defeated, here no one else is specifically identified, and thus, resolution of Plaintiff's claim can lead to a "prompt, efficient resolution of this litigation." 🔖 *Charvat*, 2016 WL 207677, at *3.

Third, limited discovery here has the potential to save the parties from the costs resulting from class action discovery, which can involve "hefty litigation expenses and an extensive use of judicial resources...." 🔖 *Physicians Healthsource, Inc.*, 2014 WL 413534, at *4. Those costs can be particularly unforgiving for defendants. *See* 🔖 *id.* For example, here Defendant notes that Plaintiff has already propounded discovery requests that include a document demand for Defendant to "produce all documents containing ... information for each outbound telemarketing call sent by you or your vendors" in the last four years. (DE 16 at 4; DE 16-1). Again, compare with 🔖 *Charvat* where the court noted that defendant had submitted no information suggesting that the discovery requests would be voluminous, unduly burdensome to produce or disproportionate to the needs of the case. *See* 🔖 *Charvat*, 2016 WL 207677, at *2. Defendant there did not identify which discovery requests could be objectionable as class based. *See* 🔖 *id.*

Plaintiff relies heavily on 🔖 *Charvat*, 🔖 2016 WL 207677, at *6-7, *Reisman v. Northeastern Power and Gas LLC*, No. 23-CV-620 (S.D.N.Y. Mar. 3, 2023) (memo endorsement) (DE 12), and *Katz v. Allied First Bank, SB, Civil Action*, No. 22-CV-5277 (N.D. Ill. Jan. 3, 2023) (electronic order) (DE 14).

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 49 of 81

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

However, each of those cases denied motions to bifurcate because of the substantial overlap of discovery identified between Plaintiff's claim and the anticipated class discovery. That is not the case here. Plaintiff also points to *Naiman v. Big Think Capital Inc.*, No. 22-cv-2531 (WFK) (JMW) (E.D.N.Y. filed May 3, 2023) as an example of a TCPA case where parties have proceeded without bifurcated discovery. The simple fact that parties in one other case did not seek to bifurcate discovery holds no persuasive value with respect to the propriety of bifurcation here where, *inter alia*, the proposed discovery does not substantially overlap with class discovery. *Cf.* Cunningham, 2021 WL 4407749, at *4 (defendant sought bifurcation though the motion was denied because of the substantial overlap between merits and class discovery as to the question of consent).

**\*5** In sum, Defendant has established good cause for limited discovery related to Plaintiff's individual claim -- specifically as to the issue of whether Defendant made a call to Plaintiff on April 19, 2022 at the (205) 503-XXXX number. Given that such discovery would not result in duplication of efforts or substantially overlap with class discovery, it would be practical and would ensure the "just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1. Moreover,

granting Defendant's motion will not cause undue burden and expense to Plaintiff nor would it prejudice Plaintiff because this case is in the nascent stages. Defendant conceded at oral argument a 90-day period was not necessary to complete limited discovery. As such, the limited discovery shall conclude on or before June 30, 2023.

### CONCLUSION

Defendant's motion for bifurcation of individual and class discovery is therefore GRANTED as follows: discovery is limited to whether on April 19, 2022 Plaintiff received a call from Defendant at the (205) 503-XXXX number and ownership of the subject phone. This also includes discovery of Defendant as to calls made to Plaintiff. This limited discovery shall be complete on or before June 30, 2023. On or before June 23, 2023, the parties are directed to file a joint status report with a proposed schedule for remaining discovery following the limited discovery ordered herein.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3440077

---

## Footnotes

1    The parties have informally agreed to keep the phone number confidential and have referred to it throughout their papers in this redacted format.

2    Counsel for Plaintiff failed to appear but notified chambers following the argument of the circumstances which the Court finds excusable.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2605343
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Matthew VANDERSLOOT, individually and on
behalf of all others similarly situated, Plaintiff,

v.

CHARLES BARATTA LLC, doing
business as Prime Marketing, Defendant.

24-cv-07096 (JMW)
|
Signed September 9, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, 2657 Mt. Carmel
Ave, Glenside, PA 19038, Attorney for Plaintiff.

Laura Kogan, David Krueger, Benesch Friedlander Coplan
& Aronoff, 127 Public Square, Suite 4900, Cleveland, OH
44114, Attorneys for Defendant.

### ORDER

WICKS, Magistrate Judge:

 **\*1** Matthew VanderSloot ("Plaintiff") commenced this
action on October 8, 2024, pursuant to the Telephone
Consumer Protection Act ("TCPA"), 📄 47 U.S.C. § 227 *et
seq.*, asserting that Charles Baratta d/b/a Prime Marketing
Source ("Defendant" or "Prime") allegedly called Plaintiff's
residential phone number repeatedly despite Plaintiff's
registration on the National Do Not Call Registry. (*See
generally* ECF Nos. 1, 28.) Plaintiff contends that through
use of fictitiously named individuals who allegedly worked
for various non-existent companies and entities, Defendant
initiated calls to Plaintiff over one hundred times without
Plaintiff's consent in an attempt to solicit Plaintiff filing a
potential Camp Lejeune claim. (*See* ECF No. 28 at ¶¶ 22-23.)
The parties are before the Court on Defendant's motion to
bifurcate individual and class discovery effectively seeking
to limit the initial discovery to whether or not Defendant
placed the subject calls. (*See generally* ECF Nos. 40, 41.) For
the reasons that follow, Defendant's motion (ECF No. 40) is
**GRANTED**.

### FACTUAL BACKGROUND

Plaintiff commenced this lawsuit asserting a violation of the
TCPA on behalf of himself and the National Do-Not-Call
("DNC") Class. (*Id.* at ¶ 3.) Despite having registered his
phone number on the National Do Not Call Registry, Plaintiff
contends that "Defendant, or its affiliates, agents, or other
persons or entities acting on Defendant's behalf violated the
TCPA by causing multiple telephone solicitation calls or
text messages to Plaintiff ...." (*Id.* at ¶¶ 17, 64.) According
to Plaintiff, Defendant's entire business model is structured
around relying on "illegal telemarketing, including using
fictitious names to hide their identify" to generate "leads"
from potential individuals interesting in filing lawsuits, and
subsequently selling that information to law firms. (*See id.* at
¶¶ 19-21.)

Beginning on August 30, 2023, Plaintiff maintains that
he received "over approximately one hundred calls"
from supposedly fictitious individuals named "Tiffany,"
"DeAndre," and "Christopher," working for allegedly non-
existent companies, including "Legal Helpers" and "Medical
Health Department," seeking to solicit Plaintiff for legal
representation in a Camp Lejeune claim. (*Id.* at ¶ 22.) Plaintiff
avers that these calls were unwanted, nonconsensual, and
resulted in violations of Plaintiff's and the DNC Class's
privacy rights. (*See id.* at ¶¶ 49-53.) Notably, Plaintiff
maintains that all calls from these entities and individuals
were placed "directly by Defendant." [1] (*Id.* at ¶ 23; *see also
id.* at ¶ 25 (arguing that Legal Helpers is Defendant)).

On September 20, 2023, and September 27, 2023, Defendant
allegedly sent a text message from the (210) 405-8263
telephone number, a number that Plaintiff maintains "is
a direct telephone number owned and operated by the
Defendant in the Defendant's name," to Plaintiff identifying
itself as "DeAndre" with "Legal Helpers." (*Id.* at ¶¶
28-29.) The calls continued and on January 10, 2024,
Plaintiff allegedly received "at least seven calls" from
"Tiffany" from the "Medical Health Department" using
a (713) 405-3514 number. (*Id.* at ¶ 31.) During the
last of the calls, "Tiffany" allegedly asked Plaintiff if
he received calls from "[Tiffany's] law associate" from
a (954) 800-2991 number, and that Plaintiff should "just
search for that number." (*Id.* at ¶ 32.) Plaintiff called
this number and spoke with "Christopher Garcia" who
provided "cgarcia@primemarketingsource.com" as his email
address and a callback number of (954) 799-8058. (*Id.* at ¶

33.) "Christopher Garcia" followed this call with an email regarding a Camp Lejeune claim which "also originated from the Defendant's email." (*Id.*) As Plaintiff contends, the two "954" numbers "are direct telephone numbers owned and operated by the Defendant in the Defendant's name." (*Id.* at ¶ 34.)

**\*2** Following this call with "Christopher," Plaintiff received a text message on January 10, 2024 from the 210-405-8263 number that read "954-799-8058 Chris G calls only" and another message saying "*cgarcia@primemarketingsource.com*." (*Id.* at ¶¶ 36-37.) "Christopher" purportedly then sent Plaintiff a text message from the "210" number including a link to a website to upload Plaintiff's ID that, upon clicking the link, prompted an individual named "Matthew" to upload his ID. (*See id.* at ¶ 38.) Shortly thereafter, on January 17, 2024, Plaintiff received a call from "Christopher" using the same "210" number. (*Id.* at ¶ 39.) As Plaintiff avers, "Tiffany" followed this call with a text asking Plaintiff to fill out verification and registration forms "Christopher" provided to Plaintiff using the 210-405-8263 number. (*See id.*) The next day, Plaintiff received another message from the 210-405-8263 number stating it was "Christopher Gee from Legal Helpers" inquiring about a Camp Lejeune claim. (*Id.* at ¶ 40.) That message left a callback number as 954-799-8058, the same number Christopher mentioned on a prior call. (*See id.* at ¶¶ 40-41.) Under these circumstances, Plaintiff contends that "'Tiffany' from 'Medical Health Department' and 'Chris' and 'DeAndre' calls from 'Legal Helpers' were in fact uncovered as originating from the Defendant ...." (*See id.* at ¶¶ 46-48.)

## PROCEDURAL BACKGROUND

Plaintiff filed its Amended Complaint on February 13, 2025. (ECF No. 28.) On April 3, 2025, the undersigned held a pre-motion conference on Defendant's anticipated motion to dismiss the Amended Complaint for failure to state a claim. (*See* ECF No. 31.) During this pre-motion conference, "Plaintiff stipulated on the record that on the current Amended Complaint *only claims of direct liability* under the Telephone Consumer Protection Act are sought and that it *does not encompass a claim of vicarious liability*." (*Id.*) (emphasis added).

On July 9, 2025, the Court denied Defendant's motion to dismiss the Amended Complaint for failure to state a claim under the TCPA, finding that "[b]ecause Plaintiff

present[ed] sufficient allegations that raise[d] a plausible inference that Defendant initiated the calls and messages to Plaintiff, Plaintiff's direct liability claim ought to proceed to discovery." *Vanndersloot v. Charles Baratta LLC*, No. 24-cv-07096 (JMW), 2025 WL 1898929, at \*9 (E.D.N.Y. July 9, 2025). Consequently, the undersigned directed the parties to submit a proposed scheduling order addressing the end date for fact discovery; dates for expert reports and disclosures in chief and rebuttal; and end date of expert discovery. *See id.*

On July 23, 2025, the parties submitted two competing discovery schedules. (*See* ECF No. 39.) In this submission, Defendant expressed its intention to "seek bifurcation on the issue of whether Defendant placed the at issue calls, which the Plaintiff opposes." (*Id.* at p. 1.) Accordingly, the Court directed the parties to submit briefing on the motion to bifurcate discovery. (*See* Electronic Orders dated July 24, 2025, August 13, 2025.) Defendant submitted its motion on August 4, 2025 (ECF Nos. 40-41), Plaintiff opposed on August 26, 2025 (ECF No. 45), and Defendant submitted its reply on September 3, 2025. (ECF No. 46.)

## THE LEGAL FRAMEWORK

Bifurcation "is properly understood as a stay of class discovery pending resolution of plaintiff's individual claim." ⚑ *Chow v. SentosaCare, LLC*, No. 19-CV-2541 (FR), 2020 WL 559704, at \*1 (E.D.N.Y. Jan. 23, 2020). A district court has "considerable discretion to stay discovery" under Federal Rule of Procedure 26(c), with the moving party having the burden of establishing good cause. *See* ⚑ *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*, No. 18-CV-4476 (LJL) (SLC), 2020 WL 1166047, at \*5 (S.D.N.Y. Mar. 11, 2020); *Mohammed Thani A.T. Al Thani v. Hanke*, 20-CV-4765 (JPC), 2021 WL 23312, at \*1 (S.D.N.Y. Jan. 4, 2021) ("Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)") (alteration in original) (quoting *Rep. of Turk. v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). Good cause may exist "where the 'resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary,' " ⚑ *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL), 2016 WL 207677, at \*2 (E.D.N.Y. June 5, 2013) (quoting *Tabor v. N.Y. City*, No. 11-CV-0195, 2012 WL 603561, at \*10 (E.D.N.Y. Feb. 23, 2012)), or where "a narrow, potentially dispositive issue," being "totally distinct from class issues," has the

potential render Plaintiff's TCPA claim baseless. *Id.* (quoting

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-CV-2132, 2014 WL 413534, at *2 (D.N.J. Feb. 4, 2014)).

**\*3** The Federal Rules of Civil Procedure do not squarely address the bifurcation of discovery. *See* *Cunningham v. Big Think Cap. Inc.*, No. 21-CV-02162 (DRH) (JMW), 2021 WL 4407749, at *2 (E.D.N.Y. Sept. 27, 2021); *see also* Alexa Ashworth, et al., *Bifurcation of Discovery*, 10 Fed. Proc., L. Ed. § 26:88 (Mar. 2023) (noting that the court may bifurcate discovery, for example, "in class actions into sections related to the claims of the named plaintiffs and the class claims"). Rather, when confronted with the issue, courts turn to Rule 42(b), which sets forth the standard to be applied when considering consolidation and separation of cases for trial. *Cunningham*, 2021 WL 4407749, at *2 (citing Fed. R. Civ. P. 42(b)). Borrowing from Rule 42, courts contemplate bifurcating discovery "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. R. Civ. P. 42(b); *see* *Charvat*, 2016 WL 207677, at *1 ("The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b).").

However, bifurcation should be considered an exception, not the rule. *Harris v. Shore Funding Solutions Inc.*, No. 23-cv-00789 (JMA) (JMW), 2023 WL 3440077, at *2 (E.D.N.Y. Apr. 21, 2023). Indeed, courts are likely to deny bifurcation "where discovery relating to class issues overlaps substantially with merits discovery" given that, in such circumstances, "bifurcation will result in duplication of efforts and needless line-drawing disputes." *Charvat*, 2016 WL 207677 at *1 (quoting *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2020)). Moreover, courts will not bifurcate if bifurcation will simply delay class certification or obfuscate the issue of what discovery relates to the class as opposed to the named plaintiff. *Id.* (citing *True Health Chiropractic Inc. v. McKession Corp.*, No. 13-CV-2219 (JST), 2015 WL 273188, at *2–3 (N.D. Cal. Jan. 20, 2015)).

Mindful of these principles, the Court considers the instant application.

## DISCUSSION

Defendant seeks to bifurcate discovery and serve limited discovery upon Plaintiff targeted at whether Defendant placed the calls at issue or not. (ECF No. 41 at pp. 7-8.) Defendant specifically intends to serve upon Plaintiff discovery requests "that cut to the core issues that might decide the case" at this juncture:

- Whether Prime actually called Plaintiff at the (208) XXX-XXXX phone number;

- If so, whether Plaintiff independently owns the (208) XXX-XXXX phone number, for residential use;

- Whether Prime actually called Plaintiff on the following dates: August 30, 2023; September 4, 2023; September 18, 2023, September 20, 2024; September 27, 2023; November 16, 2023; January 10, 2024; January 17, 2024; January 18, 2024; and

- Whether Prime owns the phone numbers identified in the Complaint.

(*Id.* at p. 4.)

In *Harris*, this Court granted a motion to bifurcate discovery under strikingly similar circumstances. 2023 WL 3440077, at *1. There, defendant sought to bifurcate individual and class discovery under the TCPA to explore "the threshold issue of whether Plaintiff received a call from Defendant" at a certain phone number and "whether Plaintiff owns the phone to which the number is assigned." *Id.* at *2. This Court determined that "limiting discovery for a certain period as to whether Defendant in fact even called Plaintiff at that number would be efficient and avoids costly and potentially unnecessary class discovery in this matter." *Id.* at *3. Indeed, the discovery regarding whether defendant actually called plaintiff was "distinct from class issues" and would not overlap with it because the proposed bifurcated discovery would involve plaintiff's individual phone records, defendant's specific call records for a certain date, defendant's outgoing calls to plaintiff, and "other categories that do not specifically relate to the larger proposed class of individuals ...." *Id.* Moreover, "resolution of [the] narrow, potentially dispositive issue ha[d] the potential to render Plaintiff's TCPA claim baseless and may resolve the case" especially in light of the anticipated dispositive motion practice following limited discovery. *Id.* at *4. Further,

the Court emphasized that "limited discovery [ ] has the potential to save the parties from the costs resulting from class action discovery," especially where plaintiff's propounded demands sought four years of documents containing outbound telemarking information by defendant or its vendors. *Id.* Lastly, the case was in its "nascent stages," an initial conference was held, and initial discovery requests were served by plaintiff only. *Id.* at *1, *5.

**\*4** Here, much like in *Harris*, the issues regarding Plaintiff's individual claim are distinct from, and do not overlap with, class issues. Through limited discovery, Defendant seeks to "gather telephone logs evidencing the purported calls, confirm Plaintiff's ownership of the (208) XXX-XXXX telephone number, show alleged text messages and/or emails that were exchanged, any relevant phone recordings of the Subject Calls, and verify through carrier data the origin of said call." (ECF No. 41 at p. 9.) Moreover, Plaintiff's Amended Complaint discusses at length calls and messages from "DeAndre," "Tiffany," and "Chris G," from "Legal Helpers" and "Medical Health Department." (*See* ECF No. 28 at pp. 4-8.) These are issues "that do not specifically relate to the class" but rather are particular to Plaintiff and the communications *he* had with Defendant. *See Cameron v. CHW Group, Inc.*, No. 23-cv-00320-HCN-DBP, 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025) (finding "enough separation between class discovery and individual discovery to warrant bifurcation" including discovery concerning, *inter alia*, whether plaintiff received telephone solicitations within the TCPA by defendant).

Plaintiff's class allegations, on the other hand, make generalized assertions that Defendant knowingly violated the TCPA by "causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period" despite being registered on the National Do Not Call Registry. (ECF No. 28 at ¶¶ 63-65.) Plaintiff fails to offer anything more than conclusory statements to support its contention that overlap exists. (*See* ECF No. 45 at pp. 12-14.) As such, the proposed limited discovery will not substantially overlap with class discovery or result in duplication of efforts. *Compare Harris*, 2023 WL 3440077, at *4, *with Cunningham*, 2021 WL 4407749, at *3 (determining bifurcation was not appropriate where issues of consent "concern[ed] the same online application and consent agreement" that all class members and plaintiff received).

Moreover, determining whether Defendant initiated the calls to Plaintiff is the dispositive issue on a direct liability claim. *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 173 (E.D.N.Y. 2018) (noting that to establish direct liability under the TCPA, a plaintiff must allege that a defendant initiated the unsolicited call). As noted *supra*, Plaintiff is *solely* pursuing a claim of direct liability. (*See* ECF No. 31.) It follows, therefore, that Plaintiff's direct liability claim may be rendered baseless following a limited discovery period into whether Defendant placed the calls and whether Defendant owns the numbers that called Plaintiff. *Compare Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (bifurcating discovery to address the "case-dispositive questions" of whether plaintiff received a pre-recorded call and whether defendant was legally responsible for such calls), *with Simmons v. Author Reputation Press LLC*, No. 24-12330-BEM, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025) (denying motion to bifurcate where defendant provided "no specific basis on which to conclude" plaintiff's individual claim was "vulnerable to early defeasance").

Furthermore, limited discovery may save the parties, particularly Defendant, from the "hefty litigation expenses and an extensive use of judicial resources" common in TCPA class actions. *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132 (FLW), 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) ("It is also generally understood that the costs can be particularly 'enormous' for defendants.") (citation omitted). Indeed, a majority of Plaintiff's initial discovery demands are tailored towards a theory of vicarious liability notwithstanding Plaintiff's stipulation to the contrary. For example, Plaintiff's first set of interrogatories seek, *inter alia*, "[a]ll communications with any third party concerning this litigation other than [Defendant's] attorney," "all documents containing ... information for each outbound telemarketing call sent by [Defendant] or [Defendant's] vendor, including those made to Plaintiff," "[a]ll internal communications at [Defendant's] company regarding any third party that provided you the Plaintiff's telephone number," and "all complaints concerning outbound calls made by [Defendant] or by any vendor of [Defendant's] for allowing or making allegedly unlawful or unauthorized outbound calls." (ECF No. 45-2 at pp. 19, 28, 31, 33.) This discovery stretches not only beyond the theory of direct liability, but seeks *any* and *all* information from these third parties, thereby increasing potential costs and expenses. *Compare Harris*, 2023 WL 3440077, at *4, *with Charvat*, 2016 WL 207677, at *2 (denying motion to bifurcate where

defendant submitted no information suggesting that the discovery requests would be voluminous, unduly burdensome to produce, or disproportionate to the needs of the case).

 **\*5**  This case is also in its nascent stages. Although a scheduling order was entered on January 6, 2025 (ECF Nos. 22, 23), discovery was stayed shortly thereafter on February 7, 2025 pending disposition of Defendant's motion to dismiss. Even following denial of the motion to dismiss on July 9, 2025, no discovery schedule was entered because of the current motion to bifurcate. (*See* ECF No. 39); *see Harris*, 2023 WL 3440077, at \*1 ("The case is in its infancy. At the initial conference, the Court entered a Scheduling Order and set a briefing schedule for Defendant's motion to bifurcate discovery as to Plaintiff's individual claim and the proposed class."). Though Plaintiff raises prejudice in the form of being deprived of information needed to develop his current *and alternative theories* of his case, any asserted prejudice is neutralized by the early stage of this case coupled with the burdens and costs associated with unnecessary class action discovery under the TCPA. *See Harris*, 2023 WL 344077, at \*5; *see also Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at \*2 (N.D. Ohio May 30, 2023) (granting bifurcation where the case "[was] still in its preliminary stages" before defendant suggested bifurcating discovery); *see also Newell v. Aliera Healthcare, Inc.*, No. 19-cv-01489-SCJ, 2020 WL 13568762, at \*3 (N.D. Ga. Apr. 6, 2020).

Under the circumstances presented, where limited discovery (i) does not substantially overlap with class discovery, (ii) would ensure the just, speedy, and inexpensive determination of this action, and (iii) would not prejudice Plaintiff based on the status of this litigation, Defendant has established good cause for limited discovery related to Plaintiff's individual claim of direct liability. Accordingly, bifurcation of discovery is warranted and appropriate here.

## CONCLUSION

For the foregoing reasons, Defendant's motion for bifurcation (ECF No. 40) is **GRANTED**. All discovery relevant to Plaintiff's individual direct liability claim under the TCPA shall conclude by **November 7, 2025**, and the parties are directed to file a joint status report, on or before **November 3, 2025**, advising the Court as to the progress of discovery. Class discovery is stayed until further order by the Court.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2605343

---

## Footnotes

1    Plaintiff alleges that each these "spoofed" calls, in addition to text messages sent by "DeAndre" and "Tiffany," were sent by various, supposedly fictitious numbers, including: (208) 900-6666, (208) 681-7762, (615) 653-4187, (210) 405-8263, (872) 760-0218, (872) 760-0759, (713) 357-5174. (ECF No. 28 at ¶¶ 26-27.)

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM   Document 16-2   Filed 10/09/25   Page 55 of 81

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

2019 WL 957129
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Samuel KATZ et al., Plaintiffs,
v.
LIBERTY POWER CORP., LLC et al., Defendants.

Civil Action No. 18-cv-10506-ADB
|
Signed 02/27/2019

**Attorneys and Law Firms**

David Christopher Parisi, Pro Hac Vice, Suzanne L. Havens Beckman, Pro Hac Vice, Parisi & Havens LLP, Santa Monica, CA, Ethan Mark Preston, Pro Hac Vice, Preston Law Offices, Dallas, TX, Grace Parasmo, Pro Hac Vice, Yitzchak H. Lieberman, Pro Hac Vice, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Sims and Sims LLP, Brockton, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Samuel Katz.

Ethan Mark Preston, Preston Law Offices, Dallas, TX, David Christopher Parisi, Parisi & Havens LLP, Santa Monica, CA, Grace Parasmo, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Fink Law, Westborough, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Alexander Braurman.

David Christopher Parisi, Parisi & Havens LLP, Santa Monica, CA, Ethan Mark Preston, Preston Law Offices, Dallas, TX, Grace Parasmo, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Sims and Sims LLP, Brockton, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Lynne Rhodes.

Charles A. Zdebski, Pro Hac Vice, Jeffrey P. Brundage, Pro Hac Vice, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, Pamela C. Rutkowski, Craig R. Waksler, Rachel E. Moynihan, Eckert Seamans Cherin & Mellott LLC, Boston, MA, for Defendant Liberty Power Corp., LLC.

Charles A. Zdebski, Pro Hac Vice, Jeffrey P. Brundage, Pro Hac Vice, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, Craig R. Waksler, Pamela C. Rutkowski, Rachel E. Moynihan, Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Defendant Liberty Power Holdings, LLC.

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO BIFURCATE CLASS DISCOVERY AND PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

ALLISON D. BURROUGHS, U.S. DISTRICT JUDGE

**\*1** Plaintiffs Samuel Katz, Alexander Braurman, and Lynne Rhodes allege violations of the Telephone Consumer Protection Act of 1991 ("TPCA") and fraudulent transfers to the detriment of four putative nationwide classes of persons who received telemarketing calls on behalf of Defendants Liberty Power Corp, LLC and Liberty Power Holdings, LLC (together "Liberty Power"). Before the Court are Liberty Power's Motion to Bifurcate Class Discovery, [ECF No. 66], and Plaintiffs' Motion for a Protective Order regarding certain third-party subpoenas, [ECF No. 88]. For the reasons explained herein, individual and class discovery are bifurcated, and the Motion for a Protective Order is GRANTED in part and DENIED in part.

**I. DISCUSSION**

This action was filed on March 16, 2018. [ECF No. 1]. The complaint has been amended twice, most recently on November 14, 2018. [ECF No. 109]. On January 9, 2019, Liberty Power filed a motion to dismiss the Second Amended Complaint. [ECF No. 118]. Although the Court has not yet ruled on that motion, the parties have—quite appropriately—engaged in considerable discovery. As a result, Liberty Power has identified several perceived weaknesses in the named Plaintiffs' claims and argues that it may be able to show, after limited additional individual discovery, that the named Plaintiffs lack viable claims. [See ECF No. 67]. Liberty Power requests that the Court bifurcate discovery and permit a dispositive motion on the named Plaintiffs' claims before class discovery.

As part of Liberty Power's efforts to secure discovery to support its arguments that the named Plaintiffs do not have viable claims, it issued third-party subpoenas to Verizon, Cellco Parnership, Vonage, and Google, providers of telephone and email services used by Plaintiffs. Plaintiffs move for a protective order prohibiting enforcement of those third-party subpoenas, or alternatively narrowing their scope. [ECF No. 88].

## A. Bifurcation of Discovery

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) ). A district court's exercise of its "inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice" and "cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute." *Id. at* 1892 (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996) ). District courts "enjoy broad discretion in managing the pace of pretrial proceedings, including the timing of discovery." *Vineberg v. Bissonnette*, 548 F.3d 50, 54 (1st Cir. 2008). Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (emphasizing the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial); see also L.R. 16.3(a)(3)(B) (noting that a judicial officer may sequence discovery into two or more stages at a case management conference).

**\*2** Courts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstances of particular cases. E.g. *O'Connell v. Sterling Jewelers, Inc.*, No. 13-cv-13165-DPW (D. Mass. Dec 14, 2013), ECF No. 61 (denying motion to strike class claims, but allowing merit discovery and summary judgment motions as to named plaintiffs' claims before class discovery); *Huzarsky v. Little Kids, Inc.*, No. 15-cv-13613-DJC (D. Mass. Feb. 22, 2016), ECF No. 22 (allowing summary judgment motions on individual claims before addressing class issues).

Here, the need for class discovery may be eliminated if Liberty Power is able to demonstrate that all of the named Plaintiffs lack viable individual claims. See *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action,

it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."). But see *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-cv-13069-PBS, 2016 WL 1441791, at \*7 (D. Mass. Apr. 12, 2016) (holding that tendering complete relief of named representative's individual claim under Rule 68 did not moot TCPA class claims because class claims fell within "inherently transitory" exception). Further, class discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named Plaintiffs' are within the classes [1] they purport to represent, and whether any named Plaintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim. [See ECF No. 67 at 5–10]. The parties shall complete discovery relevant to the alleged TCPA violations committed against the named Plaintiffs by May 22, 2019. Class discovery is stayed until further order of the Court, and the parties shall file a joint letter setting forth their respective positions concerning class discovery by May 31, 2019. Liberty Power shall file any motion for summary judgment based on the named Plaintiffs' individual claims by June 21, 2019. Plaintiffs shall respond in accordance with the local rules.

## B. Third-Party Subpoenas for Emails

Liberty Power has issued a subpoena to Google that demands all emails and attachments from Mr. Katz's Gmail account with the words "liberty," "garrison," or "TCPA," excluding emails with a limited set of Mr. Katz's attorneys. [ECF No. 89-6]. The subpoena requests that those emails be produced to Liberty Power's counsel in the District of Columbia. [Id. at 2]. Plaintiffs move for a protective order, which they have standing to pursue because of Mr. Katz's interest in avoiding the disclosure of personal information and privileged materials that may be contained in the emails sought from Google. See Wright & Miller, 9A *Federal Practice & Procedure* § 2459 (3d ed. 2018) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

**\*3** *Federal Rule of Civil Procedure 45* allows third-party subpoenas in connection with civil litigation but requires parties to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 57 of 81

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

Fed. R. Civ. P. 45(d)(1). Although the subpoena at issue requests the production of emails in the District of Columbia and a motion to quash or modify the subpoena would be more properly filed in the United States District Court where performance is required, see Fed. R. Civ. P. 45(d)(3), this Court retains jurisdiction to restrict the scope of discovery and issue protective orders in accordance with Rule 26, see Fed. F. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Google email is an electronic communication service within the meaning of the Stored Communications Act, and Google is generally not permitted and cannot be compelled to respond to civil subpoenas that seek email communications. See 18 U.S.C. § 2701(c)(1); Bower v. Bower, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) ("[C]ourts have repeatedly held that providers such as Yahoo! and Google may not produce emails in response to civil discovery subpoenas.");

see also 🔖 In re Facebook, Inc., 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (quashing subpoena issued pursuant to 28 U.S.C. § 1782 because "civil subpoenas may not compel production of records from providers like Facebook"); 🔖 In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d 606, 609 (E.D. Va. 2008) ("[T]he plain language of the [Stored Communications Act] prohibits AOL from producing the [plaintiff's] e-mails, and the issuance of a civil discovery subpoena is not an exception to the provisions of the [Stored Communications Act.]"); 🔖 Viacom Int'l Inc. v. YouTube Inc., 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (granting protective order and denying motion to compel production from YouTube).

Therefore, Plaintiffs' Motion for a Protective Order with respect to the subpoena of Mr. Katz's emails from Google is granted. [2] Given the absolute clarity of the law in this area, Defendants are warned that similar subpoenas could result in sanctions.

### C. Third-Party Subpoenas for Telephone Records

Liberty Power has issued subpoenas seeking "all contracts, inbound and outbound phone call and fax logs, billing statements, features, and payment history" for relevant periods related to the telephone accounts at issue from the companies that provided the telephone lines that were allegedly illegally called. [ECF Nos. 89-2, 89-3, 89-4, 89-7, 89-8]. In addition to reflecting the calls at issue here, Plaintiffs' account records may be relevant to defenses, including that the calls in question were consented to or that certain phone lines were not "residential telephone line[s]" within the meaning of the TCPA. See 🔖 47 U.S.C. § 227(b)(1); see also Bank v. Indep. Energy Grp., No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) ("[W]hile a telephone subscriber can have a telephone number registered as 'residential' with the telephone company, 'if the subscriber holds out such a telephone number to the general public as a business line, the line should not be considered "residential" for the purposes of the TCPA—even if it is registered as "residential" with the telephone company.' " (quoting 🔖 Bank v. Indep. Energy Grp., No. 12-cv-1369, 2014 WL 4954618(JG), at *1 (E.D.N.Y. Oct. 2, 2014) ) ); [ECF No. 100 at 6-9]. [3]

**\*4** In addition to subpoenaing account records for the telephone numbers that were allegedly called in violation of the TCPA, Liberty Power has subpoenaed "[f]or 2016 and 2017, all contracts, phone call logs (inbound and outbound), billing statements, invoices, features, and payment history" related to a Google Voice account that Liberty Power claims is Mr. Katz's true residential number, but which is not the phone number that Mr. Katz alleges Liberty Power illegally called. [ECF No. 89-5]. Liberty Power claims that Mr. Katz uses that Google Voice number as his actual residential number and forwards calls from his purported residential line to his Google Voice number to track telemarketing calls for the purpose of filing lawsuits. [ECF No. 67 at 7]. The Google Voice records may therefore contain relevant information bearing on the telemarketing calls at issue and whether Mr. Katz's purported residential number falls within the provisions of the TCPA.

Courts often permit discovery of records related to the telephone numbers at issue in TCPA cases. See Molnar v. NCO Fin. Sys., Inc., No. 13CV131-BAS (JLB), 2014 WL 3371414, at *3 (S.D. Cal. July 8, 2014) (granting defendant complete and unredacted telephone records, including records of irrelevant calls where plaintiff acknowledged some of calls at issue might not appear on telephone records); Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers, No. 1:12-CV-630, 2014 WL 12656102, at *2 (S.D. Ohio May 22, 2014) (granting motion to compel production of all of defendant's call records from a relevant month). Here,

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 58 of 81

given the uncertainty as to how some of the Plaintiffs' phone numbers were being used, the subpoenaed account records are potentially relevant and do not impose an undue burden on the named Plaintiffs. See ⚑ Mintz v. Mark Bartelstein & Assocs., Inc., 885 F.Supp.2d 987, 1001 (C.D. Cal. 2012) ( "[T]he disclosure of telephone numbers, as well as the date, time, and duration of calls does not represent a significant intrusion of [p]laintiff's privacy."). Plaintiffs' Motion for a Protective Order concerning subpoenas of telephone account records is therefore denied.

Defendants shall treat the records produced in response as "Confidential" under the Protective Order, [ECF No. 20], and shall not inquire at any deposition as to the content of calls that Plaintiffs concede do not concern Defendants, their agents, or TCPA claims. Defendants may inquire whether calls are of a business or personal nature but may not go beyond that for calls that do not relate to TCPA violations alleged here or elsewhere.

## II. CONCLUSION

Accordingly, discovery in this case is BIFURCATED. Discovery relevant to the merits of the named Plaintiffs' individual claims shall conclude by May 22, 2019. Class discovery is stayed until further order by the Court, and the parties shall file a joint letter stating their positions on class discovery by May 31, 2019. Defendants shall file a status report on or before May 31, 2019 to inform the Court as to whether they intend to move for summary judgment for some or all of the named Plaintiffs' claims. [4] Defendant may then move for summary judgment with respect to some or all of the named Plaintiffs' claims by June 21, 2019.

Plaintiffs' Motion for a Protective Order is GRANTED with respect to Liberty Power's subpoena of emails, but DENIED with respect to the subpoenas of telephone account records, including call logs and other requested information.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 957129

---

## Footnotes

1    Plaintiffs bring claims on behalf of four putative classes: (1) the Robocall Class, (2) the Residential Class, (3) the National Do Not Call Class, and (4) the Internal Do Not Call Class. Plaintiff Rhodes is the sole representative of the Robocall Class, while the other three classes are represented by all three named plaintiffs. Given the multiple putative classes, individual discovery may curtail the scope of class discovery, even if Defendants are unsuccessful in resolving all claims brought by the named plaintiffs.

2    Even assuming the communications could be produced by Google without violating Title 18, the Court would issue a protective order given that the subpoena would be entirely duplicative of discovery that could be obtained from Plaintiffs without the risk of obtaining privileged communications.

3    In holding that discovery of call logs and other account information is appropriate, the Court does not express a view as to whether a "residential" line that is used for business purposes can be considered a "residential telephone line" under the TCPA.

4    If Defendants do not move for summary judgment sufficient to eliminate all class claims, the Court will likely open class discovery as to at least the class claims that will remain regardless of its summary judgment ruling, assuming the pending motion to dismiss [ECF No. 118] has not been granted.

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 59 of 81

Garcia v. Credit One Bank, N.A., Not Reported in Fed. Supp. (2020)

KeyCite Yellow Flag
Distinguished by   Wesley v. Snap Finance LLC,   D.Utah,   September 21, 2021

2020 WL 4431679
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

Israel GARCIA, Jr., Plaintiff(s),
v.
CREDIT ONE BANK, N.A., Defendant(s).

Case No. 2:18-CV-191 JCM (EJY)
|
Signed 07/31/2020

**Attorneys and Law Firms**

Craig K. Perry, Craig K. Perry & Associates, North Las Vegas, NV, for Plaintiff(s).

Becca J. Wahlquist, Pro Hac Vice, Snell & Wilmer LLP, Los Angeles, CA, Michael Paretti, Snell & Wilmer, LLP, Shannon G. Splaine, Lincoln, Gustafson & Cercos, Las Vegas, NV, James Kevin Schultz, Sessions, Fishman, Nathan & Israel, San Diego, CA, for Defendant(s).

ORDER

James C. Mahan, UNITED STATES DISTRICT JUDGE

**\*1** Presently before the court is defendant Credit One Bank, N.A.'s ("Credit One") motion for summary judgment. (ECF No. 48). Plaintiff Israel Garcia ("Garcia") filed a response (ECF No. 56), to which Credit One replied (ECF No. 60).

Also before the court is Credit One's motion to stay the case pending the Supreme Court's determination on the constitutionality of the Telephone Consumer Protection Act ("the TCPA"). (ECF No. 49). Garcia filed a response (ECF No. 56), to which Credit One replied (ECF No. 61).

Also before the court is Garcia's motion to exclude Credit One's rebuttal expert and report (ECF No. 50). Credit One filed a response (ECF No. 55), to which Garcia replied (ECF No. 57).

**I. Background**

This action arises under ⚑ 47 U.S.C. § 227(b)(1), the TCPA. (ECF No. 48 at 1). Garcia alleges that between September 29, 2014, and October 16, 2014, Credit One called the owner of a phone owned by him ("the '5589 number") 135 times. (ECF No. 49 at 4–5). One of Credit One's vendors was attempting to reach the previous owner of the '5589 number, who had provided it on a credit card application. (ECF No. 49 at 4).

On or about October 10, 2014, Garcia mailed correspondence to Credit One asserting that Credit One no longer had permission to call the '5589 number. *Id.* at 4–5. Credit One did not call Garcia after October 16, 2014. *Id.* at 5–6.

Prior to submitting his letter, Garcia had never informed Credit One that he had not consented to receive calls from Credit One at the '5589 number. *Id.* at 5. Garcia asserts that he had tried but was not able to speak to a Credit One representative to stop the calls to the '5589 number. *Id.* at 5–6. Garcia acknowledges that he "[does] not believe" he stayed on the calls long enough to connect to a live person. (ECF No. 48, Garcia Dep. Ex. B at 113:25–114:3). The '5589 number is not Garcia's primary phone number. It is instead attached to a cell phone that Garcia claims to have purchased for his father but never furnished to him. (ECF No. 48, Garcia Dep. Ex. B at 28:10–29:25). In the past, Garcia has maintained several cell phones simultaneously and filed lawsuits under the TCPA. (ECF No. 48, Garcia Dep. Ex. B at 27:22–28:13; ECF No. 48 at 8). Garcia asserts that Credit One violated the TCPA by using a prohibited automatic telephone dialing system to contact him without his express consent. (ECF No. 4 at 1).

**II. Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." ⚑ *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. ⚑ *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving

Garcia v. Credit One Bank, N.A., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 60 of 81

party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

**\*2**  In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex,* 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

On July 6, 2020, the Supreme Court rendered a decision in *Barr v. American Association of Political Consultants,* the case which was the basis for Credit One's motion to stay. Accordingly, Credit One's motion to stay is denied as moot.

#### A. Constitutional Standing

**\*3**  This court grants Credit One's motion for summary judgment. Under Article III, constitutional standing requires plaintiff to show that: (1) he suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent" and not merely "conjectural or hypothetical;" (2) that there is a "causal connection between the injury and the conduct complained of;" and (3) that it is "likely" as opposed to "merely speculative" that a favorable decision by the court will provide redress for the injury. *Lujan,* 504 U.S. at 560–61.

This court's determination rests on the first *Lujan* factor. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016). While the injury-in-fact must be "concrete," this is not necessarily synonymous with

Garcia v. Credit One Bank, N.A., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 61 of 81

"tangible." *Id.* at 1548. As the Court explained, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

Garcia alleges that his privacy and economic interests were violated by calls from Credit One. (ECF No. 4 at 5). However, it does not appear that he suffered from the harm that Congress intended the TCPA to address. *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979–80. "The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Id.* Garcia's behavior suggests that he experienced no such injury. The undisputed material facts show that Garcia kept re-purchasing pre-paid phone minutes, apparently in order to keep receiving unwanted calls. (ECF No. 48, Garcia Dep. Ex. B at 62:2–24). By calling the '5589 number, Credit One was attempting to reach the number's previous owner, who had expressly consented to be contacted at the number when he filed an application for a credit card. (ECF No. 48 at 4). Payment on the credit card of the number's previous owner was in arrears, and Credit One was attempting to collect the debt owed. *Id.* Garcia previously worked as a debt collector and is familiar with the mechanics of a TCPA claim. (ECF No. 48, Garcia Dep. Ex. B at 16:8–22; 22:7–23:24; 25:11–27:1; 35:6–26). He knew that if he instructed Credit One at any time during one of these calls to cease calling him, Credit One would have likely complied. (ECF No. 48, Garcia Dep. Ex. B at 16:14–15; 22:7–25; 23:1–2). Instead of taking the steps necessary to stop the alleged injury (the unwanted calls), he took steps to allow the continuation of the injury while building a record to facilitate a later claim. (ECF No. 48, Garcia Dep. Ex. B at 72:1–25; 110:1–18).

The undisputed material facts support this court's conclusion that Garcia seeks to achieve a similar purpose to that of the plaintiff in *Stoops*, who filed TCPA actions as part of a scheme to generate revenue. *See Stoops*, 197 F. Supp. 3d at 798. He has not suffered an injury-in-fact. As a matter of law, Garcia therefore lacks constitutional standing to assert a claim as a defendant. *See id.* at 803.

*B. Prudential Standing*

Even if, assuming arguendo, Garcia had suffered an injury-in-fact, he would still lack prudential standing to proceed with his claim. In order to satisfy prudential standing, a plaintiff's alleged injury must fall within "the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982). A court must therefore "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from' the nuisance and privacy invasion that they caused." *Barr v. American Association of Political Consultants, Inc.*, 2020 WL 3633780 (U.S. Jul. 6, 2020) (citing TCPA § 2, ¶12, 105 Stat. 2394). As in *Stoops*, the court concludes that Garcia's interests " 'are so marginally related to or inconsistent with the purposes implicit in the [TCPA] that it cannot reasonably be assumed that Congress intended to permit the suit.' " *Stoops*, 197 F. Supp. 3d at 805 (citing *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati*, 12 F.3d 1256, 1262 (3d Cir. 1993)) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). Because Garcia does not have the sort of interest in privacy that Congress intended to protect through the TCPA, the court finds that his claim does not fall within the zone of interest necessary to establish prudential jurisdiction.

**\*4** For the foregoing reasons, plaintiff has not established that he has constitutional or prudential standing to assert his claim against defendant. Accordingly, the court grants defendant's motion for summary judgment.

*C. Motion to Exclude Rebuttal Expert and Report*

As the court grants defendant's motion for summary judgment and dismisses this action, Garcia's motion to exclude Credit One's rebuttal expert and report is denied as moot. In making its determination on standing, this court did not rely on the expert rebuttal and report to reach its conclusion.

**IV. Conclusion**

Accordingly,

Garcia v. Credit One Bank, N.A., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 62 of 81

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Credit One's motion for summary judgment (ECF No. 48) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Credit One's motion to stay the case (ECF No. 49) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that plaintiff Garcia's motion to exclude Credit One's rebuttal expert and report (ECF No. 50) be, and the same hereby is, DENIED as moot.

The clerk is ordered to close the case accordingly.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4431679

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 63 of 81

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5016795
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.

Travis CHENAULT, Plaintiff,

v.

BEIERSDORF, INC., Defendant.

Case No. 1:20-cv-174
|
Signed 08/24/2020

**Attorneys and Law Firms**

Robb S. Stokar, Christian A. Jenkins, Minnillo & Jenkins Co.,
LPA, Cincinnati, OH, for Plaintiff.

David Kirsten Montgomery, Jamie Marie Goetz-Anderson,
Jackson Lewis LLP, Cincinnati, OH, for Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION TO BIFURCATE DISCOVERY**

Timothy S. Black, United States District Judge

**\*1**  This civil action is before the Court on Defendant
Beiersdorf, Inc.'s motion to bifurcate discovery (Doc. 9), and
the parties' responsive memoranda (Docs. 10, 11).

**I. BACKGROUND**

On February 28, 2020, Plaintiff filed this proposed class
action lawsuit on behalf of himself and others similarly
situated alleging that Defendant violated the Fair Labor
Standards Act ("FLSA") and Ohio law. (Doc. 1). Plaintiff
alleges that he and other Beiersdorf employees worked in
excess of 40 hours per workweek and were not paid overtime
pay. (*Id.* at ¶ 29). Defendant filed its answer on May 26, 2020.
(Doc. 5).

The Court held a Preliminary Pretrial Conference ("PPTC")
by telephone with the parties on June 23, 2020. During
the PPTC, the parties informed the Court that they dispute
whether bifurcated discovery is appropriate, and the Court set
an expedited briefing schedule. (June 23, 2020 Minute Entry
and Notation Order).

On July 6, 2020, Defendant filed the present motion
to bifurcate discovery. (Doc. 9). Defendant proposes that
discovery be conducted in two phases. The first proposed
phase of discovery would be focused on class/collective
action issues under the FLSA and/or Rule 23. Defendant
proposes limiting the first phase of discovery to 25
interrogatories, 25 requests for production, 25 requests for
admission, and up to five depositions for each party. (*Id.*
at 1). Under Defendant's proposed plan, expert witness
disclosures and discovery would be deferred until the second
phase of discovery, unless either party requires expert
witness testimony in connection to certification issues. If
either party requires expert testimony related to certification
issues, Defendant proposes an October 1, 2020 deadline
for primary expert designations and a November 15, 2020
deadline for any rebuttal expert designations. (*Id.* at 2).
Defendant's proposed deadline for the first phase of discovery
is December 15, 2020, one month before Plaintiff's deadline
to file a motion for conditional certification and/or motion for
class action. (*Id.* at 1).

Defendant proposes that the second phase of discovery
—which would occur after the Court's decision on any
motion for class and/or conditional certification—would
focus on merits-based discovery and final certification and
decertification issues. (*Id.* at 1–2). After the Court rules on any
motion for class and/or conditional certification, Defendant
suggests holding a status conference to establish a calendar
for the second phase of discovery. (*Id.* at 2).

Plaintiff opposes Defendant's proposed discovery plan and
contends he needs discovery beyond what is proposed in
Defendant's bifurcation plan in order to support his motion
for conditional certification. (Doc. 10 at 2). Alternatively, if
the Court grant's Defendant's motion to bifurcate, Plaintiff
requests that Defendant be required to produce materials
"reasonably necessary for plaintiff to seek conditional
certification." (*Id.* at 5–6).

**\*2**  Defendant's motion to bifurcate discovery is ripe for
review.

**II. STANDARD OF REVIEW**

"Whether to bifurcate class certification and merits discovery
is within the discretion of the court." *McCluskey v. Belford
High School*, 2011 WL 13225278, at \*3 (E.D. Mich. Mar. 10,

2011); *In re Copper Tubing Litig.*, 2006 WL 8434911, at *5 (W.D. Tenn. Oct. 3, 2006).

To determine whether bifurcated discovery is appropriate, courts consider "the benefits and detriments to each party's interest," as well as "the Court's interest in reaching a just, speedy and efficient resolution of the issues raised by the pleadings." *Woods v. State Farm Fire & Casu. Co.*, 2010 WL 1032018, at *3 (S.D. Ohio Mar. 16, 2010); *see Johnson v. Gulfport Energy Corp.*, 2020 WL 4528824, at *5 (S.D. Ohio Aug. 5, 2020). Courts may bifurcate discovery "if it serves judicial economy and does not unfairly prejudice any party." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-CV-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1153 (6th Cir. 1988)).

### III. ANALYSIS

Defendant's motion requests that the Court bifurcate discovery into two phases: discovery related to class-certification and discovery on the merits. Defendant contends that bifurcated discovery "will allow Plaintiff and Defendant to discovery any evidence needed to support their respective positions regarding class and/or conditional certification, while preserving the parties' time and resources by delaying class-wide discovery unless and until a class or collective is certified." (Doc. 9 at 2).

Plaintiff opposes bifurcation because he contends that he would be denied the opportunity to obtain the materials necessary to prosecute his case. (Doc. 10 at 5). Moreover, Plaintiff argues that the information he seeks will not be burdensome or costly for Defendant to produce. (*Id.* at 4–5).

Although there is not a well-delineated test to determine whether to bifurcate class certification and merit-based issues, courts have looked to three factors in considering whether bifurcation is appropriate:

(1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning "the potential impact a grant or denial of certification would have upon the pending litigation," and whether the definition of the class would "help determine the limits of discovery on the merits;" and (3) severability, meaning whether class certification and merits issues are closely enmeshed.

*Ballard v. Kenan Advantage Grp., Inc.*, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (quoting 3 Newberg on Class Actions § 7:17 (5th ed.) (citing *Harris v. comScore, Inc.*, 2012 WL 686709, *3 (N.D. Ill. March 2, 2012))).

Here, the Court finds that bifurcation of discovery is appropriate.

The first and second factors favor bifurcation. First, prioritizing certification related discovery before addressing merits discovery will help this Court issue a timely ruling on any motion for class and/or conditional certification. Second, bifurcation should promote judicial economy because defining any potential class may limit or focus discovery on the merits and prevent potentially unnecessary discovery costs.

**\*3** The third factor is thornier. The Court recognizes that courts within the Sixth Circuit have denied motions to bifurcate discovery where there would be considerable amount of overlap between class certification and merits-based discovery. *Johnson*, 2020 WL 4528824, at *5 (finding that bifurcation would not promote judicial economy because class certification and merits-based discovery overlapped); *Shah v. Metro. Life Ins. Co.*, 2017 WL 4772870, at *3 (S.D. Ohio Oct. 19, 2017) (denying bifurcated discovery because it would not promote judicial economy); *McCluskey v. Belford High Sch.*, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011) (finding that bifurcating discovery would "likely lead to disputes over what is 'merit' discovery as opposed to 'class' discovery, resulting in needless motion practice" and noting that "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery"). But the fact that class and merits-based discovery will be inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate. Here, the Court finds that—while class issues and merit-based discovery may be somewhat enmeshed—there should not be considerable overlap.

Because efficiency and judicial economy favor bifurcation, Defendant's motion is well-taken. Therefore, discovery relating to class certification and discovery relating to merits should be bifurcated as much as practicable. Accordingly, the Court adopts Defendant's timeline and plan for the first phase of discovery (*see* Doc. 9 at 1–2). The timeline for the second phase of discovery will be set after the Court

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 65 of 81

issues its decision on any motion for class and/or conditional certification.

Nevertheless, while the Court agrees with Defendant that bifurcated discovery is appropriate, the Court wants to make clear that Defendant is required to produce materials necessary for Plaintiff to seek conditional certification. If discovery disputes arise over whether a discovery issue is class or merit related, the Court anticipates permitting discovery on the issue.

In that vein, the parties already dispute whether Plaintiff should be provided with a list of class member names and contact information during the first phase of discovery. Defendant contends that production of such a list is premature. (Doc. 9 at 2). Defendant has offered to produce a redacted employee list (including first name, last initial, and dates of employment), yet Plaintiff argues that a redacted list is insufficient. The Court agrees with Plaintiff.

As courts have recognized, "[g]iven the Supreme Court's direction that the broad remedial goal of the FLSA should be enforced to the full extent of its terms, pre-certification discovery is appropriate to enable the plaintiff to define the class and identify similarly situated employees." *Boice v. M +W U.S., Inc.*, 130 F. Supp. 3d 677, 698 (N.D.N.Y. 2015)

(quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010)) (internal quotation marks and alterations omitted). Here, the Court finds that Defendant's production of an unredacted employee list is appropriate to enable Plaintiff to identify similarly situated employees, which is permissible discovery for Plaintiff during the first pre-certification phase of discovery.

Nevertheless, other discovery materials requested by Plaintiff in his opposition brief—such as pay stubs and copies of gift cards—are merit-based discovery and will not need to be produced by Defendant until the second phase of discovery.

## IV. CONCLUSION

Accordingly, as outlined above, Defendant's motion to bifurcate discovery (Doc. 9) is **GRANTED.**

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2020 WL 5016795

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 175743
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

George MOORE, Plaintiff,

v.

DEMAND SCIENCE GROUP, LLC, Defendant.

Case No.: 1:22-cv-01539
|
Filed: January 4, 2024

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Aaron Paul Heeringa, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

### NOTIFICATION OF DOCKET ENTRY

Franklin U. Valderrama, District Judge

**\*1** This docket entry was made by the Clerk on Thursday, January 4, 2024:

MINUTE entry before the Honorable M. David Weisman: Magistrate Status/Motion hearing held. Plaintiff appeared by phone and defense counsel appeared in person. Discussion held regarding Defendant's motion to bifurcate and issue of standing. Defendant stated the standing issues are whether the relevant phone line is residential or business and whether the line is registered on the Do Not Call registry. Court noted that whether Plaintiff is an appropriate class representative is a class certification issue. Plaintiff argued that the proposed initial discovery overlaps with class certification discovery and that he will need an expert as to whether a line is residential or not. According to Plaintiff, he needs expert testimony to be able to access the databases as to whether the relevant phone number is residential or business and that a report can be run just as easily for many phone numbers versus one number. Defendant stated it would likely not need an expert. The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation [23] because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal. The parties' counsel indicated they have worked together previously. Plaintiff stated he has issued written discovery. Defendant may issue 15 interrogatories and 20 document requests and no more than 5 third-party subpoenas. Plaintiff raised his concern about non-compliance by third parties regarding preservation of evidence; Court indicated that Plaintiff should file any motions on this issue or any related issues promptly, as necessary. Initial limited fact discovery regarding whether the relevant phone line is residential or business and whether the line is registered on the Do Not Call registry shall close 4/3/24. Status hearing set for 4/16/24 at 9:15 a.m. Joint status report due 4/12/24 addressing the status of the initial limited fact discovery and whether Defendant believes summary judgment is appropriate; any third-party discovery issues; whether the parties are interested in a settlement conference; and any other issues the parties wish to raise. Mailed notice (ao,)

**All Citations**

Not Reported in Fed. Supp., 2024 WL 175743

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 205896
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, D. New Jersey.

Gisela M. NAZARIO Plaintiff,

v.

SHARINN & LIPSHIE, P.C., et al Defendants.

Civil Action No. 2:19-cv-04604-SDW-SCM
|
Signed 01/14/2020

**Attorneys and Law Firms**

Catherine K. Rhy, Yongmoon Kim, Kim Law Firm LLC, Hackensack, NJ, for Plaintiff.

Scott C. Sharinn, The JD Stuart Law Group, Forest Hills, NY, Monica M. Littman, Richard J. Perr, Fineman, Krekstein & Harris, PC, Philadelphia, PA, for Defendants.

### OPINION ON MOTION TO BIFURCATE DISCOVERY

### D.E. 18, 19

Steven C. Mannion, United States Magistrate Judge.

 **\*1** Before this Court is an informal motion by Defendant Unifund CCR, LLC ("Unifund") to bifurcate class-discovery filed via the parties' joint discovery plan and joint dispute letter. [1] Plaintiff Gisela Nazario ("Ms. Nazario") opposes bifurcation. The Court decides the motion without oral argument. [2] For the reasons set forth herein, the motion to bifurcate will be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND AND PROCEDURAL HISTORY [3]

The Complaint was filed on February 4, 2019, alleging individual and class action claims under the Fair Debt Collection Practices Act ("Fair Debt Act") against defendants Sharinn & Lipshie, P.C., and Unifund. [4] Ms. Nazario alleges that (1) Unifund's purchase of the debts of Ms. Nazario and other class members was void under New Jersey law because they were bought from an unlicensed broker, and (2) that the

particular debt collection practices used were misleading and violated the Fair Debt Act.

### II. MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court. [5] This District specifies that magistrate judges may determine all non-dispositive pre-trial motions which includes discovery motions. [6] A decision by a magistrate judge on non-dispositive matters such as a discovery dispute "is entitled to great deference and is reversible only for abuse of discretion." [7] That includes whether or not to stay discovery. [8]

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure afford magistrate judges broad control over case schedules to expedite disposition of an action and to discourage wasteful pretrial activities. [9] Decisions to bifurcate discovery remain within the sound discretion of the court. [10] Courts only bifurcate discovery if there is some showing as to why bifurcation is appropriate. [11] Bifurcation "is appropriate to conduct controlled discovery ... limited to those aspects relevant to making the certification decision on an informed basis." [12] "Courts generally postpone class-wide discovery on the merits of the claims when bifurcation serves the interests of "fairness and efficiency." [13]

### IV. DISCUSSION

 **\*2** Here, the Court has considered the parties' respective submissions in determining whether bifurcation is appropriate. Unifund argues that class and other discovery should be bifurcated pending a summary judgment decision on whether its actions violated the Fair Debt Act and the New Jersey Consumer Finance Licensing Act. Ms. Nazario counters that bifurcation would be inefficient, unfair, and duplicative.

The Court finds that fairness and efficiency favors allowing fact discovery as to Ms. Nazario (the putative representative) on all claims, as well as discovery for Fed.R.Civ.P. 23 class certification. Even if class certification is not granted, the fees and costs for engaging in this discovery will not have been expended needlessly because fact discovery specific

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 68 of 81

**Nazario v. Sharinn & Lipshie, P.C., Not Reported in Fed. Supp. (2020)**

to Ms. Nazario will still be needed for her to pursue the case in her individual capacity. But fairness and efficiency also favors deferring class merits discovery until a decision on certification has been made. If class certification is not granted, the fees and costs for engaging in that discovery would have been expended needlessly. For these reasons, the Court finds that judicial economy favors bifurcating discovery. Unifund's motion will be granted in part and denied in part.

Class merits discovery is deferred until a decision on certification. The Court notes that it will only allow one motion for summary judgement. When Ms. Nazario moves for class certification, Unifund may either seek leave to use its one motion then, or may save it until all discovery is complete.

An appropriate Order follows:

ORDER

**IT IS** on this Tuesday, January 14, 2020,

1. **ORDERED**, that Defendants' Unifund CCR, LLC's informal motion to bifurcate class-discovery is **GRANTED** in part and **DENIED** in part; and it is further

2. **ORDERED**, that fact discovery as to the putative class representative(s) and Fed.R.Civ.P. 23 class certification is to continue in accordance with the scheduling order; and it is further

3. **ORDERED**, that class merits discovery is deferred until a decision on certification; and it is further

4. **ORDERED**, that the January 16, 2020 telephone conference is adjourned to January 30, 2020 at 2:45 pm.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 205896

---

## Footnotes

1    (ECF Docket Entry No. ("D.E.") D.E. 18, 19). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

2    L. CIV. R. 78.1.

3    The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

4    (D.E. 1, Complt).

5    28 U.S.C. § 636(b)(1)(A).

6    L. CIV. R. 72.1(a)(1); 37.1.

7    *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 63-64 (D.N.J. 1996); *Cooper Hosp./ Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

8    *Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007).

9    Fed. R. Civ. P. 16(a).

10    *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258 (D.N.J.1997).

11    *Cephalon, Inc. v. Sun Pharm. Indus., Ltd.*, No. CIV.A. 11-5474 FLW, 2013 WL 3417416, at *3 (D.N.J. July 8, 2013).

12    🚩*Conner v. Perdue Farms, Inc.*, No. CIV.A. 11-888 MAS LH, 2013 WL 5977361, at *3 (D.N.J. Nov. 7, 2013) (quoting 🚩Fed.R.Civ.P. 23 Advisory Committee's Notes).

13    *Id.* (quoting 🚩*In re Plastics Additives Antitrust Litigation*, 2004 WL 2743591, at *2 (E.D.Pa. Nov.29, 2004) (quoting Williamson Tobacco Corp., 959 F.2d 1566, 1570–71 (11th Cir.1992); see also Manual for Complex Litigation § 11.213 at 40 ("discovery may proceed concurrently if bifurcating class discovery from merits discovery would result in significant duplication of effort and expense to the parties").

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Babare v. Sigue Corporation, Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 70 of 81

2020 WL 8617424
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Daniel BABARE, individually and on behalf
of all others similarly situated, Plaintiff,
v.
SIGUE CORPORATION, Defendant.

CASE NO. C20-0894-JCC
|
Signed 09/30/2020

**Attorneys and Law Firms**

Manuel Hiraldo, Pro Hac Vice, Hiraldo PA, Michael
Eisenband, Pro Hac Vice, Eisenband Law, P.A., Fort
Lauderdale, FL, Kira M. Rubel, The Harbor Law Group, Gig
Harbor, WA, for Plaintiff.

Evelyn Crystal Lopez, Pro Hac Vice, Joshua Briones, Pro Hac
Vice, Mintz Levin Cohn Ferris Glovsky & Popeo PC, Los
Angeles, CA, Rogelio Omar Riojas, Goldfarb & Huck Roth
Riojas, PLLC, Seattle, WA, for Defendant.

ORDER

John C. Coughenour, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court on Defendant
Babare Corporation's motion to stay (Dkt. No. 19). Having
thoroughly considered the parties' briefing and the relevant
record, the Court finds oral argument unnecessary and hereby
GRANTS the motion for the reasons explained herein.

**I. BACKGROUND**

In June, Plaintiff Daniel Babare filed a complaint alleging that
Defendant Sigue Corporation used an automatic telephone
dialing system ("ATDS") to send Mr. Babare six text
messages without his written consent in violation of the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.
§ 227(b). (*See* Dkt. No. 1 at 5–7, 10.) Mr. Babare seeks
a declaration that Sigue Corporation used an ATDS to
send the messages, statutory damages of at least $500 for
each violation, and a permanent injunction prohibiting Sigue

Corporation from violating the TCPA in the future. (*See id.*
at 10.)

Sigue Corporation denies that it used an ATDS to send the
messages, (*see* Dkt. No. 17 at 4–5, 7–8), and moves to stay
this action until the United States Supreme Court decides
*Facebook, Inc. v. Duguid*, No. 19-511, a case in which the
Court will resolve a circuit split about what constitutes an
ATDS under the TCPA, (*see generally* Dkt. No. 19). Sigue
Corporation argues that staying the case will conserve judicial
resources and spare the parties the expense of engaging in
costly discovery and motions practice that could be mooted
by the Supreme Court's decision. (*See* Dkt. No. 19 at 1, 16.)
Specifically, Sigue Corporation argues that the device it used
to send the text messages does not qualify as an ATDS under
the narrower definition adopted by the Third, Seventh, and
Eleventh Circuits, so if the Supreme Court were to adopt that
definition, this case could be resolved by an early summary
judgment motion. (*See* Dkt. Nos. 19 at 9, 23 at 10.)

Mr. Babare argues that the Court should not stay the case
because "the same discovery and briefing will have to take
place" regardless of how the Supreme Court rules, (Dkt. No.
21 at 11), Sigue Corporation's proposed stay is "indefinite,"
and "a prolonged stay could result in the irretrievable loss of
critical evidence," (*id.* at 13–14). Alternatively, Mr. Babare
argues that if the Court does grant a stay, the stay should
be limited to whether Sigue Corporation used an ATDS to
send the messages and discovery and briefing regarding class
certification should proceed. (*See id.* at 16–17.)

**II. DISCUSSION**

The Court has inherent authority to manage its docket "in
a manner which will promote economy of time and effort
for itself, for counsel, and for litigants." *CMAX, Inc. v.
Hall*, 300 F.2d 265, 268 (9th Cir. 1962). This includes the
power to stay an action "pending resolution of independent
proceedings which bear upon the case." *Levya v. Certified
Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). When
considering whether to stay an action, the Court must weigh
"the possible damage which may result from the granting
of a stay, the hardship or inequity which a party may suffer
in being required to go forward, and the orderly course of
justice measured in terms of the simplifying or complicating
of issues, proof, and questions of law which could be expected
to result from a stay." *CMAX*, 300 F.2d at 268.

**\*2**  The Court concludes that the *CMAX* factors weigh in favor of a stay. First, a stay will promote the orderly course of justice because it will allow the Supreme Court to settle a question of law that is central to this litigation. The text messages Sigue Corporation sent to Mr. Babare are covered by the TCPA only if Sigue Corporation sent them using an ATDS. *See* 47 U.S.C. § 227(b). Thus, whether Sigue Corporation used an ATDS to send the messages is one of the key issues to be decided in this case. The parties appear to disagree about the proper definition of an ATDS, (*see* Dkt. Nos. 19 at 10–12, 21 at 6, 9–10), and it makes little sense for the parties to spend more time and effort briefing that issue (and for the Court to spend time and effort resolving it) when the Supreme Court is likely to provide a conclusive answer in a few months. Thus, entering a stay will promote the orderly course of justice by allowing the Supreme Court to resolve a question of law that is central to this case.

Next, Mr. Babare is likely to suffer little, if any, harm from a stay. Mr. Babare does not allege that the text messages have continued or that he is suffering any ongoing harm, and a delay in collecting potential damages is not a particularly severe hardship. *See CMAX*, 300 F.2d at 268–69. Indeed, in that regard, Mr. Babare is likely to suffer even less harm than the plaintiff in *CMAX*. In *CMAX*, the plaintiff sought to recover nearly $13,000 it was allegedly owed for services rendered. *See* 300 F.2d at 266. Here, by contrast, Mr. Babare seeks to recover only statutory damages. (*See* Dkt. 1 at 10.) Therefore, delaying resolution of the lawsuit, standing alone, will not significantly harm Mr. Babare.

Mr. Babare next argues that a stay could result in "the irretrievable loss of critical evidence" because "[m]emories fade with the passage of time, documents and data can be lost," and "Defendant has offered no guarantees that" it has preserved evidence. (*See* Dkt. No. 21 at 14–15.) But, contrary to Mr. Babare's argument, Sigue Corporation *has* confirmed that it has implemented a litigation hold, (*see* Dkt. No. 19 at 15), and Mr. Babare can address any alleged spoliation by resorting to the ordinary remedies that are available to any litigant, *see, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation [of evidence].").

Finally, Mr. Babare argues that the Court should deny the stay because it is "indefinite." (*See* Dkt. No. 21 at 13). This argument is not well taken. *Duguid* is scheduled for oral argument on December 8, 2020, and absent unusual circumstances the Supreme Court generally decides the cases it schedules for argument by the end of its term (in June or July).

While a stay is likely to impose minimal costs on Mr. Babare, proceeding is likely to impose significant costs on Sigue Corporation. It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens. *See, e.g., Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (observing that class action plaintiffs sometimes "us[e] discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"). Mr. Babare argues that "the same discovery and briefing will have to take place" regardless of how the Supreme Court rules, (Dkt. No. 21 at 11), but that is not necessarily true. If the Supreme Court adopts the narrower definition of ATDS and Sigue Corporation is correct that it did not use an ATDS under the narrower definition, Sigue Corporation could choose to bring an early summary judgment motion thereby avoiding the need to "expend resources on extensive discovery or class certification briefing." (Dkt. No. 23 at 10); *see also Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action."). The hardship Sigue Corporation would endure by proceeding is not just the need to defend the case; it is the burden of engaging in costly discovery and motions practice that could be unnecessary if the Supreme Court adopts the narrower definition of ATDS. *Cf. Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, 781 F. App'x 666, 667 (9th Cir. 2019) (holding stay was justified because proceeding would expose the defendant to "extensive and likely redundant discovery demands"). Thus, Mr. Babare's suggestion that the parties proceed with discovery and briefing related to class certification until *Duguid* is decided does little to remedy the problem. That discovery and briefing is the very burden Sigue Corporation seeks to avoid.

**\*3**  In addition to the burdens on the parties, it is not an efficient use of the Court's time and effort to police discovery and address a class certification motion that could turn out to be unnecessary.

**Babare v. Sigue Corporation, Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 72 of 81

In sum, the balance of the hardships tilts strongly in favor of a stay here. If the Court were to enter a stay and the Supreme Court were to affirm the Ninth Circuit's opinion in *Duguid*, Mr. Babare will have been delayed by a few months in pursuing his claim. If the case were to proceed and the Supreme Court were to adopt the narrower definition of ATDS, Sigue Corporation will have been required to participate in unnecessary yet costly and burdensome discovery and class certification briefing.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Sigue Corporation's motion to stay (Dkt. No. 19). The Court STAYS this case pending the Supreme Court's opinion in *Facebook, Inc. v. Duguid*, No. 19-511, and ORDERS the parties to file a joint status report that proposes a new case schedule within 14 days of the date the Supreme Court issues its opinion in *Duguid*.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 8617424

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2021 WL 100666
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Gustave AKSELROD

v.

MARKETPRO HOMEBUYERS LLC

Civil No. CCB-20-2966
|
Signed 01/11/2021
|
Filed 01/12/2021

**Attorneys and Law Firms**

John Thomas McGowan, Jr., Kinner & McGowan PLLC, Washington, DC, Anthony I. Paronich, Pro Hac Vice, Paronich Law PC, Hingham, MA, for Gustave Akselrod.

Eric M. Hurwitz, Stradley Ronon Stevens & Young LLP, Cherry Hill, NJ, Thomas Francis Lucchesi, III, Stradley Ronon, Washington, DC, for MarketPro Homebuyers LLC.

**MEMORANDUM & ORDER**

Catherine C. Blake, United States District Judge

**\*1** In this action, plaintiff Gustave Akselrod brings a class action complaint alleging two claims under the TCPA, 47 U.S.C. § 227, et seq., against defendant MarketPro Homebuyers ("MarketPro")—(1) a violation of the TCPA's prohibitions on autodialing the telephones of individuals without their consent, and (2) making telephone solicitations to individuals who are registered on the National Do-Not-Call Registry. Before the court is MarketPro's proposed modification (ECF 13) to the court's proposed scheduling order. MarketPro seeks to stay this case pending a decision from the United States Supreme Court in *Facebook v. Duguid*, No. 19-511, or, in the alternative, to bifurcate liability and class discovery and limit discovery at this time to potentially dispositive issues. Akselrod opposes both requests. (ECF 14). The court, having considered the parties' submissions and their arguments during a scheduling conference call on December 29, 2020, will deny the request to stay the case, but will grant the request to bifurcate discovery. Discovery may be taken as to (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether

the communications sent to the plaintiff were "telephone solicitations" under the TCPA.

A stay of the case is not warranted. In considering whether the court should exercise its inherent authority to stay a proceeding, three factors are relevant: (1) whether the stay will promote judicial economy, measured by whether a stay would simplify or complicate the issues in the case; (2) the hardship to the moving party if the case is not stayed; and (3) the potential prejudice to the non-moving party if the stay is granted. *See Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 730–31 (D. Md. 2018). As to prejudice, it appears that any hardship to MarketPro from denying a stay is evenly balanced with the possibility of prejudice to Akselrod if a stay is granted. As to the ability of a stay to simplify the issues in the case, the court agrees with Akselrod that a complete stay while *Facebook v. Duguid* remains pending is likely to delay and further complicate rather than simplify this litigation.

In order to succeed on its autodialing claim, Akselrod must prove that the communications he received were made using an automated telephone dialing system ("ATDS"). The issue in *Duguid* is whether an ATDS includes technology that simply has the capacity to store numbers to be dialed automatically, as the Ninth Circuit has held, *Duguid v. Facebook*, 926 F.3d 1146, 1151 (9th Cir. 2019), or whether the technology must also use a random or sequential number generator in order to fall within the definition, as the Third and Eleventh Circuits have held, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306–08 (11th Cir. 2020). It appears to the court from Akselrod's complaint that the system MarketPro used to send messages to Akselrod could fall within either (or neither) of the contested definitions of an ATDS. This raises the possibility that if the case is stayed until the Supreme Court resolves the definition of an ATDS, discovery and briefing regarding whether MarketPro's system qualifies as an ATDS would still be necessary. But if the case proceeds now, the parties will be able to take targeted discovery so that when *Duguid* is decided, the case may be resolved more quickly based on the Court's definition of an ATDS and the parties' knowledge of the system's capabilities. Additionally, a stay would delay the resolution of Akselrod's Do-Not-Call Registry claim, which is distinct from the autodialing claim. Thus, the more efficient approach, as other courts have held in TCPA cases where discovery on the ATDS would be necessary regardless of the outcome

Akselrod v. MarketPro Homebuyers LLC, Not Reported in Fed. Supp. (2021)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 74 of 81

of *Duguid* or where a stay would delay additional unrelated claims, is to allow at least some discovery to proceed. *See, e.g.*, 🚩 *Lacy v. Comcast Cable Commc'ns, LLC*, Case No. 3:19-cv-05007-RBL, 2020 WL 4698646, *2 (W.D. Wash. Aug. 13, 2020); 🚩 *Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606, 2020 WL 5596162, at *3 (E.D. Mich. Sept. 18, 2020). [1]

**\*2**  As to the bifurcation of liability and class discovery, the court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote 🚩 Federal Rule of Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery. *See* 1 McLaughlin on Class Actions § 3:10 (11th ed. 2014). MarketPro argues that whether the system used in this case was an ATDS and whether the messages sent were telephone solicitations are potentially dispositive and that limited discovery on these issues would save the parties the time and expense of class discovery. Akselrod disagrees, arguing that class issues and liability issues substantially overlap, that bifurcation will lead to additional, time-consuming disputes regarding whether discovery relates to class issues or individual issues, and that a delay in class discovery poses a risk that the third-party MarketPro used to send the messages at issue will destroy relevant call records before Akselrod can obtain them. The court concludes that whether an ATDS was used and whether messages were telephone solicitations are issues of liability largely distinct from class certification issues (e.g., numerosity, commonality, typicality, and adequacy of representation). *See* 🚩 Fed. R. Civ. P. 23. Limited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive, *see, e.g.*, 🚩 *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case where bifurcation would promote efficiency by permitting discovery on potentially dispositive issues that did not overlap with class issues), and at any rate, it may not be practicable to determine class certification until after *Duguid* is resolved. To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records.

During the conference call with the court, the parties raised an additional question regarding the extent of discovery that should be permitted into whether the messages at issue are telephone solicitations. Akselrod contends that discovery into MarketPro's subjective purpose in sending the messages is relevant, and MarketPro argues that the issue turns on an objective analysis of the content of the messages to determine their purpose. *See* 🚩 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, ..."). The court does not find it necessary at this time to determine how much discovery is needed as to the "purpose" of the messages. It appears that some courts have focused on the content of the message in determining their purpose, *see, e.g.*, 🚩 *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* on other grounds 797 F.3d 1302 (11th Cir. 2015), but this issue can be more fully briefed at a later time.

Accordingly, it is hereby ORDERED that:

1.  MarketPro's request to stay the case is DENIED;

2.  MarketPro's request to bifurcate liability and class discovery is GRANTED;

3.  Limited discovery will be permitted into (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether the communications sent to the plaintiff were "telephone solicitations" under the TCPA;

4.  To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records;

5.  Initially the courts sets a deadline for the limited discovery to be complete by April 15, 2021, with a status report due the same day; and

6.  Counsel shall notify the court when an opinion has been issued in *Facebook v. Duguid*.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 100666

## Footnotes

1    Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 76 of 81

**Newell v. Aliera Healthcare, Inc., Not Reported in Fed. Supp. (2020)**

2020 WL 13568762
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Jourey NEWELL, on behalf of himself
and others similarly situated, Plaintiff,
v.
ALIERA HEALTHCARE, INC. and
Insurance Care Now, LLC, Defendants.

CIVIL ACTION FILE No. 1:19-cv-01489-SCJ
|
Signed April 6, 2020

**Attorneys and Law Firms**

Anthony Paronich, Broderick & Paronich, P.C., Hingham, MA, Brian K. Murphy, Pro Hac Vice, Jonathan P. Misny, Pro Hac Vice, Murray Murphy Moul + Basil LLP, Columbus, OH, Steven Howard Koval, The Koval Firm, LLC, Atlanta, GA, for Plaintiff.

Brent David Hitson, Matthew T. Mitchell, Pro Hac Vice, Burr & Forman, Birmingham, AL, Sarah Craig, Burr and Forman LLP, Tampa, FL, Eric Joseph Breithaupt, Stites & Harbison, PLLC, Atlanta, GA, Louis G. Fiorilla, Burr & Forman, LLP, Atlanta, GA, for Defendant Aliera Healthcare, Inc.

Todd I. Stone, The Stone Law Group, Fort Lauderdale, FL, Benjamin S. Klehr, Gustav H. Small, Jr., Small Herrin, LLP, Atlanta, GA, for Defendant Insurance Care Now, LLC.

## ORDER

STEVE C. JONES, UNITED STATES DISTRICT JUDGE

**\*1** This matter appears before the Court on Aliera Healthcare, Inc.'s ("Aliera") Motion to Bifurcate Discovery. Doc. No. [35]. [1]

## I. BACKGROUND

### A. Facts

Plaintiff Jourey Newell ("Plaintiff") filed this putative class action against Aliera and Insurance Care Now, LLC ("Insurance Care Now") (collectively, "Defendants") on

April 2, 2019, alleging a violation of the Telephone Consumer and Protection Act, 47 U.S.C. § 227 ("TCPA"). Doc. No. [1]. In his Complaint, Plaintiff alleges that Aliera "commissioned automated telemarketing calls to [Plaintiff] and other putative class members without their prior express written consent." Id. ¶ 2. Plaintiff further alleges that said calls were made pursuant to an arrangement between Aliera and its telemarketer, Insurance Care Now. Id. ¶ 3. More specifically, Plaintiff claims that on March 26, 2019, he received a call on his cell phone from Insurance Care Now. Id. ¶ 27. When Plaintiff answered the call, he heard a "distinctive click and a pause," which is "a telltale sign of a predictive dialer." [2] Id. ¶¶ 28–32. Because of the predictive dialer, Plaintiff claims that he was greeted with "dead air" until a live person came on the line. Id. ¶ 33. Eventually, "Sean" of Insurance Care Now, using a scripted sales pitch, asked Plaintiff about insurance and promoted "Carewell by Aliera," an Aliera insurance product. Id. ¶ 34. Plaintiff alleges that he received this call from Insurance Care Now even though he had previously placed his cellphone number on the National Do Not Call Registry. Id. ¶ 26.

### B. Definition of ATDS

The TCPA makes it illegal to "make any call ... using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice "to "any telephone number assigned to a paging service[ ] or cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). It further defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

In 2003, the Federal Communications Commission ("FCC") issued an order stating that "predictive dialers" [3] fell within the meaning and statutory definition of an ATDS and thus were subject to the TCPA's restrictions on the use of autodialers. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,093 (2003). The FCC subsequently affirmed this definition in 2008. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 (2008).

**\*2**  In Glasser v. Hilton Grand Vacations Co., LLC, 948 F.3d 1301, 1306 (11th Cir. 2020), the Eleventh Circuit weighed in on the definition of an ATDS, holding that only those devices that dial randomly or sequentially generated numbers (without any human intervention whatsoever) constitute an ATDS. [4] Conversely, "predictive dialers", which the Eleventh Circuit defined as devices "that call a list of pre-determined potential customers"—are not an ATDS under the TCPA. Id. at 1308–09. This is because predictive dialers do not "randomly or sequentially" dial numbers, but instead dial previously identified numbers from a stored list. Id.

### C. Motion to Bifurcate Discovery

In light of the Eleventh Circuit's decision in Glasser, Aliera moves the Court to bifurcate discovery into two distinct segments: (1) limited discovery into the merits of Plaintiff's individual TCPA claim, followed by (2) class-wide discovery, if Plaintiff's individual claim survives. [5] Doc. No. [35]. Aliera specifically contends that limited discovery will confirm that Plaintiff was not called with an ATDS as defined under the TCPA. Id. at p. 5. Aliera further suggests that limited discovery will demonstrate that Plaintiff consented to be called on his cell phone and that suffered no "injury in fact" that could confer standing upon him to pursue his TCPA claim. Id. Ultimately, Aliera suggests that "[t]argeted discovery at the outset into these discreet, individual issues will spare the parties, their counsel, and this Court an unnecessary and burdensome foray into class-wide discovery." Id.

Plaintiff has since filed a response in opposition to Aliera's motion. Doc. No. [41]. This matter is now ripe for review, [6] and the Court rules as follows.

### II. LEGAL STANDARD

Aliera fails to cite to any legal authority in support of its request to bifurcate discovery in this matter. See Doc. No. [35]. Nevertheless, the Court independently notes that Federal Rule of Civil Procedure 42 governs requests to bifurcate. More specifically, Rule 42(b) provides that trial courts may hold separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). See also Hartley-Culp v. Credit Mgmt. Co., No. CV-14-0282, 2014 WL 4630852, at \*2 (M.D. Pa. Sept. 15, 2014) (applying the TCPA) ("There is no question that the Court, in its discretion, can bifurcate discovery under Fed. R. C. P. 42(b).").

Trials courts have broad discretion in determining whether bifurcation is appropriate. See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001). Bifurcation may be appropriate where the "resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary." Tabor v. New York City, 11–CV–0195, 2012 WL 603561, at \*10 (E.D.N.Y. Feb. 23, 2012) (Report and Recommendation), adopted by, 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012) (bifurcating discovery in the context of a Monell claim). This reasoning also applies in the TCPA context. See, e.g., Leschinsky v. Inter–Continental Hotels Corp., No. 8:15–cv–1470–T–30MAP, 2015 WL 6150888, at \*1 (M.D. Fla. Oct. 15, 2015) (granting motion to bifurcate and initially limiting discovery to whether the calls the named plaintiff received were dialed manually and how many calls she received); Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., No. 12-2132, 2014 WL 413534, at \*2 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate where "a narrow, potentially dispositive issue exist[ed] concerning whether the faxes sent [were] informational and therefore not actionable under the TCPA," and this issue was "totally distinct from class issues"). The moving party bears the burden of establishing that bifurcation is appropriate. See Response of Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307, 1323–24 (5th Cir. 1976). [7]

### III. DISCUSSION

**\*3**  Upon review, the Court finds that bifurcating discovery as proposed by Aliera is warranted under Rule 42(b). In this regard, the Court agrees with Aliera that a narrow, potentially dispositive issue exists concerning whether Plaintiff was called by an ATDS as defined under binding Eleventh Circuit precedent. Specifically, Plaintiff alleges in his Complaint that he was called with a "predictive dialer," and Glasser has since confirmed that such a device is not an ATDS for purposes of creating liability under the TCPA. Consequently, depending on what evidence is ultimately presented, the Court may determine that Plaintiff's individual TCPA claim fails as a matter of law.

For similar reasons, the Court also finds that targeted discovery on the issue of consent is also warranted. [8] As Aliera correctly points out, prior express consent to receive the calls at issue is a complete defense to a TCPA claim. See, e.g., Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1126 (11th Cir. 2014). Because consent is a dispositive

**Newell v. Aliera Healthcare, Inc.**, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 78 of 81

issue, as with the ATDS issue, limited discovery on how Aliera or Insurance Care Now acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery." 🚩 Physicians Healthsource, Inc., 2014 WL 413534, at *4.

Finally, the Court is not convinced that Plaintiff will be prejudiced by bifurcation. While Plaintiff raises concern over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. As parties to this lawsuit, both Aliera and Insurance Care Now are on notice to preserve evidence pertaining to this matter. [9] Furthermore, any prejudice to Plaintiff is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery. See, e.g., Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC, Civ. No. 11-00111, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013) (holding that it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.].").

Everything considered, the Court finds that bifurcating discovery into two phases (i.e., limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff.

## IV. CONCLUSION

Accordingly, Aliera's Motion to Bifurcate Discovery is **GRANTED**. Doc. No. [35]. The parties are **ORDERED** to submit a proposed amended scheduling order consistent with this Order **no later than Monday, April 13, 2020**.

**IT IS SO ORDERED** this 6th day of April, 2020.

### All Citations

Not Reported in Fed. Supp., 2020 WL 13568762

---

### Footnotes

1    Insurance Care Now, LLC has also joined in this motion. Doc. No. [47].

2    In his Complaint, Plaintiff defines a "predicative dialer" as an automated dialing system that "dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line." Doc. No. [1], ¶ 30.

3    The FCC specifically defined a "predictive dialer" as an "automated dialing system that uses a complex set of algorithms to automatically dials' consumers telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." 🚩 In re TCPA Rules & Regulations, 18 FCC Rcd. 14,014, 14,022 n.31 (2003).

4    The Eleventh Circuit joined several other courts in adopting this ATDS interpretation. See, e.g., 🚩 Dominguez v. Yahoo, Inc., 894 F.3d 116, 119 (3rd Cir. 2018); DeNova v. Ocwen Loan Servicing, No. 8:17-cv-2204-T-23AAS, 2019 WL 463552 at *3–4 (M.D. Fla. Sept. 24, 2019); Adams v. Safe Home Sec. Inc., No. 3:18-cv-03098-M, 2019 WL 3428776, at *3–4 (N.D. Tex. July 30, 2019); Keyes v. Ocwen Loan Servicing, LLC, 335 F. Supp. 3d 951, 962–63 (E.D. Mic. 2018).

5    Aliera states that it intends to file a motion for judgment on the pleadings as soon as practicable. Doc. No. [35], p. 8 n.9.

Newell v. Allera Healthcare, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 79 of 81

6    The Court did not allow a reply. Doc. No. [40], p. 2.

7    In 🚩⚠ Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered prior to the close of business on September 30, 1981 by the United States Court of Appeals for the Fifth Circuit.

8    The Court agrees with Plaintiff that discovery on the issue of standing is not warranted. Namely, the fact that Plaintiff has previously filed TCPA lawsuits (with nothing more) is insufficient to warrant targeted discovery on the issue of whether Plaintiff suffered a concrete injury such that his individual claim can proceed.

9    The Court set aside the entry of default against Insurance Care Now on March 26, 2020. Doc. No. [46].

---

**End of Document**                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Horton v. Southwest Medical Consulting, LLC, Not Reported in Fed. Supp. (2017)

**Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 80 of 81**

2017 WL 5075928
Only the Westlaw citation is currently available.
United States District Court, N.D. Oklahoma.

Dr. Sam Lebarre HORTON, Plaintiff,

v.

SOUTHWEST MEDICAL
CONSULTING, LLC, et al., Defendants.

Case No. 17-CV-0266-CVE-mjx
|
Signed 08/14/2017

**Attorneys and Law Firms**

James A. Streett, Streett Law Firm, P.A., Russellville, AR, Jason Bjorn Aamodt, Indian and Environmental Law Group, PLLC, Tulsa, OK, Joey Paul Leniski, Jr., Branstetter, Stranch & Jennings, PLLC, Nashville, TN, for Plaintiff.

Bryan Joseph Wells, Conner & Winters LLP, Ryan S. Wilson, Wilson Law Firm, Oklahoma City, OK, Daniel P. Guillory, Errol J. King, John B. Davis, Baker Donelson Bearman Caldwell & Berkowitz PC, Baton Rouge, LA, Jason Alan McVicker, Mary Quinn-Cooper, Michael Franklin Smith, McAfee & Taft, Tulsa, OK, for Defendants.

## **ORDER**

CLAIRE V. EAGAN, UNITED STATES DISTRICT JUDGE

**\*1** Now before the Court is the parties' Joint Status Report (Dkt. # 43). This case arises from an allegedly unsolicited facsimile (fax) transmission. Plaintiff filed a class action complaint alleging that defendants committed common law conversion and violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 🚩47 U.S.C. § 227 (TCPA), by sending an unsolicited fax that failed to include an opt-out provision. Dkt. # 2, at 32-34. Plaintiff defines the purported class as follows:

> All persons, natural or otherwise, in the United States and its territories

who were successfully sent one or more facsimile transmissions advertising the SoonerCare healthcare provider network being offered by Molina Healthcare, Inc. During the period from four years prior to the filing of this Complaint through the present.

Id. at 18. In the Joint Status Report, defendants ask the Court to bifurcate class certification and merits discovery. Dkt. # 43, at 6. Plaintiff objects, arguing that the two issues are "intermingled." Id.

Courts often bifurcate discovery in class action cases for the sake of efficiency. See, e.g., Doe v. Unified Sch. Dist. No. 259, No. 05-1151-JTM, 2007 WL 1796202, at \*1 n.6 (D. Kan. June 19, 2007). However, discovery bifurcation is not always more efficient. For example, bifurcation may be less efficient in cases where the merits/class discovery distinction is muddled or "cases that are large and likely to continue even if not certified." 🚩Gonzalez v. Pepsico, Inc., No. 06-2163-KHV, 2007 WL 1100204, at \*3 (D. Kan. Apr. 11, 2007).

In this case, the Court agrees with defendants that bifurcation will be more efficient because class certification discovery should be straightforward and distinguishable from merits discovery. The parties will first have a short period of discovery for issues related to class certification, during which plaintiff may inspect the fax machine(s) used to send the alleged unsolicited faxes and any transmission history. Additionally, the parties may conduct depositions of one Rule 30(b)(6) witness of each defendant on issues related to class certification only. After this phase of discovery, plaintiff may file a motion for class certification or a notice of intent not to proceed with class certification. If necessary, the Court will enter a scheduling order related to merits discovery after ruling on any class certification motion.

**IT IS THEREFORE ORDERED** that the following scheduling order is hereby entered:

Class Certification Discovery Cutoff:          October 31, 2017

Motion for Class Certification:          November 15, 2017

Horton v. Southwest Medical Consulting, LLC, Not Reported in Fed. Supp. (2017)

Case 1:25-cv-01410-JKM    Document 16-2    Filed 10/09/25    Page 81 of 81

Response Briefs:                          November 29, 2017

Reply Brief:                              December 6, 2017

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5075928

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.