## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, *individually and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:25-cv-01410-JKM ) (Hon. Julia K. Munley) |
| UPSTART NETWORK, INC., | ) ) |
| Defendant. | ) |

## DEFENDANT UPSTART NETWORK, INC.'S BRIEF IN SUPPORT OF MOTION TO BIFURCATE CASE AND STAY CLASS RELATED DISCOVERY

*/s/ Joshua H. Threadcraft*
Jackson C. Burrow
Identification No. 335420
Joshua H. Threadcraft
Admitted *Pro Hac Vice*
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5345
Jburrow@burr.com
Jthreadcraft@burr.com

*Counsel for Defendant*
UPSTART NETWORK, INC.

63068777 v1

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF PROCEDURAL HISTORY .................................... 2

III. STATEMENT OF FACTS ........................................................................ 3

IV.  STATEMENT OF QUESTIONS INVOLVED.................................... 6

V.   LEGAL STANDARD.............................................................................. 7

VI.  ARGUMENT .......................................................................................... 8

    A.   Bifurcation Will Aid in the Efficient Resolution of Necessary Preliminary
    Issues Involving Mr. Bronstin's Individual Claim. ...................................... 8

    B.   Several Potentially Dispositive Individualized Issues Exist Relating to Mr.
    Bronstin's Individual Claim Warranting Bifurcation. ................................. 9

        1.   Limited discovery regarding when the Subject Number was assigned
        to Mr. Bronstin could dispose of his claims........................................ 9

        2.   Limited Discovery Regarding Mr. Bronstin's Relationship with
        Upstart's Customer, Could Dispose of His Claim. ............................. 12

        3.   Limited Discovery Regarding How Many Telephone Numbers Mr.
        Bronstin Has, and When and Why they Were Obtained Could be
        Dispositive........................................................................................ 14

    C.   Minimal Overlap Exists Between Discovery Into Mr. Bronstin's
    Individual Claim and Class-Wide Discovery. ........................................... 15

    D.   A Limited Stay of Class Discovery Will Serve the Goals of Judicial and
    Party Economy.......................................................................................... 16

    E.   Bifurcation Will Not Prejudice Mr. Bronstin.............................................. 18

VII. CONCLUSION....................................................................................... 19

LOCAL RULE 7.1 CERTIFICATE ................................................................. 21

CERTIFICATE OF COMPLIANCE WITH LR 7.8 ................................................21

CERTIFICATE OF SERVICE ...............................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Akselrod v. MarketPro Homebuyers LLC*,
    No. CCB-20-2966, 2021 WL 100666 (D. Md. Jan. 12, 2021)............................17

*Am. Bank v. City of Menasha*,
    672 F.3d 261 (7th Cir. 2010) ................................................................................17

*Babare v. Sigue Corp.*,
    No. C20-0894-JCC, 2020 WL 8617424 (W.D. Wash. Sept. 30, 2020)..............17

*Cameron v. CHW Group, Inc.*,
    No. 23-cv-00320-HCN-DBP, 2025 WL 2336513 (D. Utah Aug. 13, 2025).........8

*Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinatti of U.S. E.P.A.*,
    12 F.3d 1256 (3d Cir. 1993) ................................................................................12

*Chenault v. Beiersdorf, Inc.*,
    No. 1:20-cv-174, 2020 WL 5016795 (S.D. Ohio. Aug. 24, 2020) .....................16

*Eqt Prod. Co. v. Terra Servs., LLC*,
    No. 14-1053, 2014 WL 12838677 (W.D. Pa. Oct. 22, 2014) ...............................8

*Fania v. Kin Ins., Inc.*,
    No. 22-12354, 2024 WL 2607303 (E.D. Mich. May 24, 2024)............................9

*Garcia v. Credit One Bank, N.A.*,
    No. 2:18-CV-191-JCM (EJY), 2020 WL 4431679 (D. Nev. July 31, 2020).......14

*Gardco Mfg., Inc. v. Herst Lighting*,
    820 F.2d 1209 (Fed. Cir. 1987) ............................................................................7

*Harris v. Shore Funding Solus. Inc.*,
    No. 23-CV-00789 (JMA) (JMW), 2023 WL 3440077 (E.D.N.Y. Apr. 21, 2023)
    .................................................................................................... 10, 16, 18

*Hartley-Culp v. Credit Mgmt. Co.*,
    No. 3:14-CV-282, 2014 WL 4630852 (M.D. Pa. Sept. 15, 2015) .......................8

*Horton v. Southwest Med. Consulting, LLC*,
No. 17-CV-0266-CVE-MJX, 2017 WL 5075928 (N.D. Okla. Aug. 14, 2017)...17

*In re Advanced Methods to Target & Eliminate Unlawful Robocalls*,
33 FCC Rcd. 12024 (2018) .............................................................3, 4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
7 FCC Rcd. 8752 (Oct. 16, 1992).....................................................11

*Katz v. Liberty Power Corp., LLC*,
No. 18-cv-10506-ADB, 2019 WL 957129 (D. Mass. Feb. 27, 2019) ................11

*Leschinsky v. Inter-Continental Hotels Corp.*,
No. 8:15-cv-1470-T-30 (MAP), 2015 WL 6150888 (M.D. Fla. Oct. 15, 2015)....9

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................................12

*Loreaux v. ACB Receivables Mgmt., Inc.*,
No. 14-710 (MAS), 2015 WL 5032052 (D.N.J. Aug. 25, 2015) .........................8

*Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*,
No. 03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285 (D.N.J. Jan. 22, 2007).7

*Moore v. Demand Sci. Grp., LLC*,
No. 1:22-CV-01539, 2024 WL 175743 (N.D. Ill. Jan. 4, 2024) .........................16

*Nazario v. Sharinn & Lipshie, P.C.*,
No. 2:19-cv-04604-SDW-SCM, 2020 WL 205896 (D.N.J. Jan. 14, 2020).........16

*Newell v. Aliera Healthcare, Inc.*,
No. 1:19-cv-01489-SCJ, 2020 WL 13568762 (N.D. Ga. Apr. 6, 2020).............17

*Pavelka v. Paul Moss Ins. Agency, LLC*,
No. 22-2226, 2023 WL 3728199 (N.D. Ohio May 30, 2023).........................9, 19

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
No. 12-2132 (FLW), 2014 WL 413534 (D.N.J. Feb. 4, 2014) ............ 7, 8, 17, 18

*Shoemaker v. Zeitlin*,
No. 1:21-CV-1668, 2023 WL 3826460 (M.D. Pa. June 5, 2023)........................10

TCPA. *Stoops v. Wells Fargo Bank, N.A.*,
  197 F.Supp. 782 (W.D. Pa. 2016) ........................................................................14

*Vandersloot v. Charles Baratta LLC*,
  No. 24-cv-07096 (JMW), 2025 WL 2605343 (E.D.N.Y. Sept. 9, 2025)...... 11, 19

Statutes

27 U.S.C. § 227(b)(1)(A) ........................................................................11

47 U.S.C. § 227(b)(1).........................................................................1, 11

47 U.S.C. § 227(b)(1)(B) ........................................................................10

Rules

Fed. R. Civ. P. 42(b) ................................................................................7

Defendant Upstart Network, Inc. ("Upstart") submits this Brief in Support of Motion to Bifurcate Case and Stay Class Related Discovery, stating as follows:

## I.    <u>INTRODUCTION</u>

According to the Complaint, Upstart violated the Telephone Consumer Protection, Act, 47 U.S.C. § 227(b)(1) ("TCPA"), by making three prerecorded telephone calls to Mr. Bronstin despite not having a relationship with him, or consent to make the calls. (*See* Doc. 1, ¶¶ 16-21). In the Joint Case Management Report filed on October 3, 2025, Mr. Bronstin also contends that Upstart "placed at least three pre-recorded calls to his cell phone on the National Do Not Call Registry in violation of the TCPA," reserving "the right to allege violations of the TCPA's telemarketing regulations in the event discovery reveals that the calls were placed for telemarketing purposes." (*See* Doc. 15, at pp. 2, 5).

This lawsuit is one of 12 TCPA class actions that Mr. Bronstin has filed over the past two years, three of which are currently pending in this Court.[1] In one of the

---

[1] *See, e.g.*, *Bronstin v. Clear Link Ins.*, No. 8:23-CV-01742 (C.D. Cal. 2023); *Bronstin v. Vert Lake Elsinore*, No. 8:23-CV-01745 (C.D. Cal. 2023); *Bronstin v. Solcius*, LLC, No. 8:23-CV-02255 (C.D. Cal. 2023); *Bronstin v. Purekana LLC*, No. 2:24-CV-00792 (D. Ariz. 2024); *Bronstin v. LifeMD, Inc.*, 1:24-CV-06277 (S.D.N.Y. 2024); *Bronstin v. Sutton Funding LLC*, No. 2:24-CV-04116 (E.D.N.Y. 2024); *Bronstin v. ViaSat, Inc.*, 1:25-CV-00927 (M.D. Pa. 2025); *Bronstin v. Servbank SB f/k/a Allied First Bank*, No. 1:25-CV-06182 (N.D. Ill. 2025); *Bronstin v. Jane Tech., Inc.*, No. 1:25-CV-01083 (M.D. Pa. 2025); *Bronstin v. Palmetto Solar, LLC*, No. 3:25-CV-00426 (W.D.N.C. 2025).

12 lawsuits, the defendant filed a counterclaim against Mr. Bronstin, accusing him of "perpetrat[ing] a fraud by completing a lead form (or working with someone who did so on his behalf) to bait calls that he could use as a pretense to start a TCPA lawsuit falsely claiming he received calls without consent." *See Bronstin v. Clear Link Ins.*, No. 8:23-CV-01742, Doc. 51, Answer and Counterclaim, p. 16, attached hereto as **Exhibit A**.

For the reasons stated above, and based on Upstart's investigation discussed in more detail below, Upstart seeks to bifurcate this case into two phases:

- Individual discovery, limited to: (1) When the telephone phone number at issue was assigned to him; (2) Mr. Bronstin's relationship with Upstart's customer who represented the number belonged to him; and (3) The number of telephones Mr. Bronstin has, when and why they were obtained, followed by dispositive motions, if appropriate based on the discovery, which could dispose of his claim; and

- If limited discovery does not dispose of the claim, class discovery.

Upstart believes that the first phase of discovery can be completed in 90-120 days, and potentially dispose of Mr. Bronstin's claims without the need for protracted, intrusive and expensive class discovery, which will serve the ends of justice and judicial economy.

## II.    STATEMENT OF PROCEDURAL HISTORY

1.    On July 30, 2025, Plaintiff initiated the present action against Upstart. (*See* Doc. 1).

2.      On September 12, 2025, the Parties filed a Settlement Status Report. (*See* Doc. 8).

3.      On September 22, 2025, Upstart filed its Answer and Affirmative Defenses to Plaintiff's Complaint. (*See* Doc. 9).

4.      On September 24, 2025, this Court entered an Order setting this case for a Telephonic Management Conference to occur on October 10, 2025. (*See* Doc. 11).

5.      On October 3, 2025, the Parties submitted their Joint Case Management Report; however, as noted therein, the Parties could not come to an agreement regarding bifurcation, leading to Upstart filing this Motion. (*See* Doc. 15).

### III.    <u>STATEMENT OF FACTS</u>

1.      In December, 2022, an individual applied for, and obtained a personal loan using the Upstart lending platform, providing the telephone number at issue (the "Subject Number") and consent to contact the Subject Number. Thereafter, Upstart not only made calls and sent text messages to the Subject Number, but also received communications from the Subject Number, speaking with an individual who identified himself as Upstart's customer.

2.      The Federal Communications Commission ("FCC") has established a comprehensive reassigned number database ("RND"). *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd. 12024, 12043-45 (2018).

3.    Participants can query the RND, and will receive a response of "yes," "no," or "no data," indicating whether the number has been permanently disconnected since the date provided by the caller. 33 FCC Rcd. at 12031, ¶ 19.

4.    The FCC has also declared that a number must be permanently disconnected for a period of at least 45 days before it can be reassigned, i.e., during this 45-day period calls to the number will be to a disconnected number. 33 FCC Rcd. at 12030-31, ¶¶ 15-16.

5.    On March 5, 2024, Upstart queried the RND, and received a response of "no," indicating that the Subject Number had not been reassigned since January 6, 2024. Between March 5 and the May 12 first alleged call, Upstart called and texted the Subject Number, and received no indication that it had been permanently disconnected.[2]

6.    A reverse number look-up for the Subject Number also reflects that it was associated with Mr. Bronstin from 2010 to 2017, which was before the December 2022 application, calls, and text messages referenced in Paragraph 1 above.[3]

---

[2] This raises questions regarding whether, and if the Subject Number was reassigned given the FCC's mandate that numbers be permanently disconnected for 45 days before reassignment.

[3] This raises questions regarding when Mr. Bronstin was assigned the Subject Number. It also raises questions regarding the relationship between the Mr. Bronstin and Upstart's customer. If the number was assigned to Mr. Bronstin before the

7.    Additionally, on April 16, 2025, Upstart received a call from its customer using a telephone number that was not the Subject Number. Upstart could not locate the account with that. When Upstart requested an alternative number to help locate the account, another number was provided, which was not the Subject Number, which did not help identify the account. At no time during the call did Upstart's customer provide the Subject Number, though it was the number used to open the account and to communicate about the account for years.[4]

8.    Upstart has also discovered that in another lawsuit filed in this Court, the defendant challenged Mr. Bronstin's claim that he received a call from that defendant, contending that:

> evidence shows [a] second call Plaintiff alleges was placed to his cell phone number "at 2:14 pm" on April 19, 2024, which supposedly lasted "twenty-five minutes and twenty-three seconds," thus ending around 2:39 p.m., simply could not have occurred. That is because he placed his inbound call using the same number at 2:17 p.m. the same day, just three minutes after he alleges he received the second call from or on behalf of Viasat, and while he was apparently still on that second alleged call.

account at issue was opened and not reassigned, Upstart's customer provided the Mr. Bronstin's number when opening the account and used it when communicating with Upstart. Alternatively, what are the chances that the Subject Number was assigned to Mr. Bronstin, reassigned to Upstart's customer before the account was opened, then assigned to Mr. Bronstin a second time before the calls at issue?

[4] This raises questions regarding the relationship between Mr. Bronstin and Upstart's customer—why would the customer refuse to provide Upstart with the Subject Number he identified when opening the account and used to communicate regarding the account for more than two years?

*Asher Bronstin v. Viasat, Inc.*, Case No. 1:25-cg-00927-KMN, Doc. 11-1, Memorandum, pp. 7-8, attached hereto as **Exhibit B**.

9.    This contention, that the call Mr. Bronstin claims he received "could not have occurred," follows the counterclaim filed against Mr. Bronstin identified above, accusing him of "perpetrat[ing] a fraud by completing a lead form (or working with someone who did so on his behalf) to bait calls that he could use as a pretense to start a TCPA lawsuit falsely claiming he received calls without consent." *See* Ex. A.[5]

10.    Further, examination of the 12 different lawsuits Mr. Bronstin has filed, reflects that he likely has/had no less than five different telephone numbers over a two-year period, potentially contemporaneously.[6]

## IV.    STATEMENT OF QUESTIONS INVOLVED

Should this Court bifurcate this case to allow for limited discovery regarding: (1) When the telephone phone number at issue was assigned to Mr. Bronstin; (2) Mr. Bronstin's relationship with Upstart's customer who represented the number

---

[5] The fact that Mr. Bronstin has been accused of fraud, and claiming to have received calls that "could not have occurred" raises questions regarding the allegations placed at issue in this lawsuit.

[6] This raises questions as to when and why he obtained those numbers—what would be the reason for an individual to have multiple different telephone numbers at the same time—and his standing to prosecute the claim.

belonged to him; and (3) The number of telephones Mr. Bronstin has, when and why they were obtained, followed by dispositive motions, if appropriate based on the discovery, which could dispose of his claim, before proceeding with class-wide discovery?

Suggested Answer to the Question: Yes.

## V.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *See* Fed. R. Civ. P. 42(b). Pursuant to Rule 42(b), "a district court has broad discretion in separation issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*, No. 03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285, at *5 (D.N.J. Jan. 22, 2007) (quoting *Gardco Mfg., Inc. v. Herst Lighting*, 820 F.2d 1209, 1212 (Fed. Cir. 1987)). This broad discretion also applies to whether a court should bifurcate discovery. *See, e.g., Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132 (FLW), 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (explaining that "the broad discretion afforded courts in handling discovery disputes extends to decisions over bifurcating discovery.")

"The decision to bifurcate, and the manner in which bifurcation should be

ordered, is left to the trial court's informed discretion and must be decided on a case by case basis." *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:14-CV-282, 2014 WL 4630852, at *3 (M.D. Pa. Sept. 15, 2015) (citation omitted). "The moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." *Eqt Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014) (internal quotation omitted). Upstart respectfully contends that this Motion satisfies that burden.

## VI.    ARGUMENT

### A.    Bifurcation Will Aid in the Efficient Resolution of Necessary Preliminary Issues Involving Mr. Bronstin's Individual Claim.

As an initial matter, courts regularly find bifurcation to be a valuable tool to avoid unnecessary class-wide discovery when potentially dispositive preliminary issues exist. *See, e.g., Physicians Healthsource*, 2014 WL 413534, at *4 (bifurcating discovery in putative TCPA class action when "a narrow, potentially dispositive issue exists"); *Loreaux v. ACB Receivables Mgmt., Inc.*, No. 14-710 (MAS), 2015 WL 5032052 (D.N.J. Aug. 25, 2015) (bifurcating discovery when "a narrow, potentially dispositive issue exists"); *Cameron v. CHW Group, Inc.*, No. 23-cv-00320-HCN-DBP, 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025) (finding "enough separation between class discovery and individual discovery to warrant bifurcation" including discovery concerning, amongst other things, whether plaintiff

received telephone solicitations within the TCPA); *Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (bifurcating discovery to address the "case-dispositive questions" of whether plaintiff received pre-recorded call and whether defendant was legally responsible for such calls); *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 22-2226, 2023 WL 3728199 (N.D. Ohio May 30, 2023);*Leschinsky v. Inter-Continental Hotels Corp.*, No. 8:15-cv-1470-T-30 (MAP), 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (granting limited discovery for 90 days as to whether the named plaintiff received the calls manually and how many calls were made).

    **B.**    <u>Several Potentially Dispositive Individualized Issues Exist Relating to Mr. Bronstin's Individual Claim Warranting Bifurcation.</u>

        **1.**    **Limited discovery regarding when the Subject Number was assigned to Mr. Bronstin could dispose of his claims.**

The Subject Number was used by Upstart's customer to obtain a loan through Upstart, and used to communicate with Upstart for more than two years. (*Supra* III, ¶ 1). Counsel's reverse number look-up of the Subject Number reflects that it was assigned to Mr. Bronstin from 2010 through 2017, not during the time of the calls at issue in the Complaint. (*Id.* ¶ 6). Additionally, Upstart's March 5, 2025, RND query reflected that the Subject Number had not been reassigned since <u>January 6, 2024</u>. (*Id.* ¶ 5). Finally, despite the fact that cell phone numbers must be permanently disconnected for at least 45 days before reassignment, between Upstart's March 5

RND query and the first alleged call on May 12, Upstart texted and called the Subject Number. Upstart received no indication that the number had been permanently disconnected. (*Id.*).

        a.    <u>If the Subject Number was not assigned to Mr. Bronstin at the time of the calls, his claim fails.</u>

The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission." 47 U.S.C. § 227(b)(1)(B). "Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number ***belonging to the plaintiff***, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent." *Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460, at *9 (M.D. Pa. June 5, 2023) (emphasis added).

Various courts across the country have permitted the bifurcation of discovery to determine the preliminary question of whether the plaintiff actually owned the subject number being called in TCPA class actions. *See, e.g., Harris v. Shore Funding Solus. Inc.*, No. 23-CV-00789 (JMA) (JMW), 2023 WL 3440077, at *4-5 (E.D.N.Y. Apr. 21, 2023) (bifurcating discovery in TCPA class action to determine "whether on April 19, 2022 Plaintiff received a call from Defendant" at the subject

number and "ownership of the subject phone."); *Vandersloot v. Charles Baratta LLC*, No. 24-cv-07096 (JMW), 2025 WL 2605343, at *4 (E.D.N.Y. Sept. 9, 2025) (bifurcating discovery in TCPA class action to include, in pertinent part, "whether Plaintiff independently owns" the subject number); *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019).

b.    <u>If the Subject Number was assigned to Mr. Bronstin and Upstart's customer used the number, Mr. Bronstin's claim could be barred by consent.</u>

To the extent that the number was assigned to Mr. Bronstin before and after Upstart's customer opened the account, and Upstart's customer used the number when communicating with Upstart, this raises questions regarding whether Upstart had consent to contact the number. "The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 29 (Oct. 16, 1992); *see* 27 U.S.C. § 227(b)(1)(A). "[U]nder the prohibitions set forth in § 227(b)(1) ... persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations*, 7 FCC Rcd. At 8769, ¶ 31 (alterations supplied).

Alternatively, what are the chances that the Subject Number was assigned to Mr. Bronstin, reassigned to Upstart's customer before the account was opened, then

assigned to Mr. Bronstin a second time before the calls at issue?

For the reasons stated above, Upstart should be, at very least permitted to conduct discovery regarding this limited issue.

> ### 2. Limited Discovery Regarding Mr. Bronstin's Relationship with Upstart's Customer, Could Dispose of His Claim.

For an individual to have standing under a "statutorily created cause of action," they must fall within the relevant statute's "zone of interest." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The "zone of interest" inquiry considers "the Congressional intent of the statute" and whether "the complainant's interests were 'among the sorts of interests'" the statue was specifically designed to protect. *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.- Cincinatti of U.S. E.P.A.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

In addition to the fact that the:

- reverse phone number look up conducted by Upstart's counsel reflects that the Subject Number was not assigned to Mr. Bronstin at the time of the alleged calls at issue (*Supra* III, ¶ 6);

- Upstart's customer listed the Subject Number when opening the account, and used it for years when communicating with Upstart (*Id.* ¶ 1);

- Upstart's March 5, 2024, RND query reflected that the Subject Number had not been reassigned since January 6, 2024, and Upstart sent text messages and made calls to the Subject Number without any indication of disconnection after the query despite the 45-day permanent disconnection requirement (*Id.* ¶ 5);

Just three months before this lawsuit was filed, Upstart's customer refused to provide the Subject Number to Upstart when attempting to identify his account. (*Id.* ¶ 7). All these facts combined raise questions regarding the relationship between Mr. Bronstin and Upstart's customer.

These questions gain greater significance in light of the previously referenced counterclaim accusing Mr. Bronstin of fraud wherein he was alleged to have:

> filed suit against Defendant Clear Link Insurance Agency, LLC ("Clear Link" or "Defendant") alleging that Defendant's vendor, Allegiant Holdings, LLC ("Allegiant"), called his phone number, 760-705-**** (the "Subject Number"), and played a prerecorded voice message without his consent in violation of the Telephone Consumer Protection Act ("TCPA"). But Bronstin only received the call in question because he, or someone acting on his behalf, submitted a lead form to https://www.getmedicarequotesnow.com, where he gave his express written consent to receive such calls on the Subject Number. Bronstin attempted to conceal his fraud by using the name "Wayne Howard," but during one of the calls, Bronstin revealed facts that only someone familiar with the lead consenting to the alleged call would know.

> In other words, Bronstin perpetrated a fraud by completing a lead form (or working with someone who did so on his behalf) to bait calls that he could use as a pretense to start a TCPA lawsuit falsely claiming he received calls without consent.

*See* Ex. A.

Couple this with the fact that the defendant in another TCPA class action filed in this Court contends that a call forming the basis of Mr. Bronstin's claims in that case "could not have occurred." *See* Ex. B.

While Upstart has no specific knowledge regarding the merit of the fraud

counterclaim or contention that the call above could not have occurred, these contentions, coupled with Upstart's investigation regarding assignment of the Subject Number and calls to the Subject Number, raise questions regarding Mr. Bronstin's relationship with Upstart's account holder. At a minimum, this supports limited discovery relating thereto.

### 3. Limited Discovery Regarding How Many Telephone Numbers Mr. Bronstin Has, and When and Why they Were Obtained Could be Dispositive.

In *Stoops v. Wells Fargo Bank, N.A.*, the plaintiff purchased at least thirty-five cellphones with the specific intent of receiving telemarketing calls so that she could bring lawsuits under the TCPA. *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp. 782, 788 (W.D. Pa. 2016). The court held that "because Plaintiff has admitted that her only purpose in using her cellphones is to file TCPA lawsuits, ... the calls did not constitute the 'nuisance, invasion of privacy, cost, and inconvenience,' from which Congress intended to protect consumers," depriving the plaintiff of standing for lack of injury-in-fact. *See id.* at 800. Likewise, in *Garcia v. Credit One Bank, N.A.*, the plaintiff was found not to have standing because he "kept re-purchasing pre-paid phone minutes, apparently in order to keep receiving unwanted calls." *Garcia v. Credit One Bank, N.A.*, No. 2:18-CV-191-JCM (EJY), 2020 WL 4431679, at *3 (D. Nev. July 31, 2020).

Review of the 12 TCPA class action complaints Mr. Bronstin has filed during

the past two years reveals that he has possessed at least five different cell phone numbers during this short period of time.[7] Upstart notes that beginning in 2025, Mr. Bronstin's complaints frequently only identified the area code of the number at issue, so he could possess more than five numbers. The fact that Mr. Bronstin has possessed at least five separate telephone numbers during a two-year period, coupled with the facts discussed above, raises questions as to whether Mr. Bronstin has standing to prosecute the claim. *See Stoops, supra.*

For the reasons stated above, Upstart respectfully contends that it should be able to at least conduct limited discovery regarding how many telephone numbers Mr. Bronstin has, and when and why they were obtained.

### C.    Minimal Overlap Exists Between Discovery Into Mr. Bronstin's Individual Claim and Class-Wide Discovery.

Upstart has proposed three narrow areas of inquiry which could potentially be dispositive of Mr. Bronstin's individual claim:

(1) When the telephone number at issue was assigned to Mr. Bronstin;

---

[7] This Complaint in this lawsuit identified the Subject Number as (760) 484-XXXX (Doc. 15, at p. 3.) In *Clear Link Ins.*, No. 8:23-CV-01742, Mr. Bronstin identified cellular number (760) 705-XXXX. *See Clear Link* complaint attached hereto as **Exhibit C.** In *Vert Lake*, No. 8:23-CV-01745, he identified cellular number (714) 709-XXXX. *See Vert Lake* complaint attached hereto as **Exhibit D**. In *Solcius*, No. 8:23-CV-02255, he identified owning the cellular number (760) 709-XXXX. *See Solcius* complaint attached hereto as **Exhibit E**. In *Sutton*, No. 2:24-CV-04116, he identified owning the cellular number (202) XXX-XXX. *See Sutton* complaint attached hereto as **Exhibit F**.

(2) Mr. Bronstin's relationship with Upstart's customer; and

(3) The number of telephones Mr. Bronstin has, when and why they were obtained.

These issues are specific to facts and circumstances strictly relating to Mr. Bronstin, and only minimal discovery will be necessary to determine the viability of his individual claim. As such, Upstart believes that bifurcation is appropriate under the circumstances. *See Harris*, 2023 WL 3440077, at *5 (finding "good cause" in a TCPA case for "limited discovery related to Plaintiff's individual claim" because "such discovery would not result in duplication of efforts or substantially overlap with class discovery."); *Chenault v. Beiersdorf, Inc.*, No. 1:20-cv-174, 2020 WL 5016795, at *3 (S.D. Ohio. Aug. 24, 2020) ("[T]he fact that class and merits-based discovery will [*sic*] inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate."); *Moore v. Demand Sci. Grp., LLC*, No. 1:22-CV-01539, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) (bifurcating discovery when "the overlap between the proposed initial discovery and merits discovery is minimal.").

### D.    A Limited Stay of Class Discovery Will Serve the Goals of Judicial and Party Economy.

"Courts generally postpone class-wide discovery on the merits of the claims when bifurcation serves the interests of fairness and efficiency." *Nazario v. Sharinn & Lipshie, P.C.*, No. 2:19-cv-04604-SDW-SCM, 2020 WL 205896, at *1 (D.N.J.

Jan. 14, 2020) (citation omitted). "It is also generally understood that the costs can be particularly 'enormous' for defendants" in TCPA class actions. *Janssen Pharm., Inc.*, 2014 WL 413534, at *4 (citation omitted); *Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020) ("It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens.") (citing *Am. Bank v. City of Menasha*, 672 F.3d 261, 266 (7th Cir. 2010) (observing that class action plaintiffs sometimes "us[e] discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit")).

Bifurcation alleviates the potentially "enormous" costs imposed on Upstart, as "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive." *Akselrod v. MarketPro Homebuyers LLC*, No. CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (citing *Janssen Pharm., Inc.*, 2014 WL 413534, at *4); *see also Newell v. Aliera Healthcare, Inc.*, No. 1:19-cv-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (reasoning that limited discovery into the individual plaintiff "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery") (quotation and citation omitted); *Horton v. Southwest Med. Consulting, LLC*, No. 17-CV-0266-CVE-MJX, 2017 WL 5075928, at *1 (N.D. Okla. Aug. 14, 2017)

("Courts often bifurcate discovery in class action cases for the sake of efficiency.")

In *Harris*, *supra.*, the court found that bifurcation was warranted in the putative TCPA class action due to the potentially "unforgiving" costs imposed on the defendant. *See* 2023 WL 3440077, at *4. Highlighting one such discovery request propounded by the plaintiff which could impose "unforgiving" cost, the court pointed to the plaintiff's request that the defendant "produce all documents containing ... information for each outbound telemarking call sent by your or your vendors" in the last four years. *See id.*

Similarly, here, Mr. Bronstin requests that Upstart produce "[d]ocuments and electronically stored information sufficient to identify the unique telephone numbers to which [Upstart] made, or caused to be made, a call or calls in connection with which an artificial or prerecorded voice was used," and designates the pertinent time period for the request as running from July 30, 2021, to the present. A true and correct copy of Mr. Bronstin's First Set of Discovery Requests to Upstart is attached hereto as **Exhibit G**. This request is just the type of "hefty litigation expenses and an extensive use of judicial resources ..." that can potentially be avoided by allowing the limited, narrowly tailored discovery requested in this motion. *Janssen Pharm., Inc.*, 2014 WL 413534, at *4.

### E.     Bifurcation Will Not Prejudice Mr. Bronstin.

No scheduling order has been entered in the case. In similar circumstances,

courts have held that "any asserted prejudice [by the plaintiff] is neutralized by the early stage of this case coupled with the burdens and costs associated with unnecessary class action discovery under the TCPA." *Vandersloot*, 2025 WL 2605343, at *5 (citing *Pavelka*, 2023 WL 3728199, at *2) (granting bifurcation where the case "[was] still in its preliminary stages" before defendant suggested bifurcating discovery).

Additionally, Upstart only requests a 90-120 day period to conduct the limited discovery. For these reasons, Upstart does not believe Mr. Bronstin will be prejudiced by bifurcating discovery.

## VII.    CONCLUSION

For the foregoing reasons, Upstart respectfully requests that the Court:

(1) Bifurcate discovery for a 90-120 day period regarding:

   (a) When the telephone number at issue was assigned to him;

   (b) His relationship with Upstart's customer; and

   (c) The number of telephones Mr. Bronstin has, and when and why they were obtained; and

(2) Only permit class discovery to proceed if the limited discovery outlined above does not dispose of Mr. Bronstin's claims.

Respectfully submitted this 9th day of October, 2025.

*/s/ Joshua H. Threadcraft*
Jackson C. Burrow
Identification No. 335420
Joshua H. Threadcraft
Admitted *Pro Hac Vice*
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5345
Jburrow@burr.com
Jthreadcraft@burr.com

*Counsel for Defendant*
UPSTART NETWORK, INC.

## <u>LOCAL RULE 7.1 CERTIFICATE</u>

The undersigned hereby certifies that Upstart's counsel conferred with Plaintiff's counsel on the foregoing Motion on October 3, 2025, via telephone, and Plaintiff's counsel indicated that Plaintiff DOES NOT concur with the relief sought.

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.8</u>

I hereby certify that, pursuant to Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **4,968 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 9, 2025, I electronically filed the

foregoing with the Clerk of Court using CM/ECF, which will serve a copy of the

aforesaid via Notice of Electronic Filing to:

Andrew Roman Perrong, Esq.
PERRONG LAW LLC
2657 Mt. Carmel Avenue
Glenside, PA 19038
Email: a@perronglaw.com
*Counsel for Plaintiff*

<div style="margin-left:40%;">

*/s/ Jackson C. Burrow*
Jackson C. Burrow
Identification No. 335420
Burr & Forman LLP

</div>

Exhibit A

Alexander D. Terepka (CSB# 288243)
alex@wtlaw.com
Patrick J. Fitzgerald (*pro hac vice*)
pfitzgerald@wtlaw.com
Watstein Terepka LLP
515 South Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (404) 782-9821

*Attorney for Clear Link*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLEAR LINK INSURANCE AGENCY, LLC and ALLEGIANT HOLDINGS, LLC,<br><br>Clear Links. | Case No. 8:23-cv-01742-CJC-ADS<br><br>**CLEAR LINK'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM**<br><br>Amended Complaint Served: January 24, 2024<br>Response Date: April 1, 2024 |

1

1    Clear Link Clear Link Insurance Agency, LLC ("Clear Link" or "Clear Link")

2   hereby submits its Answer and Affirmative Defenses to Plaintiff Asher Bronstin's

3   ("Plaintiff") First Amended Complaint.

4    With respect to Plaintiff's unnumbered initial paragraph, Clear Link admits that

5   Plaintiff purports to bring this action on behalf of himself and the members of his

6   putative class.  Clear Link denies all remaining allegations in this paragraph, and further

7   denies that Plaintiff or the putative class members are entitled to any relief whatsoever

8   against Clear Link.

9                    **I.    INTRODUCTION[1]**

10   1.    Paragraph 1 of the Complaint contains references to cases, which speak

11   for themselves, to which no response is required.  To the extent a response is required,

12   Clear Link denies any implication that it is liable under the Telephone Consumer

13   Protection Act.

14   2.    Clear Link denies the allegations contained within paragraph 2 of the

15   Complaint and specifically denies that it participated in any illegal telemarketing.

16   3.    Clear Link lacks knowledge or information sufficient to form a belief as

17   to the truth or falsity of the allegations contained within paragraph 3 of the Complaint

18   and therefore denies them.

19   4.    Clear Link admits that Plaintiff purports to represent a nationwide class.

20   Clear Link lacks knowledge or information sufficient to form a belief as to the truth or

21   falsity of the allegations concerning telemarketing campaigns generally.  Clear Link

22   denies the remaining allegations contained within paragraph 4 of the Complaint and

23   specifically denies that it made any illegal telemarketing calls and that class

24   certification is appropriate in this case.

25   _____

26   [1] For the Court's convenience, Clear Link has incorporated the "headings" that appear
    in the Complaint, as well as the formatting from those headings.  But Clear Link does

27   not necessarily agree with and does not admit the characterizations of such headings
    unless specifically admitted herein.  Nor does Clear Link waive any right to object to

28   those characterizations.

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## II.    PARTIES

5.    Clear Link lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation contained within paragraph 5 of the Complaint.

6.    Clear Link admits that it is a limited liability company that offers insurance but denies the remaining allegations contained with paragraph 6 of the Complaint.

7.    Clear Link lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation contained within paragraph 7 of the Complaint.

## III.    JURISDICTION AND VENUE

8.    Clear Link admits that Plaintiff purports to invoke federal-question jurisdiction under the TCPA.  Clear Link denies that Plaintiff has brought forth a "case or controversy" under Article III of the U.S. Constitution.  To the extent not expressly admitted, Defendant denies the remaining allegations in paragraph 8 of the Complaint.

9.    Clear Link denies the allegations contained within paragraph 9 of the Complaint.

10.    Clear Link denies the allegations contained within paragraph 10 of the Complaint and specifically denies that it participated in any illegal telemarketing.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

11.    Clear Link lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 11 of the Complaint. The quotations of other materials speak for themselves.  To the extent a response is required, Clear Link denies any implication that it is liable under the Telephone Consumer Protection Act.

12.    The allegations contained within paragraph 12 of the Complaint contain legal conclusions, to which no response is required.  To the extent that a response is required, Clear Link admits that Plaintiff describes the TCPA, which speaks for itself. Clear Link denies any allegation inconsistent with the text of the TCPA. To the extent

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    not expressly admitted, Defendant denies the remaining allegations in paragraph 12 of

2    the Complaint.

3        13.    The allegations contained within paragraph 13 of the Complaint contain

4    legal conclusions, to which no response is required.  To the extent that a response is

5    required, Clear Link admits that Plaintiff describes the TCPA, which speaks for itself.

6    To the extent not expressly admitted, Defendant denies the remaining allegations in

7    paragraph 13 of the Complaint.

8        14.    The allegations contained within paragraph 14 of the Complaint contain

9    legal conclusions, to which no response is required.  To the extent that a response is

10   required, Clear Link admits that Plaintiff quotes purported findings by the FCC, which

11   speaks for themselves.  Defendant denies the remaining allegations in paragraph 14 of

12   the Complaint, and specifically denies any wrongdoing.

13       15.    The allegations contained within paragraph 15 contain improper legal

14   conclusions and citations to FCC regulations, neither of which requires a response.  To

15   the extent a response is required, Clear Link admits that Plaintiff quotes FCC

16   regulations, which speaks for themselves.  Clear Link denies that the FCC acted within

17   its authority in promulgating the cited regulations.  Defendant denies the remaining

18   allegations in paragraph 15 of the Complaint, and specifically denies any wrongdoing.

19   **B.    Unsolicited Telemarketing to Plaintiff**

20       16.    Clear Link lacks knowledge or information sufficient to form a belief as

21   to the truth or falsity of the allegations contained within paragraph 16 of the Complaint

22   and therefore denies them.

23       17.    Clear Link lacks knowledge or information sufficient to form a belief as

24   to the truth or falsity of the allegations contained within paragraph 17 of the Complaint

25   and therefore denies them.

26       18.    Clear Link lacks knowledge or information sufficient to form a belief as

27   to the truth or falsity of the allegations contained within paragraph 18 of the Complaint

28   and therefore denies them.

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

19.    Clear Link denies the allegations contained within paragraph 19 of the Complaint.

20.    Clear Link lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation contained within paragraph 20 of the Complaint and therefore denies it.

21.    Clear Link denies the allegation in paragraph 21 of the Complaint.

22.    Clear Link denies the allegation in paragraph 22 of the Complaint.

23.    Clear Link denies the allegation in paragraph 23 of the Complaint.

24.    Clear Link denies the allegation in paragraph 24 of the Complaint.

25.    Clear Link denies the allegation in paragraph 25 of the Complaint.

26.    Clear Link denies the allegation in paragraph 26 of the Complaint.

27.    Clear Link denies the allegation in paragraph 27 of the Complaint.

28.    Clear Link denies the allegation in paragraph 28 of the Complaint.

29.    Clear Link denies the allegation in paragraph 29 of the Complaint.

## **CLEAR LINK'S VICARIOUS LIABILITY**

30.    Paragraph 30 does not contain well-pleaded allegations of fact and requires no response.  To the extent a response is required, Clear Link admits that Plaintiff quotes FCC regulations, which speak for themselves.  Clear Link denies that the FCC acted within its authority in promulgating the cited regulations. Defendant denies the remaining allegations in paragraph 30 of the Complaint, and specifically denies any wrongdoing.

31.    Paragraph 31 does not contain well-pleaded allegations of fact and requires no response.  To the extent a response is required, Clear Link denies that the FCC acted within its authority in promulgating the cited regulations. Defendant denies the remaining allegations in paragraph 31 of the Complaint, and specifically denies any wrongdoing.

32.    Paragraph 32 does not contain well-pleaded allegations of fact and requires no response.  To the extent a response is required, Clear Link admits that

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Plaintiff quotes an FCC order, which speaks for itself. Clear Link denies that the FCC acted within its authority in promulgating the cited order. Defendant denies the remaining allegations in paragraph 32 of the Complaint, and specifically denies any wrongdoing.

33.    Paragraph 33 does not contain well-pleaded allegations of fact and requires no response. To the extent a response is required, Clear Link admits that Plaintiff quotes an FCC order, which speaks for itself. Clear Link denies that the FCC acted within its authority in promulgating the cited regulations. Defendant denies the remaining allegations in paragraph 33 of the Complaint, and specifically denies any wrongdoing.

34.    Clear Link denies the allegations contained within paragraph 34 of the Complaint.

35.    Clear Link admits that it engaged Allegiant to perform certain legal, TCPA compliant calling activities but denies the remaining allegations contained within paragraph 35 of the Complaint and specifically denies that Allegiant was authorized by Clear Link to place any of the alleged calls that gave rise to this action.

36.    Clear Link denies the allegations contained within paragraph 36 of the Complaint.

37.    Clear Link denies the allegations contained within paragraph 37 of the Complaint as alleged.

38.    Clear Link admits that one of the specific criteria for vendors like Allegiant is to comply with all laws, including the TCPA. Except as expressly admitted Clear Link denies the allegations contained within paragraph 38 of the Complaint as alleged.

39.    Clear Link denies the allegations contained within paragraph 39 of the Complaint as alleged.

40.    Paragraph 40 contains citations to an FCC order to which no response is required. To the extent a response is required, Clear Link admits that Plaintiff quotes

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

an FCC order, which speaks for itself.  Clear Link denies that the FCC acted within its authority in promulgating the cited regulations.  Defendant denies the remaining allegations in Paragraph 40, and specifically denies any wrongdoing.

## V.    CLASS ACTION ALLEGATIONS

41.    Clear Link admits that Plaintiff purports to represent classes as defined within paragraph 41 of the Complaint but denies the remaining allegations contained within paragraph 41 of the Complaint and specifically denies that class certification would be appropriate in this case.

42.    Clear Link admits that Plaintiff purports to represent classes and exclude from those classes those named within paragraph 42 of the Complaint.  Clear Link denies the remaining allegations contained within paragraph 42 of the Complaint and specifically denies that class certification would be appropriate in this case.

43.    Clear Link denies the allegations contained within paragraph 43 of the Complaint.

44.    Clear Link denies the allegations contained within paragraph 44 of the Complaint.

45.    Clear Link denies the allegations contained within paragraph 45 of the Complaint.

46.    Clear Link denies the allegations contained within paragraph 46 of the Complaint.

47.    Clear Link denies the allegations contained within paragraph 47 of the Complaint.

48.    Clear Link denies the allegations contained within paragraph 48 of the Complaint.

49.    Clear Link admits that Plaintiff purports to bring this action as a class action and seeks injunctive relief and money damages but denies the remaining allegations contained within paragraph 49 of the Complaint and specifically denies that

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

class certification, injunctive relief or money damages, or any relief, is appropriate in this case.

50.    Clear Link denies the allegations contained within paragraph 50 of the Complaint, including the subparagraphs a. through c.

51.    Clear Link denies the allegations contained within paragraph 51 of the Complaint.

52.    Clear Link denies the allegations contained within paragraph 52 of the Complaint.

53.    Clear Link denies the allegations contained within paragraph 53 of the Complaint.

54.    Clear Link denies the allegations contained within paragraph 54 of the Complaint.

55.    Clear Link denies the allegations contained within paragraph 55 of the Complaint.

<div align="center">

**<u>FIRST CAUSE OF ACTION</u>**

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(b)(3)**

**(On Behalf of Plaintiff and the Pre-Recorded Call Class)**

</div>

56.    Clear Link incorporates its responses set forth in all preceding paragraphs as though fully set forth herein.

57.    Clear Link denies the allegations contained within paragraph 57 of the Complaint.

58.    Clear Link denies the allegations contained within paragraph 58 of the Complaint.

59.    Paragraph 59 of the Complaint contains an improper legal conclusion to which no response is required.  To the extent a response is required, Clear Link denies the allegations contained within paragraph 59 of the Complaint as stated and

<div align="center">

8

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

</div>

1  specifically denies that treble damages or any damages are warranted or that it violated

2  the TCPA in any way.

3      60.      Clear Link denies the allegations contained within paragraph 60 of the

4  Complaint.

5              **PRAYER FOR RELIEF**

6      Clear Link denies the allegations in Plaintiffs' Prayer for Relief, including

7  subparts A through G, and specifically denies that Plaintiff is entitled to class

8  certification, appointment as class representative, appointment of his attorneys as class

9  counsel, any damages, injunctive relief, or any relief whatsoever.

10            **VI.    DEMAND FOR JURY**

11     Clear Link denies that any of the allegations set forth in the Complaint allege

12 triable issues against Clear Link.  To the extent a jury trial is permitted, Clear Link

13 demands a trial by the maximum number of jurors allowed by law.

14         **VII.   SIGNATURE ATTESTATION**

15     Clear Link lacks knowledge or information sufficient to form a belief as to the

16 truth or falsity of the allegation contained within the Signature Attestation of the

17 Complaint.

18            **AFFIRMATIVE DEFENSES**

19     Clear Link hereby asserts the following defenses to the claims and allegations

20 set forth in the Complaint.  By asserting these defenses, Clear Link does not admit that

21 it bears the burden of proof or the burden of persuasion with respect to any particular

22 defense.

23            **FIRST AFFIRMATIVE DEFENSE**

24            **(Lack of Personal Jurisdiction)**

25     Plaintiff's claims fail because this Court lacks personal jurisdiction over Clear

26 Link.  Clear Link is not subject to the general jurisdiction of this Court because it is not

27 "at home" in California.  Nor is it subject to specific personal jurisdiction because Clear

28 Link did not purposefully avail itself of this forum or purposefully direct its activities

1    here.  Any alleged calls at issue were placed by an independent third party whose
2    contacts cannot be attributed to Clear Link for purposes of establishing personal
3    jurisdiction.

4                    **SECOND AFFIRMATIVE DEFENSE**
5                    **(Failure to State a Cause of Action)**

6        The Complaint fails to allege facts sufficient to state a cause of action against
7    Clear Link.  For example, Plaintiff failed to show that any calls he allegedly received
8    were calls for "which the called party is charged" as required by the TCPA.

9                    **THIRD AFFIRMATIVE DEFENSE**
10                    **(Consent)**

11        Plaintiff is barred from asserting his claims in whole or in part because the calls
12    at issue were made with his prior express permission and/or consent, which was not
13    effectively revoked.

14                    **FOURTH AFFIRMATIVE DEFENSE**
15    **(No Agency or Vicarious Liability and Proportional Allocation of Fault)**

16        Any damages, injury, violation, or wrongdoing alleged in the Complaint was
17    caused by third parties or Plaintiff for which Clear Link cannot be held vicariously
18    liable.  Further, Clear Link did not authorize, ratify, encourage, participate in, aid, abet,
19    or assist in any of the conduct alleged in the Complaint and cannot be held liable for it.
20    For example, to the extent contractors caused any damages, injury, violations of the law
21    or wrongdoing or engaged in the conduct alleged in the Complaint, those vendors acted
22    outside the scope or in violation of the parties' agreements and Clear Link did not
23    approve of that conduct.  As such, Clear Link cannot be held vicariously liable.  And
24    even if it could, its liability, if any, must be eliminated or reduced by an amount
25    proportionate to the fault attributable to third parties or Plaintiff.

26                    **FIFTH AFFIRMATIVE DEFENSE**
27                    **(Arbitration and Class Waiver)**

28        Plaintiff and the putative class members are barred from asserting claims in this

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

forum to the extent their claims are subject to a binding arbitration agreement and an agreement to arbitrate their disputes on an individual (non-class) basis, depriving this Court of jurisdiction over such claims, and rendering venue in this Court improper.

### SIXTH AFFIRMATIVE DEFENSE
### (Acquiescence, Ratification, Estoppel, Waiver)

Plaintiff is barred from asserting his claims, in whole or in part, by the equitable doctrines of acquiescence and ratification, estoppel, and/or waiver.

### SEVENTH AFFIRMATIVE DEFENSE
### (No Mitigation)

To the extent that the Complaint alleges that Plaintiff suffered any purported injury or damages, Plaintiff failed to take any and all reasonable or necessary actions to avoid or reduce his damages, and any damages awarded to him must be reduced accordingly.

### EIGHTH AFFIRMATIVE DEFENSE
### (No Willful or Negligent Misconduct; No Treble or Increased Damages)

Any claim for treble or increased damages is barred because Clear Link did not engage in knowing or willful misconduct.

### NINTH AFFIRMATIVE DEFENSE
### (No Proximate Cause)

Clear Link did not proximately cause any damages, injury, or violation alleged in the Complaint.  Instead, the acts of third parties (such as vendors, Plaintiff, or other persons who provided the number on which Plaintiff was allegedly called) proximately caused the damages, injuries, or violations at issue, to the extent they occurred.

### TENTH AFFIRMATIVE DEFENSE
### (No Standing)

Any and all claims brought in the Complaint are barred because Plaintiff lacks standing.  For example, Plaintiff has not suffered any actual constitutional injury resulting from Clear Link's alleged conduct, and invited the harm he complains of, and

therefore does not have standing pursuant to *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015).

### ELEVENTH AFFIRMATIVE DEFENSE

### (Reasonable Practices and Procedures)

Any and all claims brought in the Complaint are barred in whole or in part because Clear Link has established and instituted procedures so that Defendant only called persons who consented to receive calls about Defendant's services.

### TWELFTH AFFIRMATIVE DEFENSE

### (Substantial Compliance)

Clear Link is not liable to Plaintiff because Clear Link acted reasonably and with due care and substantially complied with all applicable statutes, regulations, ordinances, and/or other laws.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

Any and all claims brought in the Complaint are barred because Defendant possessed a good faith belief that it had consent to call the number at issue.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (FCC Exceeding Delegated Authority)

Plaintiff's TCPA claims are barred to the extent they are based on regulations or rulings that exceed the FCC's delegated authority. Nor can the Hobbs Act cannot be validly or constitutionally applied to preclude Clear Link from raising defenses to an action arising under the TCPA or rules or regulations promulgated thereunder.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (First Amendment)

The TCPA and the regulations and rules promulgated thereunder violate the First Amendment of the United States Constitution, including by imposing content-based restrictions on speech that fail to withstand strict scrutiny.

### SIXTEENTH AFFIRMATIVE DEFENSE

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**(Adequate Remedy at Law)**

The Complaint fails to state a claim for injunctive relief because Plaintiff has an adequate remedy at law. For example, the TCPA provides for statutory penalties of $500 to $1,500 per call, or monetary compensation for actual damages.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Plaintiff is barred from asserting his claims, in whole or in part, by the doctrine of unclean hands. For example, Plaintiff cannot assert claims under the TCPA if he acted in bad faith by, for example, providing the subject number referenced in the Complaint.

**EIGHTTEENTH AFFIRMATIVE DEFENSE**

**(Due Process)**

The application of the TCPA upon which the Complaint is based, including the imposition of statutory damages on Clear Link, would violate the Due Process provisions of the United States Constitution. For example, certain definitions contained in the TCPA render the statute unconstitutionally vague. Additionally, the statutory penalties sought by Plaintiff are excessive.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(No Authorization to Make Calls)**

None of the subject calls were made by Clear Link, nor authorized to be made on its behalf.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(No "Pre-recorded" or "Artificial" Voice)**

Plaintiff's claim is barred because a "pre-recorded voice" or "artificial voice," as defined by the TCPA, did not play, or wholly play, including without the assistance of a live agent in an interactive fashion, on the alleged calls.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(No "Call")**

13

1    Clear Link did not "make any call" to Plaintiff, as that term is used in the TCPA,

2    47 U.S.C. § 227(b)(1)(A).

3                    **TWENTY-SECOND AFFIRMATIVE DEFENSE**

4                                      **(No Charge)**

5    Plaintiff was not "charged for the call" with respect to the calls at issue in this

6    lawsuit, as that term is used in the TCPA.

7                     **TWENTY-THIRD AFFIRMATIVE DEFENSE**

8                              **(Class Action Deficiencies)**

9    Plaintiff cannot satisfy the prerequisites set forth in Rule 23 of the Federal Rules

10   of Civil Procedure and therefore cannot maintain this action as a class action.  Further,

11   Clear Links gives notice that, in the event that this Court certifies a class, which Clear

12   Link denies would be appropriate, Clear Link reserves the right to adopt and

13   incorporate by reference each and every applicable defense pleaded (and any others

14   that may be appropriate at that point) to all members of such class.

15                  **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

16                                    **(Hobbs Act)**

17   The Hobbs Act cannot be validly or constitutionally applied to preclude Clear

18   Link from raising defenses to an action arising under the TCPA or rules or regulations

19   promulgated thereunder.

20                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

21                                     **(Laches)**

22   Plaintiff and the putative class members are barred from asserting their claims

23   in whole or in part by the doctrine of laches.

24                    **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

25              **(Reservation of Right to Assert Further Defenses)**

26   Clear Link has not knowingly or intentionally waived any applicable defenses,

27   and hereby gives notice that it intends to rely on such other and further affirmative

28

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

defenses as may become available during discovery in this action.  Clear Link reserves the right to amend its Answer to assert any such defense.

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

2

## <u>COUNTERCLAIM</u>

3

4    1.    Plaintiff Asher Bronstin filed suit against Defendant Clear Link Insurance

Agency, LLC ("Clear Link" or "Defendant") alleging that Defendant's vendor,

5
Allegiant Holdings, LLC ("Allegiant"), called his phone number, 760-705-**** (the

6    "Subject Number"), and played a prerecorded voice message without his consent in

7    violation of the Telephone Consumer Protection Act ("TCPA").  But Bronstin only

8    received the call in question because he, or a someone acting on his behalf, submitted

9    a lead form to https://www.getmedicarequotesnow.com, where he gave his express

written consent to receive such calls on the Subject Number.  Bronstin attempted to
10
conceal his fraud by using the name "Wayne Howard," but during one of the calls,
11
Bronstin revealed facts that only someone familiar with the lead consenting to the
12
alleged call would know.
13

14    2.    In other words, Bronstin perpetrated a fraud by completing a lead form

(or working with someone who did so on his behalf) to bait calls that he could use as a
15
pretense to start a TCPA lawsuit falsely claiming he received calls without consent.
16

17    3.    Bronstin's submission of the fraudulent lead injured Defendant, which has

18    been forced to incur costs investigating and responding to his false claims, and his filing

19    TCPA claims against Defendant breached the terms of the lead form.  Defendant seeks

damages, including the lost time and attorneys' fees incurred in responding to this
20
action, and any other relief appropriate arising out of Bronstin's fraud and breach of
21
contract.
22

23    ## <u>JURISDICTION AND VENUE</u>

24    4.    The Court has subject matter jurisdiction over Defendant's

counterclaims under 28 U.S.C. § 1367(a) because they are so related to Bronstin's
25
claims that they form part of the same case or controversy under Article III of the United
26
States Constitution.
27

5.    Venue is proper in this district because Bronstin resides in the Central
28

16

District of California and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6.      Clear Link is a corporation that is organized and maintains its principal place of business in Utah.

7.      Mr. Bronstin is an individual who resides in this district.

## FACTUAL BACKGROUND

8.      Under the TCPA, Congress afforded injured citizens a private right of action and statutory damages of $500 for negligent violations of certain provisions of the TCPA, which can be trebled in cases of intentional and knowing violations.

9.      Bronstin manufactured a TCPA claim here in an attempt to extract a payment from Defendant and its independent vendors.

### A. Bronstin's Fraudulent Lead.

10.     Among the services Clear Link offers are health insurance services for consumers who express interest in those services.  To communicate effectively with consumers, and avoid litigation for alleged TCPA violations, Defendant and its vendors only call persons who are interested in its services and affirmatively consent to receive calls about the same.  Defendant further requires that its independent marketing vendors comply with the TCPA and only call persons who affirmatively consent to receive calls from Defendant.

11.     One way consumers consent to receive calls is by completing lead forms online.  The lead forms are completed by consumers who affirm that they are interested in a Defendant's services and agree to receive certain kinds of calls.  Defendant thus relies on consumers to provide truthful information when completing a lead form and requesting to be contacted so that Defendant and its independent vendors only contact persons who are interested in its services and comply with the TCPA.  However, there are some bad actors who complete lead forms for the sole purpose of luring companies into calling them and then alleging the same call they requested amounts to a TCPA

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   violation (disclaiming any knowledge of the very same lead the bad actor completed).

2          12.    Bronstin is one such bad actor.  Specifically, on July 18, 2023, Bronstin,

3   or someone acting on his behalf, visited https://www.getmedicarequotesnow.com and

4   provided Defendant, among other companies, express, written consent to contact the

5   Subject Number by "artificial or prerecorded voice" with "insurance quotes, products

6   and services including Medicare Supplement, Medicare Advantage and Prescription

7   Drug Plans, for marketing purposes" (the "Subject Lead").  The Subject Lead, in full,

8   stated:

9       ☐ By clicking "Submit" I provide my signature to Get Mdicare Quotes Now,
        expressly authorizing up to eight insurance companies or their agents or
10      partner companies to contact me at the number and address provided
        with insurance quotes, products and services including Medicare
11      Supplement, Medicare Advantage and Prescription Drug Plans, for
        marketing purposes, or to obtain additional information for such purposes
12      using an automated telephone dialling system and/or an artificial or
        prerecorded voice, text messages or email (Message and data rates may
13      apply). I understand that this is a solicitation for insurance. Participating
        sales agencies represent Medicare Advantage [HMO, PPO, PFFS] and/or
14      Prescription Drug Plan organizations that are contracted with Medicare.
        Enrollment depends on the plan's contract renewal. Enrollment in the
15      described plan type may be limited to certain times of the year unless you
        qualify for a Special Enrollment Period. My signature is not a condition of
16      purchasing any property, goods, or services and that I may revoke my
        consent at any time. I understand that the insurance companies or their
17      agents or partner companies may confirm my information through the use
        of a consumer report. I agree to this website's Privacy Policy and
18      acknowledge that as a member I will receive insurance quote reminders
        and special promotions sent to me via e-mail. I acknowledge that I have
19      read and understood this website's Terms and Conditions, and I agree to
        be bound by them. "We do not offer every plan available in your area. Any
20      information we provide is limited to those plans we do offer in your area.
        Please contact Medicare.gov or 1-800-MEDICARE to get information on all
21      of your options.

22      I also agree with the Privacy Policy & DNC Policy and understand that
23      GetMedicareQuotesNow.com Will Not Sell My Information.

24

25

26

27         13.    To submit the Subject Lead, Bronstin needed to truthfully enter, among

28   other things, his name, phone number, and address, and affirmatively check a box on a

consent form and click "submit."

14.    In an effort to conceal his fraud, however, Bronstin, or someone acting on his behalf, completed the Subject Lead under the name "Wayne Howard," purportedly of "Calverton, MD 20705."    Upon information and belief, Bronstin submitted the Subject Lead to solicit calls from Defendant and manufacture TCPA claims.

### B. The Subject Call.

15.    After receiving the Subject Lead and in reliance on the information contained therein and the consent Bronstin provided, Allegiant, one of Defendant's independent contractor vendors, provided the Subject Number to one of its sub-vendors.  The sub-vendor then called Bronstin and allegedly played a prerecorded voice message on Subject Call.[2]  The call was then transferred to Defendant.

16.    During the Subject Call, Bronstin continued his fraud by pretending to "Wayne Howard" even though that is not who he is.  And when he did so, he revealed that he completed the lead form or worked with someone who did.  For example, Bronstin volunteered information on that call that he could not have known unless he knew about the Subject Lead.  For example, during the call, Bronstin—unprompted—falsely stated that he lives in the same zip code where the Subject Lead was submitted.  Additionally, without anyone mentioning the name, Bronstin correctly identified that the name on the lead form was spelled "Wayne Howard."

17.    When Bronstin spoke with Jared Blizzard, one of Defendant's employees, he stated that he was interested in Defendant's Medicare services.  However, Mr. Blizzard was unable to continue the call because the social security number Bronstin provided, which upon information and belief was false, did not return any results.  And despite having already identified Defendant, Bronstin agreed to have Mr. Blizzard spend more time investigating this problem and contacting Bronstin to let

---

[2] Defendant contractually prohibited Allegiant from using prerecorded voice messages on calls.

him know the result, even though Bronstin knew that any investigation would be fruitless waste of time because he was perpetrating a fraud.

### C. Mr. Bronstin Initiates the Frivolous Class Action

18.     Despite knowing that he gave express written consent to receive the Subject Call, Bronstin proceeded to file a class action lawsuit against Defendant, and later added Allegiant, alleging that he received prerecorded voice messages that allegedly violated the TCPA.

19.     What's more, Bronstin persisted in this action even after Defendant provided evidence of his fraud.  Bronstin didn't explain how he knew where the Subject Lead was submitted.  Instead, in a further attempt to conceal his fraud, Bronstin now claims that "Wayne Howard" was "the individual who owned his phone previously." ECF No. 45 at 10.  However, the Subject Number has never been associated with a "Wayne Howard."

20.     Thus, in addition to the time Mr. Blizzard wasting his time investigating Bronstin's bogus social security number, Defendant had to spend resources defending this action, including by engaging attorneys, using employee resources, and other costs associated with responding to and defending against Bronstin's fraudulent Class Action Complaint.

### COUNT I – FRAUD

21.     Defendant realleges and incorporates Paragraphs 1 through 21 of these Counterclaims as if fully set forth herein.

22.     Bronstin made false representations of material fact when he (a) submitted the Subject Lead to https://www.getmedicarequotesnow.com under the name "Wayne Howard" of "Calverton, MD 20705" on July 18, 2023 in order to receive calls regarding health insurance services; (b) falsely identified himself as "Wayne Howard" on the Subject Call; and then (c) supplied a fake social security number to Jared Blizzard and agreed to have him investigate why that number didn't return any results.

23.     Bronstin knew that these representations were false and intended that

1    Defendant would rely on that information.

2        24.    Defendant reasonably relied on Bronstin to provide truthful information
3    so that Defendant and its independent contractor vendors would only contact persons
4    legitimately interested in Defendant's services and comply with its obligations under
5    the TCPA.

6        25.    Bronstin submitted the false information and consent knowing that the
7    Subject Number would be contacted by companies that called persons who consented
8    to receive such calls.

9        26.    Bronstin has now filed this action against Defendant claiming that it is
10   vicariously liable for Allegiant, an independent third-party vendor that allegedly
11   contacted Bronstin on behalf of Defendant on July 25, 2023, and that call allegedly
12   violated the TCPA.  But in doing so, Bronstin continues to use his misrepresentations
13   and false information to pursue his meritless claims against Defendant.

14       27.    Because of Defendant's justifiable reliance on Bronstin's false
15   representations, Defendant has suffered damages in the form of monetary and non-
16   monetary harm, including harm to its valuable good will and reputation, client
17   relationships, time that Mr. Blizzard spent investigating Bronstin's bogus social
18   security number, and other financial damages, including the legal fees and costs
19   associated with investigating and defending against Bronstin's claims.

20                        **COUNT II – BREACH OF CONTRACT**

21       28.    Defendant realleges and incorporates Paragraphs 1 through 18 of these
22   Counterclaims as if fully set forth herein.

23       29.    By checking the box next to the consent form and clicking submit on
24   https://www.getmedicarequotesnow.com, Bronstin entered into a binding "clickwrap"
25   agreement" with Defendant, consenting to receive calls to the Subject Number by
26   "artificial or prerecorded voice" with "insurance quotes, products and services
27   including Medicare Supplement, Medicare Advantage and Prescription Drug Plans, for
28   marketing purposes."

30.    As consideration for Mr. Bronstin's consent to receive such calls, Defendant spent resources identifying health insurance policies that were available in "Wayne Howard['s]" area and would best suit his needs, along with licensed brokers who could market those policies.

31.    Bronstin breached his agreement by submitting the Subject Lead with false contact information and then suing Defendant for the very same call he requested.

32.    Bronstin's breach caused Defendant to sustain a financial loss, including but not limited to lost time, costs, and legal fees associated with responding to Bronstin's allegations and defending against his frivolous and fraudulent claims.

33.    Defendant is entitled to a judgment against Mr. Bronstin in an amount to be proven at trial, but in no event less than the cost of attorneys' fees and court costs incurred in defending this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE,    Defendant/Counterclaim-Plaintiff    Clear    Link    prays    for judgment as follows:

- That Plaintiff take nothing from Defendant by reason of the Complaint and that judgment be entered in favor of Defendant;
- For dismissal of the Plaintiff's claims with prejudice;
- That the Court award Defendant damages, including costs and reasonable attorneys' fees for Bronstin's fraud and breach of contract; and
- For such other relief as the Court deems just and proper.

*[Signature on Following Page]*

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    Dated:  April 1, 2024

2                                                Respectfully submitted,

3

4                                                */s/Alexander D. Terepka*
                                                 Alexander D. Terepka
5                                                Patrick J. Fitzgerald (*pro hac vice*)
                                                 WATSTEIN TEREPKA LLP
6                                                515 South Flower Street, 19th Floor
                                                 Los Angeles, CA 90071
7                                                T: 404-782-9821
                                                 E: Alex@wtlaw.com
8                                                pfitzgerald@wtlaw.com
9
                                                 *Counsel for Clear Link*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

## <u>CERTIFICATE OF SERVICE</u>

2

I HEREBY CERTIFY that on April 1, 2024, I caused to be electronically filed a

3

true and correct copy of the foregoing document with the Clerk of the Court using

4

5

CM/ECF, and it is being served this day on all counsel of record via transmission of

6

Notice of Electronic Filing generated by CM/ECF.

7

*/s/Alexander D. Terepka*

8

Alexander D. Terepka

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLEAR LINK'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

## <u>PROOF OF SERVICE</u>

2

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

3

4      I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is listed above.

5

6      On **April 1, 2024**, I served the foregoing document(s) on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

7

8   ☐   **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

9

10

11

12

13  ☒   **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

14

15

16  ☐   **(BY E-MAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

17

18  ☐   **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

19

20

21  ☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

22

23      Executed on April 1, 2024.

24

25              _/s/ Alexander Terepka_____
              Alexander Terepka

26

27

28

1

**SERVICE LIST**

2   Dana J. Oliver, Esq.
    dana@danaoliverlaw.com
3   OLIVER LAW CENTER, INC.
4   8780 19th Street #559
    Rancho Cucamonga, CA 91701
5

6   Anthony I. Paronich
    anthony@paronichlaw.com
7   PARONICH LAW, P.C.
8   350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit B

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br> Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

RELEVANT ALLEGATIONS AND FACTS ..........................................................2

I.    The "Factual" Allegations in the FAC ..........................................................2

II.    Viasat's Extrinsic Evidence ........................................................................4

APPLICABLE LEGAL STANDARDS ....................................................................5

I.    Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction.......................5

II.    Rule 12(b)(6) – Failure to State a Claim for Relief .........................................6

ARGUMENT ..........................................................................................................7

I.    The Entire FAC Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows That Plaintiff Lacks Article III Standing. ..............................7

II.    In the Alternative, The Entire FAC Should Be Dismissed Under Rule 12(b)(6) For Failure to Plausible Allege a Theory of TCPA Liability. ..........................10

III.    Any Dismissal Should Be With Prejudice. ...................................................19

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Aaronson v. CHW Grp., Inc.*,
    2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...................................10, 11, 12, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................7, 17

*Baccari v. Carguard Admin., Inc.*,
    2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .................................................passim

*Ballentine v. U.S.*,
    486 F.3d 806 (3d Cir. 2007) ..............................................................................5

*Bank v. Alleviate Tax, LLC*,
    2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024).....................................15, 16, 18

*Bank v. Vivint Solar, Inc.*,
    2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*,
    2019 WL 1306064 (Mar. 22, 2019)...................................................................16

*Barnes v. SunPower Corp.*,
    2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ...........................................14, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................6

*Bennett v. Celtic Ins. Co.*,
    2022 WL 865837 (N.D. Ill. Mar. 23, 2022) .....................................................12

*Bridges v. Torres*,
    809 F.App'x 69 (3d Cir. 2020)...........................................................................7

*Brown v. Nano Hearing Tech OPCP, LLC*,
    2024 WL 3367536 (S.D. Cal. July 9, 2024) .....................................................15

*Brownlee v. Allstate Ins. Co.*,
    2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ...................................................17

*Childress v. Liberty Mut. Ins. Co.*,
    2018 WL 4684209. (D.N.M. Sept. 28, 2018)....................................................18

*CNA v. U.S.*,
    535 F.3d 132 (3d Cir. 2008) ...............................................................................6

*Constitution Party of Pennsylvania v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) ...............................................................................6

*Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006) ..................................................................7

*Cunningham v. Daybreak Solar Power, LLC*,
    2023 WL 3985245 (N.D. Tex. June 13, 2023) ..........................14, 18

*Dobronski v. Russo*,
    2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ..............................15

*Doyle v. GoHealth, LLC*,
    2023 WL 3984951 (D.N.J. Mar. 30, 2023) ..............................passim

*Frame v. Cal-W. Reconveyance Corp.*,
    2011 WL 3876012 (D. Ariz. Sept. 2, 2011) ....................................19

*Frank v. Cannabis & Glass, LLC*,
    2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ................................12

*Hall v. Xanadu Mktg., Inc.*,
    682 F. Supp. 3d 1278 (N.D. Ga. 2023) ............................................8

*Hurley v. Messer*,
    2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ................................18

*In re Dish Network, LLC*,
    2013 WL 1934349, 28 FCC Rcd. 6574 (2013) ..............................11

*In re Rules & Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (2015) ..............................................................7, 12

*Katz v. Caliber Home Loans, Inc.*,
    2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ..............................13

*Landy v. Nat. Power Sources, LLC*,
    2021 WL 3634162 (D.N.J. Aug. 17, 2021) ..............................10, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................6, 9

*Matthews v. Senior Life Ins. Co.*,
    2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ................................16

*Metzler v. Pure Energy USA LLC*,
    2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ..................................14

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ............................................................7

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ............................................................6

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)...................................................13

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ......................................................11

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ....................................................10

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)...........................................13, 18

*Santiago v. Warminster Township*,
629 F.3d 121 (3d. Cir. 2010) ................................................................................7

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .......................................12, 16, 17

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020)....................................................11

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)................................................................................................9

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ......................................10, 11, 12, 16

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020)...............................................10, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................6

*Stewart v. Network Cap. Funding Corp.*,
549 F. Supp. 3d 1058 (C.D. Cal. 2021) ................................................................8

*Warden v. Woods Servs.*,
2020 WL 1289194 (E.D. Pa. Mar. 17, 2020) .....................................................19

*Winner v. Kohl's Dept. Stores, Inc.*,
2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) .......................................................8

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
80 F. Supp. 3d 610 (E.D. Pa. 2015)....................................................................18

## STATUTES

47 U.S.C. § 227(c)(5)...............................................................................................1

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2).........................................................................................1

47 C.F.R. § 64.1601(e)..............................................................................................1

iv

United States Constitution, Article III ...........................................................5, 8, 9, 10

**RULES**

Fed. R. Civ. P. 12(b)(1).........................................................................................passim

Fed. R. Civ. P. 12(b)(6).........................................................................................passim

## **INTRODUCTION**

Like its faulty predecessor, Plaintiff's First Amended Complaint (Dkt. 21, "FAC") conclusorily alleges that Viasat, Inc. violated certain provisions of the Telephone Consumer Protection Act ("TCPA") by placing or causing others to place two calls to his cell phone. *See generally* Dkt. 21.[1] However, extrinsic evidence submitted herewith proves that ***Plaintiff did <u>not</u> receive <u>any</u> calls from or on behalf of Viasat***, and thus lacks Article III standing to pursue this action.[2] At bottom, Plaintiff's alleged "injuries" are ***non-existent*** and not attributable to Viasat even at the most basic level per this evidence, let alone "fairly traceable" to Viasat as required for Article III standing. Consequently, Plaintiff's entire FAC should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction. *See Baccari v. Carguard Admin., Inc*., 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (granting defendant's 12(b)(1) factual standing challenge in similar TCPA case).

Alternatively, Plaintiff's FAC remains facially defective despite his scant amendments, and thus it should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Indeed, it is well-accepted that all TCPA plaintiffs must first plausibly allege a theory of TCPA liability (direct or vicarious liability) to avoid dismissal at the

---

[1] Count I (¶¶ 59-63) invokes the National "Do Not Call" ("DNC") Registry rules. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Count II (¶¶ 65-79) invokes 47 C.F.R. § 64.1601(e), containing technical regulations on Caller ID requirements.
[2] *See generally* Declaration of Greg Henderson ("Henderson Decl.") and Declaration of A. Paul Heeringa ("Heeringa Decl."), and exhibits, attached hereto.

pleadings stage in any case, regardless of whether they have pled facts supporting other elements of their claims. Here, even after amending, Plaintiff's FAC still takes the same flawed "either/or" pleading approach that has been rejected by myriad federal courts as insufficient for this purpose, and contradictorily alleges that the subject calls were placed <u>either</u> by Viasat <u>or</u> by unidentified third-party "affiliates, agents, or other persons or entities acting on [its] behalf." Dkt. 21, ¶¶ 51, 60, 62, 67, 69. All this underscores that Plaintiff is merely throwing darts at a proverbial dart board here, hoping to limp his way into discovery and find a viable liability theory eventually, and not pleading actual facts in accordance with federal pleading standards as required. Thus, for the reasons outlined above and discussed below, Plaintiff's entire FAC should be dismissed <u>with prejudice</u> under Rules 12(b)(1) or 12(b)(6).

## <u>RELEVANT ALLEGATIONS AND FACTS</u>

### I.    <u>The "Factual" Allegations in the FAC</u>

In pertinent part, the FAC concludes Plaintiff "received at least two telemarketing calls from the Defendant on April 19, 2024" made to his purported "residential" cell phone number, which has supposedly been on the National DNC Registry since February 23, 2021. Dkt. 21, ¶¶ 20, 24, 26. The first call allegedly occurred at 2:12 p.m. and originated from someone using the number (931) 413-8533, which he now concludes is a "spoofed" (*i.e.*, fake) number. *Id.* ¶ 27. "During this call, the Plaintiff spoke with an [unidentified] individual who was attempting to sell

2

Viasat's internet services in Plaintiff's local area." *Id.* ¶ 28. Yet, Plaintiff does <u>not</u> allege this caller indicated he/she was a Viasat <u>employee</u>. *Id.* Plaintiff hung up to "indicat[e] that he was not interested." *Id.* ¶ 29.

The second call at issue allegedly occurred two minutes later and originated from someone using a different phone number, (530) 235-8385, which Plaintiff also now concludes is a "spoofed" number. *Id.* ¶ 31. This second call supposedly "had the same representative as the first call" and that this person stated to him: "'[Y]our call was declined. I'm sorry. I have my verifier on line. He will assess more information.'" *Id.* This supposed "verifier" (who is likewise not identified) purportedly "asked various questions about the Plaintiff's existing internet services" generally. *Id.* ¶ 32. But this unknown person apparently did <u>not</u> mention Viasat. *Id.*

Plaintiff now avers he was subsequently "transferred to a sales specialist" on the second call. *Id.* ¶ 33. This unidentified person somehow "confirmed they were calling from Viasat," "quoted a monthly price of $94.99 for Viasat's internet services," and stated he "would need to provide a $300 down payment in advance." *Id.* Plaintiff does <u>not</u> allege this person indicated he/she was a Viasat employee, either. *Id.*

Plaintiff's FAC also now includes what appears to be partial "screenshots" of the subject calls, neither of which identify Viasat. *Id.* ¶ 35. And as before, Plaintiff vaguely avers his counsel has the ability to query "the Caller ID database of the calling carrier" to show what caller ID information would have been displayed, and concludes

that "Defendant's calling carrier" ("IP Horizon") was "transmitting a geographic location instead of the caller's name." *Id.* ¶ 40. However, Plaintiff still provides no factual support for his conclusion that IP Horizon has any connection to Viasat. *Id.*

Nevertheless, based on these threadbare allegations, and in a transparent attempt to avoid dismissal on direct and vicarious liability grounds in response to Viasat's original dispositive motion on those points (*see* Dkt. 11 at 9-16), Plaintiff states he only "alleges direct liability here" based solely on the alleged content of the subject calls. Dkt 21, ¶ 39. Yet, Plaintiff then quickly proceeds to contradict the foregoing pronouncement and makes plain that he is not just alleging a direct liability theory. In fact, like his original pleading, Plaintiff's FAC still baldly concludes, with no supporting facts, that <u>either</u> "Defendant" <u>or</u> "***any possible other affiliates, agents, or other persons or entities acting on Defendant's behalf, as discovery may reveal***" violated the TCPA. *Id.* ¶¶ 60, 62, 67, 69 (emphasis added); *see also id.* ¶ 51 (proposed class definitions, referring to calls "from or on behalf of Defendant").

## II.   <u>Viasat's Extrinsic Evidence</u>

Extrinsic evidence tells a much different story and contradicts the foregoing. In reality, Plaintiff did <u>not</u> receive <u>any</u> calls from or on behalf of Viasat, as alleged. *See* Henderson Decl., ¶¶ 8-14. Indeed, Viasat (i) does <u>not</u> own, use, or have any connection with the numbers allegedly used to call him, (ii) has <u>no</u> records of any calls being made to Plaintiff's alleged number on its behalf, (iii) does <u>not</u> make any outbound

marketing calls at all (and in fact does not have a telemarketing program), and (iv) even contractually <u>forbids</u> others from making such calls on its behalf. *Id.*

Records produced in discovery by third parties—the "carrier" that Plaintiff's counsel "queried" (IP Horizon) and the carrier for Plaintiff's alleged cell phone number (T-Mobile)—further confirm that Viasat has no meaningful connection to the phone calls of which Plaintiff complains in this case. *See* Heeringa Decl., ¶¶ 6-10 and Exs. A-F thereto. These records show, *inter alia*, that (i) Viasat does not own or use the two numbers purportedly used to call Plaintiff ((931) 413-8533 and (530) 235-8385), and (ii) those numbers were not used to call Plaintiff's alleged cell number, either on the date on question (April 19, 2024) or at all. *See id*. **In short, this evidence shows that the two alleged calls in the FAC simply did not occur.**

<u>**APPLICABLE LEGAL STANDARDS**</u>

**I.**    <u>**Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction**</u>

Rule 12(b)(1) mandates dismissal of a complaint for lack of federal subject matter jurisdiction where a plaintiff fails to establish his or her standing under Article III of the United States Constitution. *See, e.g., Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). To show Article III standing and avoid dismissal under Rule 12(b)(1), Plaintiff bears the sole burden of demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there is a causal connection between the injury and the alleged unlawful conduct complained of (*a.k.a.* "causation" or "traceability"), and

(3) the injury is capable of being redressed via a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Relevant here, the second element requires that the alleged injury be "fairly traceable" only to the defendant's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

Further, a defendant can raise either a "facial" or a "factual" challenge to a plaintiff's standing. *Baccari*, 2022 WL 3213839, at *2 (citations omitted). A factual challenge, as Viasat makes here, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. U.S.*, 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). Put differently, a factual challenge argues "that there is no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a factual challenge, "evidence outside of the pleadings may be weighed and considered, and 'no presumptive truthfulness attaches' to the facts pled in the [plaintiff's] complaint." *Baccari*, 2022 WL 3213839, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II.  Rule 12(b)(6) – Failure to State a Claim for Relief

It is axiomatic bare assertions or conclusory allegations cannot avoid a dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the

requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this Court must accept well-pled facts as true under Rule 12(b)(6), it need not accept conclusory allegations or naked legal conclusions, nor draw unwarranted or unreasonable inferences from the FAC. *See, e.g., Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

## ARGUMENT

As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose" as a beneficial remedial statute, and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this potential for abuse by profit-seeking plaintiffs and their counsel, federal courts across the country (particularly in this Circuit) have strictly held TCPA plaintiffs to applicable pleadings standards. Plaintiff here fails to satisfy those standards and, more fundamentally, lacks standing as a factual matter.

## I.    The Entire FAC Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows That Plaintiff Lacks Article III Standing.

As a threshold matter, Plaintiff's FAC must be dismissed under Rule 12(b)(1) because extrinsic evidence shows that that Plaintiff did not suffer any injury <u>at all</u>, let alone one "traceable" to Viasat. Plaintiff therefore lacks standing to pursue this action.

7

The *Baccari* case cited above is highly instructive on this point, as the facts are closely analogous to those here. There, the plaintiff filed a TCPA complaint claiming a third-party made certain calls on behalf of the defendant. Like in this case, those claims were supported by a variety of purely conclusory allegations. *See* 2022 WL 3213839, at *3. The defendant asserted an Article III factual standing challenge under Rule 12(b)(1), and submitted extrinsic evidence, including a sworn declaration from a corporate officer, "directly contradicting the bases for [plaintiff's] standing." *Id*. This evidence showed that the defendant had no connection to the alleged calls. In fact, just like Viasat does, the *Baccari* defendant "contractually prohibited" the alleged third-party caller from making telemarketing calls, thereby "break[ing] the factual link" between the defendant and the plaintiff's alleged harm. *Id*. Accordingly, the *Baccari* court dismissed the entire complaint there under Rule 12(b)(1). *Id*.[3]

Here, Viasat's extrinsic evidence is far stronger than that in *Baccari*. Like *Baccari*, Viasat has shown it has no relevant connection with the two alleged calls in this case, and thus that Plaintiff did not suffer any injury-in-fact at all, let alone an injury traceable to Viasat as required for standing. *See* Henderson Decl., ¶¶ 8-14. To the contrary, the plain reality is that Viasat (i) does <u>not</u> own, use, or have any

---

[3] *Baccari* does not stand alone here, and other district courts in this Circuit and nationally have dismissed TCPA cases in response to factual standing challenges under Rule 12(b)(1) where, as here, evidence showed the plaintiff lacked an injury traceable to the defendant. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Stewart v. Network Cap. Funding Corp*., 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023). This Court should rule similarly in this case.

connection with the two numbers used to call Plaintiff, (ii) has <u>no</u> records of any calls being made to Plaintiff by or on behalf of Viasat, (iii) does <u>not</u> make any outbound marketing calls at all (indeed, its marketing program is consumer-initiated, whereby consumers must make *inbound* calls to buy its services), and (iv) contractually <u>forbids</u> others from making such calls on its behalf, like the defendant in *Baccari*. *Id*.

Evidence obtained from key third parties here goes even beyond *Baccari*, and puts the final nail in the proverbial coffin on Plaintiff's standing. This evidence not only confirms Viasat has no connection with either of the alleged callers' numbers, but also shows ***Plaintiff did not actually receive the two subject calls on his cell phone***. *See* Heeringa Decl., ¶¶ 6-10 & Exs. A-F. In short, ***they simply did not happen***.

Even if the calls had happened and Plaintiff was offered Viasat's services by a third party (which is not conceded), that would not change the result. The bottom line per the evidence is that Viasat did not make, cause, authorize, direct, control, or even know about (and indeed expressly forbade) such calls. *See* Henderson Decl., ¶¶ 8-14. In all, therefore, Plaintiff's alleged harm (if any) from the calls at issue is not traceable to any conduct by Viasat. *See Lujan*, 504 U.S. at 560-61 (an injury not fairly traceable to the defendant for Article III standing purposes if it is "'th[e] result [of] the ***independent action of some third party*** not before the court'") (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41–42 (1976)).

All told, this evidence firmly "break[s] the factual link" between Viasat and Plaintiff's alleged injury. *Baccari*, 2022 WL 3213839, at *3. Consequently, Plaintiff lacks Article III standing as a factual matter, which deprives this Court of federal subject matter jurisdiction. The FAC should thus be dismissed under Rule 12(b)(1).

## II.    In the Alternative, The Entire FAC Should Be Dismissed Under Rule 12(b)(6) For Failure to Plausible Allege a Theory of TCPA Liability.

While the Court need not reach the point given Plaintiff's clear lack of standing, Plaintiff's entire FAC is also subject to dismissal on its face under Rule 12(b)(6) because Plaintiff fails to plead plausible facts supporting a theory of TCPA liability.

As myriad district courts in and beyond this Circuit have recognized, there are only two potential theories of TCPA liability that must be adequately plead in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): direct liability and vicarious liability. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (each dismissing). Thus, "for a person to 'make' [or 'initiate'] a call under the TCPA [and thus be subject to liability], the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019).

10

Further, it is also well-settled that failure to allege facts, pled in accordance with *Iqbal/Twombly*, supporting such theories warrants a <u>complete</u> dismissal of <u>any</u> TCPA claim at the pleadings stage regardless of whether there are facts pled supporting other essential elements of their claims. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at \*9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject communications]—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). Here, Plaintiff's FAC fails to allege either theory.

As to direct liability, federal law is clear that the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). *Accord Direct Building Supplies*, 2021 WL 4623275, at \*3 (dismissing on this basis and citing, *inter alia*, *Aaronson*); *Vision Solar*, 2020 WL 5632653, at \*3 (same).

But it is not enough to allege that a third party placed calls on the defendant's behalf to state a direct TCPA liability theory, which "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network,*

*LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). In short, there must be a "direct connection between a person or entity and the making of a call" for direct liability. 30 FCC Rcd. at 7980. An <u>indirect</u> connection, logically and legally, is not direct liability.

Here, Plaintiff concludes he "received at least two telemarketing calls from the Defendant on April 19, 2024" that were "made" by Viasat. Dkt. 21, ¶¶ 26-34. When properly applying federal pleading standards in TCPA cases, however, courts have correctly found that "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" without further factual enhancement "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal on this basis under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Courts in and beyond this Circuit have consistently reached the same sound conclusion and have often dismissed such faulty claims at the pleadings stage on this basis. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3 ("'[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone.'") (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)); *Aaronson,* 2019 WL 8953349, at *2 ( "at the pleadings stage, plaintiff must

allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue" as required); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where "[p]laintiffs have not pleaded any *facts* supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)). This Court should do the same.

In fact, federal courts have widely recognized that even a call allegedly "from" the defendant, as Plaintiff avers here, alone is not enough to plead a direct TCPA liability theory. *See, e.g., Doyle,* 2023 WL 3984951, at *4–6 (dismissing, holding allegations the alleged calls were "from Defendant, its employees and/or agents" were insufficient for directly liability); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls").

That the caller mentioned the defendant's name or products, or that the defendant sent a follow up communication, also does not plausibly establish direct TCPA liability alone. *See, e.g., Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing, use of defendant's name in voicemail insufficient); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received an email from defendant); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *5-6 (S.D.N.Y. Feb. 6, 2023) (dismissing where plaintiff alleged facts suggesting the call was "related to the Defendant" without further factual enhancement, which "did not allow the Court to infer that Defendant—as opposed to a telemarketer working to drum up business for Defendant—[physically] made the call at issue."). That is because courts recognize companies often hire third parties to handle their outbound communications. Calls from a vendor would naturally identify the defendant by name, and may result in subsequent communications (emails) identifying the defendant, as Plaintiff claims. Such calls are not "physically placed" by the defendant itself directly and thus cannot support "direct" TCPA liability. In sum, these cases show how the call content alone is not dispositive of direct TCPA liability at the pleadings stage.

As applied here, it is readily apparent that Plaintiff tries to skirt the issue by adopting a flawed "either/or" pleading approach, showing that he is not just alleging

"direct liability" as he suggests. *See, e.g.,* Dkt. 21, ¶¶ 51, 60, 62, 67, 69 (concluding the subject calls were placed either by Viasat itself "and/or" by unidentified third party "affiliates, agents, or other persons or entities acting on [its] behalf."). But it is well established that allegations of this type—"defendant or its agent called me"—are insufficient to plausibly allege <u>any</u> TCPA liability theory. *See*, *e.g.*, *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant physically placed each call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing, holding that plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any theory of TCPA liability); *Doyle,* 2023 WL 3984951, at *4–6 (ruling similarly).

As these cases and many others show, the precise identity of the caller is the critical threshold element for establishing direct TCPA liability and, at the pleadings stage, this requires factual allegations (not conclusions) plausibly suggesting the defendant itself placed the subject calls. As one court noted, "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Plaintiff here has done no better.

Moreover, with respect to direct liability, Plaintiff's FAC remains more notable for what facts it still <u>omits</u> on this front. For example, even after amending, Plaintiff does <u>not</u> allege any facts indicating, *inter alia*, that (i) Viasat owns or uses the alleged callers' numbers, (ii) he called those numbers back and reached Viasat, (iii) he ever spoke to a Viasat employee, or (iv) Viasat's name appeared on his Caller ID (in fact, he pleads none was displayed). Such facts, if pled, could support an inference of direct TCPA liability, as other courts have recognized. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3; *Doyle*, 2023 WL 3984951, at *4–6; *Aaronson*, 2019 WL 8953349, at *2; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing on this basis where complaint lacked such identifying facts). That Plaintiff did not plead such facts in this case after amending, which should be within his knowledge if they exist, leads to the inescapable conclusion that such facts do not exist and further warrants dismissal of his FAC on direct liability grounds. *See also Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (holding "[a]s a party to these calls, [p]laintiff[s] 'should be able to provide greater detail" in their complaints) (quoting *Scruggs,* 2020 WL 9348208, at *3).

Plaintiff's unsupported conclusion that "Defendant appears to have spoofed the numbers" used to "hide its identity" (Dkt. 21, ¶ 42) is of no moment, does not meet federal pleading standards, and does not save him from dismissal on this front. *See,*

*e.g., Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing on this basis where caller sold the same type of product as the defendant, noting: "Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff.").

The "death knell" to Plaintiff's attempt to plausibly allege a direct TCPA liability theory against Viasat here are his new allegations that: (a) he needs "discovery" to confirm who actually called him (*i.e.*, either Viasat or a third party "agent" or the like); and (b) the second alleged call was "transferred" by the initial unidentified caller to someone else "who confirmed they were calling from Viasat." Dkt. 21, ¶¶ 33, 60; *see also id.* ¶¶ 42, 62, 67, 69 (additional "discovery" references).

On the one hand, Plaintiff's multiple pled suggestions that he "needs discovery to confirm who called him and how that person is related to" Viasat simply shows he is "on an impermissible fishing expedition" and not pleading facts in accordance with federal pleading standards; and it further confirms he actually does "not know who called" him and thus has not adequately pled a direct TCPA liability theory. *Scruggs,* 2020 WL 9348208, at *6-7, 10 (dismissing TCPA claim under 12(b)(6) for this reason). In short, the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. *See also*

*Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (recognizing plaintiffs must plead TCPA liability theories without the benefit of discovery).

On the other hand, even if the Court takes these conclusory allegations as true (it should not), it is well accepted that ***transferring*** an initial call ***to*** the defendant— which is all Plaintiff alleges occurred here, at best—is not the functional equivalent of the defendant itself physically placing a call directly, as many courts have found; rather, it is the defendant ***receiving*** the call in such cases. *See, e.g., Landy,* 2021 WL 3634162, at *3; *Bank*, 2024 WL 1332635, at *4; *Barnes,* 2023 WL 2592371, at *3; *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209. At *4 (D.N.M. Sept. 28, 2018) (each dismissing TCPA claims on direct liability grounds, among others, under Rule 12(b)(6) where the initial calls were allegedly transferred).

Lastly, beyond legal buzzwords suggestive of agency (which are not facts), Plaintiff does not plead anything supporting an inference Viasat had any "control" over any third party "agent" and its call campaign, which is the touchstone of agency (and thus vicarious liability) under the TCPA and must also be pled to avoid dismissal. *See, e.g., Doyle.,* 2023 WL 4188313, at *4; *Cunningham,* 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6 (each dismissing for same reasons). Absent such facts, dismissal of the FAC on vicarious liability grounds is required. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead facts supporting agency theories.).

18

## III.    <u>Any Dismissal Should Be With Prejudice.</u>

Finally, courts in this Circuit and elsewhere routinely dismiss complaints with prejudice pursuant to Rule 12(b)(6) where a plaintiff already had a chance to amend and amendment failed to cure the complaint's deficiencies. *See, e.g., Warden v. Woods Servs.,* 2020 WL 1289194, at *3 (E.D. Pa. Mar. 17, 2020); *Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, Plaintiff already amended. But despite being represented by counsel and having had the benefit of Viasat's prior dispositive motion, he did not cure all the fatal defects Viasat identified when amending, and in some ways made those defects worse by adding more inconsistent allegations to his FAC that undermine his conclusions. Nor can Plaintiff amend around the fact that the evidence here confirms Viasat did not call him and therefore he lacks standing for his claims. In short, Plaintiff has already had two bites at the apple. A third should not be permitted, and Plaintiff's FAC should be dismissed with prejudice.

## <u>CONCLUSION</u>

For these reasons, Plaintiff's entire FAC should be dismissed with prejudice.

Dated: August 29, 2025

Respectfully submitted,

By: */s/ A. Paul Heeringa*

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## LOCAL RULE 7.1 CERTIFICATE

The undersigned hereby certifies that Defendant's counsel conferred with Plaintiff's counsel on the foregoing Motion on August 26, 2025, and Plaintiff's counsel indicated in writing that Plaintiff does not concur with the relief sought herein.

Dated: August 29, 2025        */s/ A. Paul Heeringa*
                              A. PAUL HEERINGA

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **4,999 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

Dated: August 29, 2025        */s/ A. Paul Heeringa*
                              A. PAUL HEERINGA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: August 29, 2025        */s/ A. Paul Heeringa*
                                   A. PAUL HEERINGA

Exhibit C

Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

Attorney for Plaintiff and Putative Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CLEAR LINK INSURANCE AGENCY, LLC and ALLEGIANT HOLDINGS, LLC<br><br>        Defendants. | Case No. 8:23-cv-1742-CJC-ADS<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Asher Bronstin ("Mr. Bronstin"), by his undersigned counsel, for this class action complaint against Clear Link Insurance Agency, LLC ("Clear Link") and Allegiant Holdings, LLC ("Allegiant") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

# I.   INTRODUCTION

1.    <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.    This case involves a campaign by Clear Link to make pre-recorded calls to generate new customers, in alleged violation of the TCPA.

3.    Those calls were made by Allegiant.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.    PARTIES

5.  Plaintiff is an individual.

6.  Defendant Clearlink Insurance, LLC is a limited liability company that offers insurance in this District, just as it did with the Plaintiff.

7.  Defendant Allegiant Holdings, LLC is a limited liability company that makes pre-recorded calls into California, as it did with the Plaintiff.

## III.    JURISDICTION AND VENUE

8.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.  <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendants because they made telemarketing calls into this District and offer insurance as a result of those calls.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred into this District.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

11.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.    The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

14.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.     Unsolicited Telemarketing to Plaintiff**

16.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     Plaintiff's cellular telephone number is (760) 705-XXXX.

18.     Mr. Bronsin uses the number for personal, residential, and household reasons.

19.     Mr. Bronsin never provided his prior express written consent to receive calls from the Defendants.

20.     Mr. Bronsin never did business with the Defendants.

21.     Despite this, the Defendants sent him multiple pre-recorded telemarketing calls.

22.     This included pre-recorded calls on at least July 25, 2023.

23.     The recorded message indicated that the caller was contacting the recipient about insurance services.

24.     The recorded message was generic, not personalized to the recipient, and was designed to secure new customers.

25.     The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep play when the call recipient began talking (c) the robot had a generic monotone voice.

26.     During the July 25, 2023 call, following the pre-recorded message, the Plaintiff spoke with Jared Blizzard, who is an employee of the Defendant.

27.     Mr. Blizzard promoted supplemental Medicare insurance, which is an insurance offering of the Defendant.

28.     Mr. Blizzard sent the Plaintiff an e-mail the following day to follow up on the offer he made to the Plaintiff.

29.     The telemarketing alleged herein: (A) invaded Plaintiff's privacy and solitude; (B) wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff' phone line; and (E) harassed Plaintiff.

## **CLEAR LINK'S VICARIOUS LIABILITY**

30. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

31. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

32. The FCC has instructed that sellers such as Clear Link may not avoid liability by outsourcing telemarketing to third parties, such as Allegiant:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

33.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

34.     Clear Link is liable for telemarketing calls placed by Allegiant to carry out calling for Clear Link to generate customers for Clear Link.

35.     Clear Link authorized Allegiant to send telemarketing calls and transfer the call recipient directly to Clear Link.

36.     Clear Link controls the day-to-day activities of Allegiant telemarketing for Clear Link.

37.     Clear Link restricts the geographic footprint into which its telemarketing vendors, including Allegiant, can cause calls to be made.

38.     Clear Link provided the specific criteria for the leads it would accept and required its vendors, including Allegiant, to adhere to those criteria.

39.     Indeed, Clear Link has previously received complaints of telemarketing conduct by their vendors.

40.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently

privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

Evidence of circumstances pointing to apparent authority on behalf of the

telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the

telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## V.    CLASS ACTION ALLEGATIONS

41.    <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3),

Plaintiff bring this case on behalf of the Class (the "Class") defined as follows:

> **<u>Robocall Allegiant Class</u>:** All persons within the United States: (1) to whose cellular telephone number (2) Allegiant (or an agent acting on behalf of Allegiant) placed a call (3) within the four years prior to the filing of the Complaint (4) using a pre-recorded message.

> **<u>Robocall Allegiant  ClearLink Sub-Class</u>:** All persons within the United States: (1) to whose cellular telephone number (2) Allegiant (or an agent acting on behalf of Allegiant) placed a call (3) within the four years prior to the filing of the Complaint (4) using a pre-recorded message (5) that was transferred to ClearLink.

42.    Excluded from the Class are counsel, Defendants, any entities in

which Defendants have a controlling interest, Defendants' agents and employees,

any judge to whom this action is assigned, and any member of such judge's staff

and immediate family.

43.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

44.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

45.     Individual joinder of these persons is impracticable.

46.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

47.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

48.     Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

49.     This class action complaint seeks injunctive relief and money damages.

50.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

a.      whether Defendants systematically made pre-recorded telemarketing calls;

b.      whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

c.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

51.    Plaintiff's claims are typical of the claims of the Class.

52.    Plaintiff's claims, like the claims of Class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

53.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

54.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of

the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

55.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

<div align="center">

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(3)**
**(On Behalf of Plaintiff and the Pre-Recorded Call Class)**

</div>

56.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

57.     The foregoing acts and omissions of the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf

constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages.

58.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.    If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

60.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.      An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future;

F.      An award to Plaintiff and the Class of damages, as allowed by law; and

G.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VII.    SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.


RESPECTFULLY SUBMITTED AND DATED this 24th day of January, 2024.

1
2
3
4
5

By: /s/ Anthony I. Paronich
    Anthony I. Paronich, *Pro Hac Vice*
    anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 738-7080
    Facsimile: (617) 830-0327

    *Attorneys for Plaintiff and the Proposed Classes*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit D

1
2
3
4
5

Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

6
7

Attorney for Plaintiff and Putative Class

8
9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13

ASHER BRONSTIN, individually
and on behalf of all others similarly
situated,

14

Plaintiff,

15

v.

16
17

VERT LAKE ELSINORE, LLC
d/b/a LEMONADE

18

Defendant.

Case No.

**COMPLAINT FOR
INJUNCTION AND DAMAGES**

**Class Action**

**JURY TRIAL DEMAND**

19
20
21
22
23
24
25
26
27
28

Plaintiff Asher Bronstin ("Mr. Bronstin"), by his undersigned counsel, for

this class action complaint against Vert Lake Elsinore, LLC d/b/a Lemonade

("Defendant" or "Lemonade") and their present, former and future direct and

indirect parent companies, subsidiaries, affiliates, agents and related entities, allege

as follows:

# I. INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of

this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.    Plaintiff, individually and as class representatives for all others similarly situated, brings this action against Lemonade for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.    Furthermore, the Plaintiff received those calls after repeatedly asking to no longer receive contact and also seeks to represent a class of such individuals.

5.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

6.  Plaintiff is an individual.

7.  Defendant Vert Lake Elsinore, LLC d/b/a Lemonade is a California limited liability company.

## III.    JURISDICTION AND VENUE

8.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.  <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendant because they are headquartered in this District.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred from this District.

## IV.    FACTS

### A.    The Enactment of the TCPA and its Regulations

11.    § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

13.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    Defendant's Unsolicited Telemarketing to Plaintiff**

15.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.    Plaintiff's residential telephone number is (714) 709-XXXX.

17.    That number has been on the National Do Not Call Registry since February of 2019 and it has not been removed from the Registry since that time.

18.     Mr. Bronstin uses the number for personal, residential, and household reasons.

19.     Mr. Bronstin never consented to receive calls from the Defendant.

20.     Despite this, the Defendant sent him multiple telemarketing text messages.

21.     Some of the text messages are below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPL.
*Bronstin v. Vert Lake Elsinore, LLC d/b/a Lemonade*



22.     The messages began in March of 2022 and continued throughout 2022.

23.     This was despite the fact that the Plaintiff requested that the messages stop on at least 4 STOP messages.

24.     These stop messages included multiple before May of 2022, another one on July 11, 2022 and another on July 16, 2022.

25.     Despite that, the Defendant continued to send messages to the Plaintiff.

26.     The Plaintiff wrote to the Defendant prior to filing this action.

27.     The Defendant did not deny making the telemarketing calls.

28.     The telemarketing alleged herein: (A) invaded Plaintiff's privacy and solitude; (B) wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff' phone line; and (E) harassed Plaintiff.

## V.     CLASS ACTION ALLEGATIONS

29.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

30.     Plaintiff brings this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

31.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) placed (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the call,

COMPL.
*Bronstin v. Vert Lake Elsinore, LLC d/b/a Lemonade*

(4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

32.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

33.     Excluded from the Classes are counsel, Defendant, and any entities in which Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

34.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

35.     This Class Action Complaint seeks injunctive relief and money damages.

36.     The Classes, as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

37.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the

hundreds as the text messages were sent in a generic fashion from a series of different telephone numbers.

38.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

39.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

40.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

41.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

b.      Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

c.      whether Defendant recorded or honored "do not call" requests of Plaintiff and members of the Internal DNC Class; and

d.      Whether Defendant's conduct constitutes a violation of the TCPA;

42.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

43. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

44. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

45. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

46. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

47. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute

numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

48.     Defendant's violations were negligent, willful, or knowing.

49.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

50.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Internal Do Not Call Registry Class)**

51.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

53.     Defendant's violations were negligent, willful, or knowing.

54.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.     An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

F.     An award to Plaintiff and the Class of damages, as allowed by law; and

G.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.       DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VII.    SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.


RESPECTFULLY SUBMITTED AND DATED this 19th day of September, 2023.


By: */s/ Dana J. Oliver*

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorneys for Plaintiff and the Proposed Classes*

Exhibit E

Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Attorney for Plaintiff and Putative Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated, | Case No. |
| | **COMPLAINT FOR INJUNCTION AND DAMAGES** |
| Plaintiff, | |
| v. | **Class Action** |
| SOLCIUS, LLC | |
| Defendant. | **JURY TRIAL DEMAND** |

Plaintiff Asher Bronstin ("Mr. Bronstin"), by his undersigned counsel, for this class action complaint against Solcius, LLC ("Defendant" or "Solcius") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

- 1 -
COMPL.
*Bronstin v. Solcius, Inc.*

# I. INTRODUCTION

1. <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Solcius to make pre-recorded calls to generate new participants in their dealer program to sell solar panels, in alleged violation of the TCPA.

3. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

# II. PARTIES

4. Plaintiff is an individual located in this District.

5.  Defendant Solcius, LLC is a Utah limited liability company that made pre-recorded calls into this District.

### III.    JURISDICTION AND VENUE

6.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.  <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendant because they made telemarketing calls into this District.

8.  <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred into this District.

### IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring,

- 4 -
COMPL.
*Bronstin v. Solcius, Inc.*

directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.    Defendant's Unsolicited Pre-Recorded Telemarketing to Plaintiff**

14.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.    Plaintiff's cellular telephone number is (714) 709-XXXX and (760) 709-XXXX.

16.    Mr. Bronsin uses the number for personal, residential, and household reasons.

17.    Mr. Bronsin never provided his prior express written consent to receive calls from the Defendant.

18.    Despite this, the Defendant sent him multiple pre-recorded telemarketing calls to each number.

19.    The pre-recorded telemarketing calls were designed to get him to sign up for the Defendant's program where they would install solar panels for a fee.

20.    This included pre-recorded calls in January, February and March, 2022.

21.    The recorded message was generic, not personalized to the recipient, and was designed to secure new dealers for the program.

22.    The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep playing when the call recipient began talking (c) the robot had a generic monotone voice (d) the recording would keep playing over the call recipient announcing the call was being recorded (e) the robot did not respond in any way to the communication.

23.    Indeed, while many of the recorded calls were left as voicemails, on one call in March of 2022, the Plaintiff answered the call.

24.    Instead of speaking with a live person, the following recorded message played, including over the Plaintiff speaking.

25.    Despite the plaintiff speaking, the recorded message finished and then terminated the call.

26.    The following recorded message played:

Give me a call back. I'm going to try to lay out a lot of our benefits in this voicemail for you. Okay? So just for starters, if you're out there selling solar, it's much better to work directly with the installation company. We don't use subcontractors. We use all of our own installers. So we control the process from start to finish. That's why we're so fast. So we're installing in less than 30 days. In California, we have 50 50 payment terms because when you're direct, you cut out all the middlemen. Okay? So we pay you 50% upfront and then 50% of installation. So if you sell me a job, that's a $20,000 commission. We're,

we're going to give you a 10,000 commission the following Friday, and the rest in installation within three to four weeks…

27.    Despite the plaintiff answering the phone, the recording still made reference to the call being a voicemail. As such, it was clearly pre-recorded.

28.    The other calls resulted in similar pre-recorded calls being left.

29.    Prior to the filing of this lawsuit, the Plaintiff sent a letter to the Defendant regarding the pre-recorded conduct.

30.    The Defendant responded and did not deny that they made pre-recorded calls to the Plaintiff.

31.    The telemarketing alleged herein: (A) invaded Plaintiff's privacy and solitude; (B) wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff' phone line; and (E) harassed Plaintiff.

## V.    CLASS ACTION ALLEGATIONS

32.    <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff bring this case on behalf of the Class (the "Class") defined as follows:

>    **<u>Robocall Class:</u>** All persons within the United States: (1) to whose cellular telephone number (2) Solcius (or an agent acting on behalf of Solcius) placed a call (3) within the four years prior to the filing of the Complaint (4) using a pre-recorded message.

33.     Excluded from the Class are counsel, Defendant, any entities in which Defendant had a controlling interest, Defendant's agents and employees,

any judge to whom this action is assigned, and any member of such judge's staff

and immediate family.

34.     The Class, as defined above, is identifiable through telephone records

and telephone number databases.

35.     The potential members of the Class likely number at least in the

hundreds because of the *en masse* nature of telemarketing calls.

36.     Individual joinder of these persons is impracticable.

37.     Additionally, the disposition of the claims in a class action will

provide substantial benefit to the parties and the Court in avoiding a multiplicity of

identical suits.

38.     Plaintiff is a member of the Class and will fairly and adequately

represent and protect the interests of the Class as he has no interests that conflict

with any of the class members.

39.     Plaintiff and all members of the Class have been harmed by the acts of

Defendant, including, but not limited to, the invasion of their privacy, annoyance,

waste of time, and the intrusion on their telephone that occupied it from receiving

legitimate communications.

40.     This class action complaint seeks injunctive relief and money

damages.

41.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

      a.      whether Defendant systematically made pre-recorded telemarketing calls;

      b.      whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

      c.      whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

42.     Plaintiff's claims are typical of the claims of the Class.

43.     Plaintiff's claims, like the claims of Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

44.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

45.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant

to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

46.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(3)**
**(On Behalf of Plaintiff and the Pre-Recorded Call Class)**

47.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

48.    The foregoing acts and omissions of the Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages.

49.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

50.    If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

51.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other

- 11 -
COMPL.
*Bronstin v. Solcius, Inc.*

persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Certification of the proposed Class;

B.    Appointment of Plaintiff as representative of the Class;

C.    Appointment of the undersigned counsel as counsel for the Class;

D.    A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.    An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future;

F.    An award to Plaintiff and the Class of damages, as allowed by law; and

G.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

# VI.     DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

# VII.     SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.


RESPECTFULLY SUBMITTED AND DATED this 30th day of November, 2023.

By: */s/ Dana J. Oliver*

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorneys for Plaintiff and the Proposed Classes*

Exhibit F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated, | : | Civil File No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| SUTTON FUNDING LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## Preliminary Statement

1.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.     The Plaintiff Asher Bronstin alleges that Sutton Funding LLC, made unsolicited pre-recorded telemarketing calls to Mr. Bronstin and others without their prior express consent.

3.     Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendant's' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Asher Bronstin is an adult individual.

6.      Defendant Sutton Funding LLC is a Delaware corporation with its headquarters and principal place of business located in Suffolk County.

## Jurisdiction & Venue

7.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8.      The Court has personal jurisdiction over Defendant because they are registered in this District, located in this District, and made calls from this District.

9.      Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made from this District.

## TCPA Background

10.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone

number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

15.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

3

16.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices to business lines. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id*.

## Factual Allegations

18.     Sutton offers business loans for sale.

19.     To generate leads and find potential customers interested in purchasing business loan services, Sutton makes telemarketing calls using artificial, prerecorded voices to consumers who have never had a relationship with them and who have never consented to receive their calls.

20.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's telephone numbers (the "Numbers") are (202) XXX-XXXX and (760) XXX-XXXX.

22.     Those numbers are assigned to cellular telephone services.

23.     Despite this, the Defendant's placed at least one prerecorded call to each of the Plaintiff's numbers using a prerecorded voice.

24.     For example, the number beginning with 202 received a call on April 1, 2024 which went straight to voicemail without ringing from the caller ID 951-584-2396. The message left on voicemail stated, "Hey, how are you? This is Henry Gross from Sutton Funding," which continued on to pitch business loans.

25.     The number beginning with 760 also received a call on April 1, 2024 which the Plaintiff answered from the same caller ID. As soon as the Plaintiff answered, the Plaintiff heard a pre-recorded voice say, "Please continue to hold" and a beep. After the beep, the identical pre-recorded message in Paragraph 25 played, stating, "Hey, how are you? This is Henry Gross from Sutton Funding" and continued on to pitch business loans.

26.     The calls were clearly pre-recorded and was sent using prerecorded voices because (a) the prerecorded messages were identical in every way because they both transmitted the same message from identical caller IDs but to different telephone numbers, (b) the message had a generic, monotone voice and name, (c) the robot failed to ascertain that it was sent to a voicemail, and (d) it would be illogical for a human to call someone, just to tell the caller to hold and play them a prerecorded message.

27.     The calls were unwanted.

28.     The calls were nonconsensual encounters.

29.     Plaintiff's privacy has been violated by the above-described prerecorded telemarketing messages.

30.     Plaintiff never provided his consent or requested the messages.

31.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant's because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines and voicemail space, rendering them unavailable for legitimate communication.

### Class Action Allegations

32.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

33.     The Class of persons Plaintiff proposes to represent is tentatively defined as:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or numbers for which they were charged for the call (2) Defendant's, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

34.     The Class as defined above is identifiable through phone records, phone number databases, and business and customer records of Defendant's.

35.     Based on the *en masse* nature of telemarketing, the potential members of the Class likely number at least in the thousands.

36.     Individual joinder of these persons is impracticable.

37.     The Plaintiff is a member of the class.

38.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

> (a) Whether Defendant's used an artificial or pre-recorded voices to make the calls;

6

(b) whether Defendant's made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's' conduct.

39.     Plaintiff's claims are typical of the claims of members of the Class.

40.     Plaintiff is adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

41.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant's and/or their agents.

42.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff and the Robocall Class)**

43.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

44.     The foregoing acts and omissions of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's' behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

45. The Defendant's' violations were negligent, willful, or knowing.

46. As a result of Defendant's' and/or their affiliates, agents, and/or other persons or entities acting on Defendant's' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

47. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's' behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant's from making telephone calls advertising their goods or services, except for emergency purposes, to any protected telephone number enumerated in Section (b)(1)(A)(iii) in the future.

B. As a result of Defendant's' negligent, willful and/or knowing violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.     An order certifying this action to be a proper class action pursuant to Federal Rule

of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a

proper representative of the Class, and appointing the lawyers and law firms representing

Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.


### JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


Respectfully submitted,


*/s/ Anthony Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff and proposed class*