# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated, | Case No. 1:25-cv-01410-JKM |
| *Plaintiff*, | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **UPSTART NETWORK, INC.** | |
| *Defendant.* | |

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO UPSTART'S MOTION TO BIFURCATE DISCOVERY

# I.   INTRODUCTION

The Court should deny Defendant's motion to bifurcate discovery in all respects because bifurcating the discovery in this case will be inefficient and prejudicial, as this Court has already held. Defendant's proposal rests on fundamentally flawed and debunked premises that Plaintiff's counsel has already disproven to the Defendant. Plaintiff's counsel has provided Defendant's counsel with phone bills showing that the Subject Number was assigned to Mr. Bronstin, as well as evidence showing that the number was reassigned to Mr. Bronstin. Resultingly, significant overlap exists between the individual and class claims with particular respect to the Defendant's reassigned number calls and procedures that will result in materially identical answers for Plaintiff and the other members of the proposed Class. In any event, because discovery will disprove UpStart's theories and demonstrate the inadequacy of its scrubbing, this Court should decline UpStart's invitation to bifurcate, as it recently did in another case.

# II.   ARGUMENT

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99 (1998). Requests to bifurcate discovery are controlled by Rule 42(b). *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 568 (D. Del. 2013). It is incumbent on UpStart as the moving party to bear the burden of showing "good cause" for a protective order with specific facts of undue burden

or expense under Rule 26(c)'s protective order standard. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010). The Third Circuit has "condemned the district court's practice of bifurcating [discovery] as a general rule." *Barr Lab., Inc. v. Abbott Lab.*, 978 F.2d 98, 115 (3d Cir. 1992). "Bifurcation is the exception and the moving party bears the burden of demonstrating that bifurcation is needed… As a practical matter, bifurcation of discovery…is extremely rare, since bifurcation often delays cases and leads to serial motion practice." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 2016 WL 4541870, at \*2 (D.N.J. Aug. 31, 2016)[1].

Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015). That is readily apparent here, especially because the Defendant seeks to bifurcate discovery on the basis of three interrelated theories that boil down to the contention that the telephone number at issue was not reassigned to the Plaintiff, as well as the untoward insinuation, simply relying on (false) allegations made by defendants in other cases, that the Plaintiff is engaged in some sort of backdoor shenanigans. But the *single issue* that this case will present, in a manner identical to all class members, is this: did UpStart direct calls to reassigned numbers and individuals who have no relationship with UpStart,

---

[1] A copy of this unpublished decision is attached herein as Exhibit 1.

like Plaintiff, who did not consent to receive them? That question is answered by common, electronically-stored evidence that applies just as much with respect to the Plaintiff as the entire Class. As such, the proposed bifurcation guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual merits" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the individual claim of the Plaintiff. When that discovery will inevitably fail in demonstrating that anything untoward occurred and that the Defendant directed calls to Plaintiff's reassigned number, the parties would need to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on *class certification* issues with respect to UpStart's calls to reassigned numbers across the *entire* class, as well as other remaining issues on the class claims. And after that, there would be a second round of dispositive motions, including class certification and summary judgment, on the class claims.

All told, this means at least *two* rounds of written discovery relating to individual liability and class liability on the very same issues with common answers (at bottom, whether UpStart directed any calls to reassigned numbers, just as the Plaintiff's), *two* rounds of depositions (with the same witnesses being deposed two times), and then *two* rounds of summary judgment briefing, all on the same critical issue: did UpStart send prerecorded calls to numbers who did not consent, including

because they were reassigned? This is the opposite of judicial economy. Indeed, as this very same Court has observed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014)[2]. Defendant raises no defenses unique to Plaintiff's individual claims (particularly as it has not moved to dismiss), only defenses common across the classes. *Friel v. Line 5, LLC*, No. 3:24CV1866, 2025 WL 2422617, at *8 (M.D. Pa. Aug. 21, 2025) **(Munley, J.)**[3].

Evidence that the Plaintiff has provided voluntarily to the Defendant on September 18, without awaiting a discovery request, paints a very different picture than the rank speculation and inappropriate and unsupported allegations of backdoor shenanigans Defendant makes in its motion. First, the Plaintiff's telephone bill for the months of the calls at issue, attached herein as Exhibit A, shows that the telephone number at issue was, at all times relevant, assigned to the Plaintiff's T-Mobile Account. Second, a query of iConectiv's database, attached herein as Exhibit B, reflects that the telephone number at issue in this litigation was assigned to the Plaintiff on April 30, 2024. The company iConectiv is the company charged by the Federal Communications Commission to administer the Number Portability

---

[2] A copy of this unpublished decision is attached herein as Exhibit 2.
[3] A copy of this unpublished decision is attached herein as Exhibit 3.

Administration Center, "which is the master database which lists which telephone provider services a particular number." *Perrong v. Caller Identified as Connor*, No. CV 22-4479 (CPO/EAP), 2023 WL 113957, at *3 (D.N.J. Jan. 4, 2023)[4]. In sum, and contrary to its motion, Defendant had proof positive since September 18 that the Plaintiff's number was reassigned on April 30, 2024, but filed its motion, rife with untoward insinuations against the Plaintiff and suggesting to the contrary, anyway. There is thus no need to bifurcate discovery to demonstrate number ownership, as the evidence adduced here, and provided to Defendant, shows it is owned by Plaintiff. Defendant's contrary insinuation is a red herring.

The Court should deny Defendant's motion to bifurcate for this reason *alone*. *See Friel*, 2025 WL 2422617, at *8 (denying similar motion to bifurcate); *EQT Prod. Co. v. Terra Servs., LLC*, No. CV 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014)[5] ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation."). UpStart's own bifurcation narrative hinges on "facts" which are manifestly inaccurate, including an out-of-date Reassigned Number Database query and alleged "investigation" of

---

[4] A copy of this unpublished decision is attached herein as Exhibit 4.
[5] A copy of this unpublished decision is attached herein as Exhibit 5.

counsel, which undercuts UpStart's premise that this Court must first sort out these issues in a bifurcated period. The merits proof will overlap uniformly and be analyzed across the class with expert analysis, not an individualized sideshow.

Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. Significantly, UpStart has *conceded* that it has *no relationship with the Plaintiff*; UpStart's *only* relationship with the number is by means of the prior assignee of the number. And the evidence produced shows that the number was unquestionably reassigned to Plaintiff on April 30, 2024. As such, the singular question this issue will pose, identically for all class members, is whether UpStart called numbers of persons who had not consented, including reassigned numbers. There is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification on this singular issue. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted); *Charvat v. Plymouth Rock Energy, LLC*, No. 15CV4106JMASIL, 2016 WL 207677, at *2 (E.D.N.Y. Jan. 12,

2016)[6] (denying motion to bifurcate merits and class discovery in TCPA action and explaining that "bifurcation would have the opposite effect [of "promot[ing] judicial efficiency or a prompt resolution of the case"]."); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'"). This is evident in the very "threshold" issues UpStart lists, which are merits questions that overlap with Rule 23's. As another Court ruled when denying a motion to bifurcate in a TCPA case:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in *Walmart v Dukes* has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023)[7].

Other courts have agreed. *See, e.g., Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025)[8] (citing cases and rejecting bifurcation, noting "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this

---

[6] A copy of this unpublished decision is attached herein as Exhibit 6.
[7] A copy of this unpublished decision is attached herein as Exhibit 7.
[8] A copy of this unpublished decision is attached herein as Exhibit 8.

reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023)[9]; *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018)[10] ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."); *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025)[11] ("Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes [and demand Court time].").

Defendant's standing based arguments fail for the same reason. The Defendant relies on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016) in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones that she kept in a shoe box was to run what she referred to as a TCPA litigation business, and that these phones were not called by anyone else for any other purpose. As an initial matter, it is notable that discovery in *Stoops* was not bifurcated. Defendant would have the Court believe that *Stoops*—which predates the litany of subsequent rulings clarifying not only its limited usefulness but also cases *specifically addressing the standing of litigants who maintain multiple phone numbers*—stands

---

[9] A copy of this unpublished decision is attached herein as Exhibit 9.
[10] A copy of this unpublished decision is attached herein as Exhibit 10.
[11] A copy of this unpublished decision is attached herein as Exhibit 11.

for the proposition: "no standing for repeat TCPA litigant with multiple numbers."

Of course it doesn't. As demonstrated above, Mr. Bronstin's reassigned number situation bears no resemblance to Ms. Stoops. Even taking the specious and untrue allegations made against him in other cases as true (they are not), Mr. Bronstin isn't alleged to have collected phones for some litigation enterprise, nor alleged to do anything wrong in *this* case. He simply has received unwanted phone calls and is now fighting back. Red-herring arguments as to purported "issues" with the Plaintiff's standing should not here stand as a basis to bifurcate discovery, either. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) ("[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule."). As the Eastern District explained in *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019)[12] (cleaned up) (emphasis added):

> Defendant has not introduced any evidence that Plaintiff's phone is used solely for business purposes or "specifically to drum up litigation." . . . In addition, the fact that Plaintiff warns telemarketers on his website that he will sue them if they violate the TCPA does not raise an inference that he "hopes for and encourages" potential defendants, acquires phones to increase his chances of receiving calls, or is doing anything other than exercising his rights. *The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation.*

---

[12] A copy of this unpublished decision is attached herein as Exhibit 12.

This is notwithstanding the fact that Mr. Bronstin isn't even alleged to have provided any information *whatsoever* to UpStart that would in any way even begin to affect his standing, rendering the entire issue of needing to take discovery on purported standing "issues" a red herring. While the Defendant is "understandably frustrated" by the fact they are being sued, Plaintiff's other litigation merely shows he is doing "exactly what Congress intended—enforcing the law." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017).

Defendant is requesting bifurcation based on a perceived standing issue that is destined to fail, as people maintain various telephone numbers at various points in their lives for many legitimate, non-litigation-related reasons, including moving, protecting their privacy, and compartmentalizing their lives. In any event, a defendant is not entitled to escape discovery in this or any other case simply because they have defenses to liability or standing, either. Rule 26 provides adequate protections for any burdensome or disproportionate discovery sought. In other words, the Defendant will be free to develop whatever defenses it would like to, including Mr. Bronstin's standing and adequacy, in a manner consistent with what the facts reveal. However, limiting discovery to its preferred issues is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, No. CV 18-11960 (WJM), 2019 WL 7560932, at *4 (D.N.J. Aug. 22, 2019)[13] (denying similar request to bifurcate in a

---

[13] A copy of this unpublished decision is attached herein as Exhibit 13.

TCPA case). "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Id.*

All Defendant argues (or, more accurately, insinuates through conclusory allegations) is that the Court should bifurcate because the number wasn't *really* reassigned, and thus that the class issues do not overlap with the individualized ones. But the T-Mobile records, as well as the iConectiv database itself, disprove Defendant's assertions in its motion. And given that the Defendant can't even get its information right about to whom the number was assigned or when it was reassigned. That calls into question the adequacy of the steps Defendant took to ascertain whether it was sending calls to people, like Plaintiff, who never asked to received them. In sum, the errors Defendant makes in making unwarranted and unsupported allegations that are directly contrary to the evidence here is evidence itself that bifurcation is inappropriate because Defendant likely maintained the same inappropriate and inadequate procedures across the entire class. Far from demonstrating a lack of overlap, Defendant's failure to get its facts straight about Mr. Bronstin and his use of the number, despite having evidence of the same, show that Defendant likely did so with regards to other class members in the same way.

The issue of the numbers called without consent is an overlapping, classwide issue that will not only be susceptible to classwide proof in the form of common,

electronic calling records that are easily obtained, but also expert analysis that will be done *at the Plaintiff's expense* of determining, through databases, which numbers were called without consent. Class discovery will be no more burdensome or involved than individual discovery. UpStart either placed calls to the Plaintiff and every other class member without consent, or it did not. Apart from the three interrelated debunked allegations, UpStart identifies *no* discovery that it will need or intends to seek that would not apply equally to the entire class. Whether UpStart sent the calls at issue to individuals who didn't consent or not will be readily ascertainable from telephone company records and the Plaintiff's own expert analysis. All UpStart does is manufacture issues of its own easily debunked by third party records, and in so doing, demonstrates that class discovery is appropriate, and that there is significant overlap between merits and class certification discovery in a TCPA case, such as this. *Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025) (cleaned up)[14].

Given this overlap, bifurcation would "belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, No. CIV.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa.

---

[14] A copy of this unpublished decision is attached herein as Exhibit 14.

Nov. 29, 2004)[15]. Moreover, given the debunked nature of Defendant's purportedly "individualized" issues, TCPA cases have rejected bifurcation requests, just as the court in *Simmons v. Author Reputation Press LLC*, No. CV 24-12330-BEM, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025)[16] held:

> Defendant has provided the Court no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance. Rather, Defendant has merely pointed out that individual claims are subject to individual defenses, but that is true for all putative class-action plaintiffs.

In distinguishing other TCPA cases in which discovery was bifurcated, the *Simmons* court noted in those cases, "the court was presented with a clear, documented deficiency in the plaintiff's individual claim." *Id.* That is plainly not the case here, and this Court should follow the reasoning of the *Simmons* court, particularly as Defendant has not even filed a motion to dismiss on this issue. Bifurcation would simply delay discovery necessary to demonstrate the class claims, it would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. Indeed, in this sense the requested relief is akin to a motion to stay, since the Defendant is seeking to avoid all class discovery for an indefinite period of time. A stay-related delay would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *Saleh v. Crunch, LLC*, No. 17-62416-CIV, 2018 WL 11264884, at *2 (S.D. Fla. Feb. 28, 2018)[17] ("a stay

---

[15] A copy of this unpublished decision is attached herein as Exhibit 15.
[16] A copy of this unpublished decision is attached herein as Exhibit 16.
[17] A copy of this unpublished decision is attached herein as Exhibit 17.

would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016)[18] (holding that plaintiffs may "suffer prejudice from a stay because the case would extend").

There is also a substantial risk of prejudice. The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *E.g., Levitt v. Fax.com*, No. CIV. WMN-05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007)[19] (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (same). As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference, let alone refuse bifurcation. There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *See Sanaah v. Howell*, No. 08-CV-02117, 2009 WL 980383, at *1 (D. Colo. Apr. 9, 2009)[20] ("with the passage of time, the memories of the parties and other witnesses may fade, . . . or documents may become lost."). Here, the Plaintiff is seeking to proceed in the ordinary course w.

---

[18] A copy of this unpublished decision is attached herein as Exhibit 18.
[19] A copy of this unpublished decision is attached herein as Exhibit 19.
[20] A copy of this unpublished decision is attached herein as Exhibit 20.

In denying a motion to stay, another federal court considered this issue:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages. . . . . In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *7 (S.D.N.Y. Aug. 19, 2019)[21]. By contrast to Defendant's assertions, MTB at 23, "[d]efendant has not demonstrated significant prejudice by its simple assertion that discovery costs money." *Grippo*, 2025 WL 596095, at *2. As discussed above, the records necessary to show that Defendant called numbers without consent are not costly nor difficult for Defendant to obtain: they are simply electronic records obtained easily from phone systems and providers, and then *analyzed at Plaintiff's expense*, negating any assertions that bifurcation will be more economical; to the contrary, bifurcation here will result in a tremendous waste of time and resources.

## CONCLUSION

Bifurcation is not warranted here. The Defendant's motion should be denied.

RESPECTFULLY SUBMITTED AND DATED this October 30, 2025.

---

[21] A copy of this unpublished decision is attached herein as Exhibit 21.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
M.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

October 30, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), this brief does not exceed 15 pages.

DATED this October 30, 2025.

*/s/ Andrew Roman Perrong*

Andrew Roman Perrong, Esq.