## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>UPSTART NETWORK, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:25-cv-01410-JKM
(Hon. Julia K. Munley)

### DEFENDANT UPSTART NETWORK, INC.'S REPLY IN SUPPORT OF MOTION TO BIFURCATE CASE AND STAY CLASS RELATED DISCOVERY

Joshua H. Threadcraft
Admitted *Pro Hac Vice*
Jackson C. Burrow
Identification No. 335420
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5345
Jthreadcraft@burr.com
Jburrow@burr.com

*Counsel for Defendant*
UPSTART NETWORK, INC.

i

## Table of Contents

I.  INTRODUCTION..................................................................................................1

II. ARGUMENT ......................................................................................................2

  A.  Bronstin's Duplication of Discovery and Prejudice Arguments Have Been Rejected and Are Inapplicable.................................................................................2

    1.  Bronstin's duplication argument has been rejected by courts across the country.........................................................................................................2

    2.  Bronstin's examples of duplicative discovery have been rejected and are inapplicable. ……………………………………………………………………...5

    3.  Bronstin fails to identify any "substantial overlap" between merits and class discovery, and the cases he relies on are inapplicable. .............................7

    4.  Bifurcating discovery will not result in prejudice...................................10

  B.  Irrefutable Proof Supporting Dismissal of Bronston's Claims Is Not Required To Bifurcate. .........................................................................................13

III. CONCLUSION .........................................................................................20

# Table of Authorities

Page(s)

## Cases

*Am. Bank v. City of Menasha*,
  672 F.3d 261 (7th Cir. 2010) ................................................ 6

*Babare v. Sigue Corp.*,
  No. C20-0894-JCC, 2020 WL 8617424 (W.D. Wash. Sept. 30, 2020) .................... 6

*Bond v. Folsom Ins. Agency, LLC*,
  No. 3:24-cv-2551-L-BN, 2025 WL 863469 (N.D. Tex. March 19, 2025) ................ 9

*Cameron v. CHW Group, Inc.*,
  No. 23-cv-00320-HCN-DBP, 2025 WL 2336513 (D. Utah Aug. 13, 2025) ............. 3, 7, 19

*Charvat v. Plymouth Rock Energy, LLC*,
  No. 15-cv-4106, 2016 WL 207677 (E.D.N.Y. Jan. 12, 2016) ........................ 9

*Chenault v. Beiersdorf, Inc.*,
  No. 1:20-cv-174, 2020 WL 5016795 (S.D. Ohio Aug. 24, 2020) .................... 2, 10

*Cunningham v. Rapid Response Monitoring Servs.*,
  251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ....................................... 18

*EQT Prod. Co. v. Terra Servs., LLC*,
  No. CV 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014) .............. 3, 5

*Fania v. Kin Ins., Inc.*,
  No. 22-12354, 2024 WL 2607303 (E.D. Mich. May 24, 2024) ...................... 3

*Friel v. Line 5, LLC*,
  No. 3:24-cv-1866, 2025 WL 24226*8 (M.D. Pa. Aug. 21, 2025) .................... 4

*Friel v. Line 5, LLC*,
  No. 3:24-cv-1866, 2025 WL 2422617, at *8 (M.D. Pa. Aug. 21, 2025) ............. 3

*Grant v. Capital Mgmt. Servs., L.P.*,
  449 Fed.Appx 598, 600 (9th Cir. 2011) ....................................... 4

*Harris v. Shore Funding Solus. Inc.*,
  No. 23-CV-00789 (JMA) (JMW), 2023 WL 3440077 (E.D.N.Y. Apr. 21, 2023) .......... 2

*Hartley-Culp v. Credit Mgmt. Co.*,
  No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014) ............. 3

*In re Advanced Methods to Target & Eliminate Unlawful Robocalls*,
  33 FCC Rcd. 12024,  (2018) ................................................ 16

*In re Plastics Additives Antitrust Litig.*,
  No.Civ.A 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) .............. 8

*Lathrop v. Uber Techs., Inc.*,
  No. 14-cv-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) .................. 11

*Levitt v. Fax.com*,
  No. Civ. WMN-05-949, 2007 WL 3169078 (D. Md. May 25, 2007) .................. 10

*Loreaux v. ACB Receivables Mgmt., Inc.*,
  No. 14-710 (MAS), 2015 WL 5032052 (D.N.J. Aug. 25, 2015) .................... 3

*Mey v. Venture Data, LLC*,
  245 F. Supp. 3d 771 (N.D. W.Va. 2017) ...................................... 18

*Newell v. Aliera Healthcare, Inc.*,
   No. 1:19-cv-01489-SCJ, 2020 WL 13568762 (N.D. Ga. Apr. 6, 2020)...................... 10, 11, 19
*Pasco v. Protus IP Solutions, Inc.*,
   826 F. Supp. 2d 825 (D. Md. 2011) ......................................................................................... 10
*Pavelka v. Paul Moss Ins. Agency, LLC*,
   No. 1:22-CV-02226, 2023 WL 3728199 (N.D. Ohio May 30, 2023) ................................. 3, 12
*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
   No. 12-2132 (FLW), 2014 WL 413534 (D.N.J. Feb. 4, 2014) ........................................ 3, 6, 10
*Saleh v. Crunch, LLC*,
   No. 17-62416-Civ-COOKE/HUNT, 2018 WL 11264884 (S.D. Fla. Feb. 28, 2018).............. 11
*Sannah v. Howell*,
   No. 08-cv-02117, 2009 WL 980383 (D. Col. Apr. 9, 2009) .................................................. 11
*Shelton v. Nat'l Gas & Elec., LLC*,
   No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ................................................ 18
*Simmons v. Author Reputation Press LLC*,
   2025 WL 863601 (D. Mass. Mar. 18, 2025)......................................................................... 19
*Simon v. Ultimate Fitness Grp., LLC,*,
   No. 19 Civ. 890 (CM), 2019 WL 4382204, at*2 (S.D.N.Y. Aug. 19, 2019) ......................... 12
*Tabor v. New York City*,
   2012 WL 603561 (E.D.N.Y. Feb. 23, 2012)........................................................................... 9
*Vandersloot v. Charles Baratta LLC*,
   No. 24-cv-07096 (JMW), 2025 WL 2605343 (E.D.N.Y. Sept. 9, 2025)................................. 2
*Wilson v. Quest Diagnostics, Inc.*,
   2019 WL 75600932 (D.N.J. Aug. 22, 2010) .......................................................................... 4

Statutes

47 U.S.C. § 227(c) ........................................................................................................................ 16

Regulations

47 C.F.R. § 64.1200(c)................................................................................................................... 16

Defendant Upstart Network, Inc. ("Upstart") respectfully submits this Reply in Support of its Motion to Bifurcate Case and Stay Class Related Discovery ("Motion"), stating as follows:

## I.    <u>INTRODUCTION</u>

Bronstin's Opposition to Upstart's Motion boils down to essentially two arguments: (1) individualized discovery limited to Plaintiff might touch on discovery that could potentially be posed to putative class members, so bifurcation is duplicative and prejudicial; and (2) Upstart cannot prove the facts for which it seeks discovery before obtaining the discovery, so bifurcation is improper.

Based on these arguments, Bronstin contends that this Court should decline Upstart's invitation to bifurcate "as it recently did in another case." (Doc. 19, Opposition, p. 1.) Upstart notes, however, that on October 20, 2025, this Court ordered bifurcation in a sister TCPA class action in which Bronstin himself is a party. *See Bronstin v. Viasat Inc.*, No. 1:25-cv-00927-KMN. Equally noteworthy is the fact that Bronstin's Opposition here is substantially similar to, and in parts a carbon copy of, the opposition filed and rejected in that case. *See Viasat*, Docs. 31, 36. Bifurcation was proper in *Viasat* and is equally appropriate here. Thus, for the reasons stated in

Upstart's Motion and below, Upstart's Motion should be granted.[1]

## II.    ARGUMENT

### A.    Bronstin's Duplication of Discovery and Prejudice Arguments Have Been Rejected and Are Inapplicable.

#### 1.    Bronstin's duplication argument has been rejected by courts across the country.

According to Bronstin, "the proposed bifurcation guarantees that the parties will duplicate their work." (*See* Opposition, p. 3.) As noted in Upstart's Motion, however, such "duplication" arguments have been rejected when permitting bifurcated discovery in TCPA cases. (*See* Doc. 17, Motion, pp. 14-17 (citing *Harris v. Shore Funding Solus. Inc.*, No. 23-CV-00789 (JMA) (JMW), 2023 WL 3440077, at *4-5 (E.D.N.Y. Apr. 21, 2023); *Chenault v. Beiersdorf, Inc.*, No. 1:20-cv-174, 2020 WL 5016795, at *3 (S.D. Ohio Aug. 24, 2020); *Vandersloot v. Charles Baratta LLC*, No. 24-cv-07096 (JMW), 2025 WL 2605343, at *4 (E.D.N.Y. Sept. 9, 2025)).) This Court reached a similar conclusion in *Viasat. See Viasat* Order, Doc. 36 (finding that the "limited discovery proposed is unlikely to result in significant duplicative discovery for class certification.") Moreover, contrary to Bronstin's argument, bifurcation is regularly found to be a valuable tool when potentially dispositive

---

[1] This case is one of three TCPA class actions that Bronstin currently has pending in this Court. It is also one of twelve cases that he has filed across the country in the past two years. (*See* Doc. 17, Motion, p. 7 n.1).

preliminary issues exist. *See, e.g., Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132 (FLW), 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014); *Loreaux v. ACB Receivables Mgmt., Inc.*, No. 14-710 (MAS), 2015 WL 5032052 (D.N.J. Aug. 25, 2015); *Cameron v. CHW Group, Inc.*, No. 23-cv-00320-HCN-DBP, 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025); *Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024); *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22-CV-02226, 2023 WL 3728199 (N.D. Ohio May 30, 2023); *Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024).

Bronstin does not attempt to address or distinguish this precedent. Rather, like he did in *Viasat*, Bronstin claims that the following three cases mandate denial of Upstart's Motion: *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014); *Friel v. Line 5, LLC*, No. 3:24-cv-1866, 2025 WL 2422617, at *8 (M.D. Pa. Aug. 21, 2025); and *EQT Prod. Co. v. Terra Servs., LLC*, No. CV 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014). (*See* Opposition, pp. 4-5; *Viasat*, Doc. 34 ("*Viasat* Opposition"), pp. 3-4.) None of those cases, however, dealt with the narrow and particularized grounds for individualized discovery proposed here.

For example, in *Hartley*-Culp, the court based denial of bifurcation on a finding "that 'whether or not [Defendant] CMC had [prior express consent] to contact Plaintiff is not a threshold question that must    be resolved at this stage . .

." *Hartley-Culp*, 2014 WL 4630852, at *3 (citing *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed.Appx. 598, 600 (9th Cir. 2011) ("'express consent' is not an element of a TCPA Plaintiff's prima facie case, but rather an affirmative defense for which the Defendant bears the burden of proof'") (alteration added)). Here, unlike in *Hartley-Culp* and *Grant* on which *Hartley-Culp* relied, Upstart is not seeking discovery regarding an affirmative defense. It is instead seeking bifurcation regarding elements of Bronstin's prima facie case.[2] (*See* Motion, p. 8.)

In *Friel*, the motion at issue was to "trifurcate," not bifurcate, and sought discovery in three separate phases: (1) the plaintiff's individual claims; (2) the appropriateness of class certification if the plaintiff's individual claims proceeded; and (3) if any class was ultimately certified, merits discovery for the class or classes. *See Friel*, 2025 WL 2422617, at *8. That is not what Upstart seeks. Additionally, in *Friel*, the moving party's answer did not raise any defense unique to the plaintiff, as Upstart's does in this case. (*See* Motion, pp. 15-21.) Here, Upstart seeks the following unique discovery relating to Bronstin: (1) whether the telephone number at issue belongs to him; (2) his relationship with Upstart's customer; and (3) the

---

[2] Bronstin also cites *Wilson v Quest Diagnostics, Inc.*, characterizing it as "denying [a] similar request to bifurcate in a TCPA case." (Opposition, p. 10 (citing *Wilson v. Quest Diagnostics, Inc.*, 2019 WL 75600932 (D.N.J. August 22, 2010))). Like *Hartley-Culp* and *Grant*, the basis for the bifurcation was a contention that the issue of consent, a defense not an element of the plaintiff's claims, could be dispositive. *See Wilson*, 2019 WL 7560932, at *4.

number of telephones he has. (*See* Motion, p. 8.)

Finally, in *EQT Production*, there is no indication that the eight-paragraph decision involved TCPA claims, nor was it a class action, and the Court noted that bifurcation would likely cause discovery to remain open for potentially four years after the Court's Order and six years after the events giving rise to the complaint. *See EQT Production*, 2014 WL 12838677, at *1 (noting in its 2014 order that discovery could remain open through 2018 and with cognizance of witnesses' availability and their diminishing ability to recall the events of 2012, "the Court refuses to use its discretion to bifurcate discovery on this ground"). Such timing is not a consideration here. In this case, Upstart has simply requested limited bifurcated discovery with an opportunity to file dispositive motions if appropriate; Upstart notified the Court of its intent to seek bifurcation in the Parties' Joint Case Management Report and filed the Motion seven days later; and the events giving rise to the Complaint occurred in 2024. (*See* Docs. 1, 15.)

### 2. Bronstin's examples of duplicative discovery have been rejected and are inapplicable.

According to Bronstin, duplication of discovery will allegedly present itself in the form of two rounds of written discovery, two depositions of the same witness, and two rounds of summary judgment briefing. (Opposition, p. 3.) Such contentions are inapposite. First, Bronstin made – and this Court rejected – this exact argument in *Viasat*. (*See Viasat* Opposition, p. 4.) Additionally, Bronstin has already served

written discovery, which included both individual and class discovery. (*See* Discovery Requests, attached as "Exhibit 1.")[3] Bifurcation would only briefly delay responses to requests seeking class discovery for a short time and would not require two rounds of those requests.[4] Further, if bifurcation is ordered and results in termination of the litigation, the sParties would save money associated with expert witness fees, class discovery, and class certification filings. Thus, if anything, granting the Motion serves the ends of justice and judicial economy.

Bronstin's contention that "[c]lass discovery will be no more burdensome or involved than individual discovery" overlooks this fact and is betrayed by the far-reaching discovery requests already propounded. (*See* Opposition, p. 13; Discovery Requests). "It is also generally understood that the costs can be particularly 'enormous' for defendants" in TCPA class actions. *Janssen Pharm., Inc.*, 2014 WL 413534, at *4 (citation omitted); *see also Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020); *Am. Bank v. City of*

---

[3] Upstart cited to Bronstin's discovery requests in its Motion and inadvertently failed to include them as an exhibit to the Brief in Support thereof; they are attached hereto as Exhibit 1. (*See* Doc. 17, at p. 24.)

[4] Bronstin also fails to explain why two Upstart depositions would be necessary even if bifurcation does not result in dismissal. Questions regarding Bronstin's ownership of the subject telephone number, his relationship with Upstart's customer, and the number of telephones he has are all extremely narrow questions easily addressed through limited discovery that does not require an Upstart deposition.

*Menasha*, 672 F.3d 261, 266 (7th Cir. 2010). Bronstin fails to cite any precedent reaching a contrary conclusion.

Bronstin next claims that bifurcation would "lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation," but he fails to explain what those might be. (*See* Opposition, p. 6.) It is hard to fathom how the limited and targeted discovery sought here could lead to such disputes. Indeed, Upstart hopes Bronstin would agree that counsel for the Parties are "sophisticated enough [. . .] to not disintegrate into childish petty discovery fights over what constitutes merits discovery versus class discovery." *Cameron*, 2025 WL 2336513, at *3.

### 3. Bronstin fails to identify any "substantial overlap" between merits and class discovery, and the cases he relies on are inapplicable.

Bronstin contends that bifurcation should be denied because "[t]here is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification." (*See* Opposition, p. 6.) In doing so, however, Bronstin places an errant focus on Upstart's purported conduct, rather than the limited areas of inquiry for which Upstart seeks bifurcation. (*See id.*) Bronstin has not identified how the three specific inquiries for which Upstart seeks bifurcated discovery would overlap with class discovery.

The cases Bronstin cites to support his "overlap" arguments are equally

distinguishable. For example, he cites *Katz v. Allied First Bank, SB, Grippo v. Sugared + Bronzed, LLC*, *Blair v. Assurance IQ LLC*, *Ahmed v. HSBC Bank USA, N.A.*, and *Nock v. PalmCo Admin., LLC*, for the proposition that the distinction between merits discovery and class discovery is not always clear. (*See* Opposition, pp. 7-8.) While this proposition may be accurate in some instances, it is not here. This is particularly true given the proposed discovery in those cases appeared to be class-wide merits discovery, whereas here, individually tailored limited discovery is sought. (*See* Motion, p. 8.)

Bronstin relies on *In re Plastics Additives Antitrust Litigation* for the same proposition, but that case is even more distinguishable because it did not involve TCPA claims. (*See* Opposition, pp. 12-13 (citing *In re Plastics Additives Antitrust Litig.,* No. Civ.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004)).) Its tenuous applicability is further compounded by the fact that unlike here, the case had been on the docket for 18 months when bifurcation was sought, and there was no reason to believe bifurcation would result in termination of the litigation since seven individual lawsuits had been filed against the defendants. *See In re Plastics Additives Antitrust Litigation,* 2004 WL 2743591, at *3, 4 (citing *Manual for Complex Litigation* § 21.14 at 256 (bifurcation not appropriate if litigation likely to proceed without certification)).

In *Charvat v. Plymouth Rock Energy, LLC*, undermining Bronstin's argument,

the court appropriately recognized that "[b]ifurcation may be appropriate [ ], where the 'resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary." *Charvat v. Plymouth Rock Energy, LLC,* No. 15-cv-4106, 2016 WL 207677, at *2 (E.D.N.Y. Jan. 12, 2016) (citing *Tabor v. New York* City, No. 11-CV-0195, 2012 WL 603561, at *10 (E.D.N.Y. Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 86424 (E.D.N.Y. Mar. 14, 2012)). The court denied bifurcation, however, noting that like in *In re Plastics*, bifurcation would not terminate the litigation since the complaint identified other individuals who "claimed to have received more harassing calls than Plaintiff, and either one could replace Plaintiff as a class representative." *Charvat*, 2016 WL 207677, at *3.

Finally, in *Bond v. Folsom*, the defendant sought bifurcation only after being compelled to produce class-wide discovery. *See Bond v. Folsom Ins. Agency, LLC*, No. 3:24-cv-2551-L-BN, 2025 WL 863469, at *1 (N.D. Tex. March 19, 2025) ("Bond contends that Folsom's bifurcation proposal is an 'end-run' around the Court's Order granting in part Bond's motion to compel, which involved class-wide discovery."). That is not the case here. Here, Upstart made clear from the outset in the Parties' Joint Case Management Report that it would be seeking bifurcation, Upstart filed a Motion to Bifurcate seven days thereafter, and this Court has not ordered Upstart to produce any discovery, let alone class discovery. (*See* Docs. 15, 17.)

In sum, even if "class and merits-based discovery will [*sic*] inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate." *Chenault*, 2020 WL 5016795, at *3. Because Bronstin cannot identify any substantial overlap between the individualized discovery sought by Upstart and any class-wide issues, bifurcation is appropriate and Upstart's Motion should be granted.

### 4.    Bifurcating discovery will not result in prejudice.

Bronstin claims that permitting bifurcation will create a "substantial risk of prejudice," arguing that "[m]ultiple decisions in TCPA class action cases have turned on destruction of records necessary to identify class members" and citing two cases for the proposition. (*See* Opposition, p. 14 (citing *Levitt v. Fax.com*, No. Civ. WMN-05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) and *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011)).) Neither case, however, concerned destruction of evidence on the account of a brief delay to conduct bifurcated discovery. *See Levitt*, 2007 WL 3169078 (granting motion to decertify class action); *Pasco*, 826 F. Supp. 2d 825 (deciding cross-motions for summary judgment).

Moreover, the theoretical possibility that evidence could be "lost or destroyed" has been rejected as a basis for denying bifurcation. *See Viasat* Order; *Newell v. Aliera Healthcare, Inc.*, No. 1:19-cv-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020); *Janssen Pharm., Inc.*, 2014 WL 413534, at *5. More

importantly, there is nothing to support such a conclusion in this case. Just as in *Newell*, "both [Bronstin] and [Upstart] are on notice to preserve evidence pertaining to this matter," and Upstart takes that responsibility seriously. *Newell*, 2020 WL 13568762, at *3. Further, Bronstin has shown no basis to believe that permitting the parties to engage in a brief individualized discovery period of 90 to 120 days and dispositive motion briefing if appropriate would increase the risk of "lost or destroyed" evidence.

Bronstin also references "other prejudices," citing precedent providing that with the passage of time, memories fade. (*See* Opposition, p. 14 (*citing Sannah v. Howell*, No. 08-cv-02117, 2009 WL 980383, at *1 (D. Col. Apr. 9, 2009).) But he again fails to explain how the fact that memories may fade over time has any applicability to the issues in this case, particularly since Upstart seeks only 90-120 days to conduct discovery and a short period for dispositive motions if appropriate.

Bronstin's reliance on *Saleh v. Crunch, LLC* and *Lathrop v Uber Techs., Inc.*, does not support his position, since both of those cases sought stays of entire proceedings pending appeals in other cases for indeterminate periods of time. *Sale v. Crunch, LLC*, No. 17-62416-Civ-COOKE/HUNT, 2018 WL 11264884, at *1 (S.D. Fla. Feb. 28, 2018); *Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (seeking a stay in light of two pending appeals that would result in prejudice because "the case would extend for an

indeterminate length of time, increase the difficult[y] of reaching class members, and increase the risk that evidence will dissipate."). Similarly, in *Simon v. Ultimate Fitness Grp., LLC*, the defendant sought an indefinite stay pending new rules from the FCC. *Simon v. Ultimate Fitness Grp., LLC*, No. 19 Civ. 890 (CM), 2019 WL 4382204, at *2 (S.D.N.Y. Aug. 19, 2019). Again, that is not what Upstart seeks here. Upstart has not requested an indefinite stay, but rather a 90 to 120 day period to conduct individualized discovery, and to file dispositive motions if appropriate. This request is entirely different from the relief sought in the aforementioned cases.

Bronstin has not demonstrated how focusing discovery on three limited issues for a limited period of time could prejudice him in any way. This is particularly true given the infancy of this case and the narrow topics of discovery proposed by Upstart. (*See* Doc. 17, at pp. 22-24 (citing cases rejecting similar prejudice arguments).) Upstart on the other hand, has demonstrated that it will experience substantial prejudice if bifurcation is not ordered. (*See* p. 7 *supra.*; *see also* Motion, pp. 22-24.)

In sum, just as in *Newell*, *Viasat*, *Vandersloot*, and *Pavelka*, *supra.*, this case is in its early stages    and "any asserted prejudice [by the plaintiff] is neutralized by the early stage of this case coupled with the burdens and costs associated with unnecessary class action discovery under the TCPA." *Vandersloot*, 2025 WL 2605343, at *5 (citing *Pavelka*, 2023 WL 3728199, at *2); *see also Harris*, 2023

WL 3440077, at *1 (granting motion to bifurcate and rejecting arguments of prejudice, stating: "The case is in its infancy. At the initial conference, the Court entered a Scheduling Order and set a briefing schedule for Defendant's motion to bifurcate discovery as to Plaintiff's individual claim and the proposed class."); *Newell,* 2020 WL 13568762, at *3.

### B.  Irrefutable Proof Supporting Dismissal of Bronston's Claims Is Not Required To Bifurcate.

Bronstin's second argument appears to be a contention that he provided Upstart with "evidence" supporting his position and because Upstart cannot currently prove what it believes bifurcated discovery may reveal, it is not entitled to bifurcation. (*See, e.g.,* Opposition, p. 5 ("Upstart's narrative hinges on 'facts' which are manifestly inaccurate, including an out-of-date Reassigned Number Database query and alleged 'investigation' of counsel"); p. 10 ("Defendant is requesting bifurcation based on a perceived standing issue that is destined to fail"); p. 11 ("In sum, the errors Defendant makes in making unwarranted and unsupported allegations that are directly contrary to the evidence here is evidence itself that bifurcation is inappropriate").)

Upstart's request for bifurcation is not based on speculation or conjecture, however, but on fact. For example, Upstart conducted a reverse number look-up of the Subject Number, which reflected that it was not assigned to Bronstin during the time period at issue:



(*See* Exhibit 2.)

Another search run by Upstart instead reflects that, at the time of the search, the Subject Number was assigned to Upstart's customer:



(*See* Exhibit 3.)

In response, Bronstin's Opposition includes an exhibit that he claims is "proof positive" that the number was assigned to him since April 30, 2024:

**trn:** 1760
**ocn:** 6529
**lata:** 732
**city:** ENCINITAS
**ratecenter:** ENCINITAS
**province:** CA
**jurisdiction:** INDETERMINATE
**local:** INDETERMINATE
**lec:** T-MOBILE USA, INC.
**lectype:** WIRELESS
**spid:** 6529
**activation:** 2024-04-30T00:00:00Z GMT

(*See* Opposition., p. 4; Doc. 20, ("Praecipe," p. 6).)

As an initial matter, Bronstin's name is nowhere to be found in the exhibit. Additionally, Bronstin does not attempt to address, or reconcile, why the Subject Number could be reflected as assigned to him from 2010 to 2017, then assigned to Upstart's customer and used by this customer to communicate with Upstart, and then somehow reassigned to him in 2024. (*See* Motion, pp. 9-11.) Rather, Bronstin appears to simply claim that he is right and Upstart is wrong and then accuses Upstart of "untoward insinuations." (*See* Opposition, p. 5.)

Further, while Bronstin produced phone records to Upstart, they were heavily redacted. Absent, or obscured, was any information regarding call details. For all Upstart knows, the calls at issue are not reflected on the records. Additionally, Bronstin has not provided account opening phone records, though one would think he easily could have. This is particularly true since, according to Bronstin, the account was allegedly recently obtained on April 30, 2024.

Bronstin also does not address the fact that, as set forth in Upstart's Motion, Upstart conducted a query of the Reverse Number Database ("RND") on March 5, 2024, which reflected that between January 24 and March 5 of that year, the Subject Number had not been reassigned. (*See* Motion, p. 10.) Importantly, between March 5, 2024 and the May 12, 2024 first alleged call, Upstart called and texted the Subject Number but received no indication that it had been permanently disconnected. (*See id.*) As discussed in Upstart's Motion, pursuant to Federal Communications Commission ("FCC") requirements, a carrier must permanently disconnect a number and hold it out of circulation for at least 45 days before it can be reassigned. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd. 12024, 12030-31, ¶¶ 15-16 (2018). Absent from the Opposition is any explanation for how Upstart could successfully call and text the Subject Number between March 5 and April 30 if it had been taken out of circulation and reassigned on April 30, 2024.

It also bears noting that Bronstin has reserved the right to advance a National Do-Not-Call Registry ("DNC") claim against Upstart. (*See* Doc. 15, pp. 2-3.) Supporting such a claim requires that an individual receive <u>two</u> telephone solicitation calls during a 12-month period after their name is listed on the DNC for at least 31 days. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). If, as Bronstin claims, the number was assigned to him on April 30, 2024, he could not maintain a

DNC claim for the calls placed at issue in the Complaint because (i) the May calls were within 31 days of April 30, and (ii) there was only one call outside the 30-day period. (*See* Compl. ¶ 21.)

Bronstin also does not dispute that he has filed at least 12 TCPA class actions in the past two years, revealing that he has had at least five different cell phone numbers during that short period of time. (*See* Doc. 17, at p. 21.) While Bronstin claims that "allegations made against him in other cases" are "specious and untrue," Upstart notes that they were made in federal court and, thus, subject to Rule 11 of the Federal Rules of Civil Procedure. (*See* Motion, p. 5.)

Bronstin attempts to minimize the significance of having multiple cell phone numbers during the past two years, stating "people maintain various telephone numbers at various points in their lives for many legitimate, non-litigation related reasons, including moving, protecting their privacy, and compartmentalizing their lives." (*See* Opposition, p. 11.) Notably, he fails to explain how an individual having more than one phone number "at various points in their lives," explains the fact that he has had *at least* five phone numbers during a two-year period. Nor does Bronstin explain how any of the "non-litigation related reasons" for having a different phone number over one's lifetime apply to him.[5]

---

[5] For all Upstart knows, Bronstin has had more than five phone numbers during the past two years.

Bronstin also claims that he "isn't alleged to have collected phones for some litigation enterprise, nor alleged to do anything wrong in *this* case. He simply received unwanted calls and is now fighting back." (*See* Opposition, p. 9 (emphasis in the original).) Whether Bronstin collected phone numbers for some litigation enterprise is exactly one of the questions Upstart seeks to answer through the limited, bifurcated discovery sought.

Finally, Bronstin fails to address the area of limited bifurcated discovery Upstart seeks regarding his relationship with Upstart's customer. He also fails to deny any relationship with this individual, though he easily could have. (*See* Doc. 15, at p. 6.)

The three cases Bronstin cites regarding the issue of standing do not help his arguments. (*See* Opposition, pp. 9-10 (citing *Cunningham v. Rapid Response Monitoring Servs.,* 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019); and *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D. W.Va. 2017)).) None of them deal with the issue of bifurcation. If anything, *Shelton* confirms Bronstin's misapplication of the burden one faces when seeking bifurcation. Specifically, in *Shelton*, the defendant sought to dismiss the complaint for lack of standing. *Shelton,* 2019 WL 1506378, at *3-5. Based on the argument advanced, Bronstin appears to equate grounds supporting dismissal with those

required to support bifurcation. If such were the case, however, bifurcation would not be necessary.

Bronstin's reliance on *Simmons v. Author Reputation Press LLC*, is equally misplaced. (*See* Opposition, p. 13 (citing *Simmons v. Author Reputation Press LLC*, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025)).) In *Simmons*, unlike here, the defendant "provided the Court no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance." *Simmons*, 2025 WL 863601, at *2. Here, however, Upstart has made such a showing.

In sum, Bronstin claims he has definitively established that he was assigned the Subject Number in April 2024, and argues that his status as a frequent TCPA class litigant with at least five separate telephone numbers is insufficient, in and of itself, to determine that he lacks standing. But Upstart is not asking this Court to decide the issue of standing at this juncture. Rather, Upstart is asking this Court to simply permit bifurcation relating to fact-bound questions resolvable through brief individualized discovery and a short time for dispositive motions if appropriate. If such targeted discovery resolves these questions in Upstart's favor, Bronstin's claims fail and no class discovery is necessary. *See, e.g., Newell*, 2020 WL 13568762, at *3; *Cameron*, 2025 WL 2336513, at *3.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Upstart respectfully requests that this Court grant its Motion, stay all class related discovery, and bifurcate this case as set forth more fully in the Motion and Proposed Order attached thereto.

Respectfully submitted this 21st day of November, 2025.

*/s/ Jackson C. Burrow*
Jackson C. Burrow
Identification No. 335420
Joshua H. Threadcraft
Admitted *Pro Hac Vice*
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5345
Jthreadcraft@burr.com
Jburrow@burr.com
*Counsel for Defendant*
UPSTART NETWORK, INC.

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.8</u>

I hereby certify that, pursuant to Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **4574 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 21, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve a copy of the aforesaid via Notice of Electronic Filing to:

Andrew Roman Perrong, Esq.
PERRONG LAW LLC
2657 Mt. Carmel Avenue
Glenside, PA 19038
Email: a@perronglaw.com
*Counsel for Plaintiff*

                                       */s/ Jackson C. Burrow*
                                       Jackson C. Burrow
                                       Identification No. 335420
                                       Burr & Forman LLP